# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH, Defendants. | 21-cv-00583-MKB-VMS |

**RECEIVER'S MOTION FOR ENTRY OF AN ORDER APPROVING
(I) THE DISTRIBUTION PLAN, (II) INITIAL AND SUBSEQUENT DISTRIBUTIONS,
(III) THE FORM AND MANNER OF THE CLAIMS DETERMINATION AND
SOLICITATION PROCESS, (IV) THE PROOF OF CLAIM FORM,
(V) THE CLAIMS PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
(202) 637-5600
Douglas A. Fellman
David M. Foster
douglas.fellman@hoganlovells.com
david.foster@hoganlovells.com

Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017
(212) 918-3000
Robert B. Buehler
Christopher R. Bryant
robert.buehler@hoganlovells.com
chris.bryant@hoganlovells.com

*Attorneys for Receiver Joseph T. Gardemal III*

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

Summary of the Plan ..................................................................................................... 3

STATEMENT OF FACTS ............................................................................................... 4

    I.      GPB Capital: The General Partner .................................................................. 4

    II.    Overview of the Partnerships and Marketing Efforts ...................................... 5

          A.       Holdings ................................................................................................ 6

          B.       APLP ...................................................................................................... 7

          C.       AIF ........................................................................................................ 7

          D.       Holdings II ............................................................................................ 8

          E.       Cold Storage.......................................................................................... 9

          F.       NYCD .................................................................................................... 9

          G.       Waste .................................................................................................... 10

    III.   Enforcement Actions; Criminal Indictments and Convictions ........................ 10

    IV.   The Receiver's Review of GPB Capital and the Partnerships .......................... 12

          A.      The Treatment of Each Partnership as a Distinct Corporate Entity .......... 13

          B.      The Interfund Loans were Appropriately Administered......................... 15

          C.      GPB Capital's Books and Records are Materially Accurate ................... 16

    V.    Authority to Propose Plan ................................................................................ 16

ARGUMENT .................................................................................................................. 17

    I.      The Court has Broad Discretion to Approve the Plan. ..................................... 17

    II.    The Receiver's Proposed Plan of Distribution is Fair and Reasonable. ............... 17

          A.      Partnership-By-Partnership Distribution is Fair and Equitable. ............... 18

          B.      Neither Substantive Consolidation, nor Veil-Piercing, is Appropriate Here. .................................................................................... 20

    III.   The Initial Distribution (and all Distributions) will be Made in Accordance with each Partnership's LPA.......................................................................... 23

    IV.   The Initial Distribution Will Occur Prior to the Bar Date. ................................ 24

    V.    Subsequent Distributions. ................................................................................ 25

    VI.   The Receiver Will be Authorized to Establish and Maintain Reserves for Future Expenses and Distributions.................................................................. 26

    VII.  The Claims Solicitation, Verification, and Resolution Process. ........................ 27

i

A.     Timeline ............................................................................................... 28

B.     Procedure for Submitting a Proof of Claim ........................................... 29

C.     Investors and Notices of Determination ................................................ 29

D.     Request for Additional Information........................................................ 31

E.     Effect of Failure to Submit a Proof of Claim Before the Claims Bar Date ...................................................................................................... 32

F.     Dispute Resolution Process.................................................................... 32

G.     Consent to Jurisdiction and Agreement to be Bound.............................. 34

H.     Investor Claims Should be Determined Based on the Books and Records ................................................................................................... 35

VIII.     The Claims Procedures and Documents to be Used in Connection Therewith Should be Approved by the Court as Satisfying Due Process .............................. 35

IX.     The Plan Provides for Specific Treatment of Certain Claimants......................... 38

A.     Excluded Parties.................................................................................... 38

B.     Class Action Claimants......................................................................... 39

X.     The Receiver Will be Authorized to Pursue Claims of the Receivership Entities as Necessary and Appropriate. ................................................................... 40

A.     Distribution of Litigation Proceeds........................................................ 41

       1.     Proceeds of Causes of Action Belonging Generally to the Receivership Estate. ....................................................................... 41

       2.     Partnership-Specific Litigation. ..................................................... 42

       3.     Other Investor Litigation Recoveries. ............................................. 43

B.     Privilege ................................................................................................ 43

CONCLUSION............................................................................................................... 44

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arch Wireless, Inc.*,
    534 F.3d 76 (1st Cir. 2008) .......................................................................................................37

*CFTC v. Eustace*,
    No. 05 Civ. 2973 (MMB), 2008 WL 471574 (E.D. Pa. Feb. 19, 2008) ..................................20

*CFTC v. Topworth Int'l, Ltd.*,
    205 F.3d 1107 (9th Cir. 1999) ..................................................................................................35

*CFTC v. Walsh*,
    712 F.3d 735 (2d Cir. 2013) .....................................................................................................18

*Chemetron Corp. v. Jones*,
    72 F.3d 341 (3d Cir. 1995) .......................................................................................................37

*City of New York v. New York, N. H. & H. R. Co.*,
    344 U.S. 293 (1953) ..................................................................................................................37

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021) ..................................................................................................21

*In re Maya Constr. Co.*,
    78 F.3d 1395 (9th Cir. 1996) ....................................................................................................37

*Midland Interiors, Inc. v. Burleigh*,
    No. 18544, 2006 WL 4782237 (Del. Ch. Dec. 19, 2006) ........................................................21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................................36, 37

*In re Republic Airways Holdings Inc.*,
    565 B.R. 710 (Bankr. S.D.N.Y. 2017), *aff'd*, 582 B.R. 278 (S.D.N.Y. 2018) ........................21

*SEC v. American Capital Invs., Inc.*,
    98 F.3d 1133 (9th Cir. 1996) ....................................................................................................36

*SEC v. Amerindo Inv. Advisors Inc.*,
    No. 05 Civ. 5231 (RJS), 2014 WL 2112032 (S.D.N.Y. May 6, 2014), *aff'd sub
    nom. SEC v. Amerindo Inv. Advisors*, 639 F. App'x 752 (2d Cir. 2016) .................................17

*SEC v. Bivona*,
    No. 16 Civ. 1386 (EMC), 2017 WL 4022485 (N.D. Cal. Sept. 13, 2017) ..............................18

*SEC v. Byers*,
637 F. Supp. 2d 166 (S.D.N.Y.2009)................................................................17, 36, 38

*SEC v. Capital Consultants, LLC*,
397 F.3d 733 (9th Cir. 2005) ..............................................................................35

*SEC v. Capital Cove Bancorp LLC*,
No. SACV15-00980-JLS (JC), 2015 U.S. Dist. LEXIS 174855
(C.D. Cal. Oct. 13, 2015) ....................................................................................35

*SEC v. Certain Unknown Purchasers of Common Stock of & Call Options for*
*Common Stock of Santa Fe Int'l Corp.*,
817 F.2d 1018 (2d Cir. 1987)..............................................................................17

*SEC v. Credit Bancorp, Ltd.*,
No. 99 Civ. 11395 (RWS), 2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000),
*aff'd*, 290 F.3d 80 (2d Cir. 2002) ......................................................................18

*SEC v. Detroit Mem'l Partners, LLC*,
No. 13 Civ. 1817 (WSD), 2016 WL 6595942 (N.D. Ga. Nov. 8, 2016) ................19

*SEC v. Enter. Tr. Co.*,
No. 08 C 1260, 2008 WL 4534154 (N.D. Ill. Oct. 7, 2008),
*aff'd*, 559 F.3d 649 (7th Cir. 2009) ....................................................................38

*SEC v. Hardy*,
803 F.2d 1034 (9th Cir. 1986) ........................................................................35, 36

*SEC v. Lincoln Thrift Ass'n*,
577 F.2d 600 (9th Cir. 1978) ..............................................................................35

*SEC v. Morgan*,
No. 19 Civ. 661 (EAW), 2020 WL 6536894 (W.D.N.Y. Nov. 6, 2020)............18, 19

*SEC v. Path Am., LLC*,
No. C15-1350 (JLR), 2016 U.S. Dist. LEXIS 117684
(W.D. Wash. Aug. 30, 2016) ..........................................................................35, 38

*SEC v. Shiv*,
379 F. Supp. 2d 609 (S.D.N.Y. 2005)..................................................................18

*SEC v. Sunwest Management, Inc.*,
No. 09 Civ. 6056 (HO), 2009 WL 3245879 (D. Or. Oct. 2, 2009)........................20

*SEC v. Wang*,
944 F.2d 80 (2d Cir. 1991)..................................................................................17

*SEC v. Wencke,*
 783 F.2d 829 (9th Cir. 1986) ...............................................................................36

*In re Stanford International Bank, Ltd.,*
 No. 09 Civ. 721 (DCG), 2012 WL 13093940 (N.D. Tex. July 30, 2012) ..............................20

*United States v. Arizona Fuels Corp.,*
 739 F.2d 455 (9th Cir. 1984) ...............................................................................36

*In re Worldcom, Inc.,*
 No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................21

**Other Authorities**

Proofs of Claim Form, available at the Claims Agent's website:
 https://dm.epiq11.com/GPBCapital ...............................................................................29

## PRELIMINARY STATEMENT

For more than six years, more than 17,000 investors (collectively, the "Investors" or "Limited Partners") in the managed private funds (or, as defined herein, the "Partnerships") of GPB Capital Holdings, LLC ("GPB Capital"), have been waiting to receive returns of any kind on their investments. Distributions and returns of capital were abruptly halted in 2018 amidst numerous investigations of GPB Capital and its former Chief Executive Officer, David Gentile ("Gentile"), and several of his associates. The investigations led to criminal charges and convictions of Gentile, Jeffry Schneider ("Schneider"), and Jeffrey Lash ("Lash"), the commencement by the Securities and Exchange Commission (the "SEC") of the instant enforcement action (the "Action"), and multiple other enforcement actions by state agencies.

On December 7, 2023, the Court entered an order that converted the prior monitorship (discussed in more detail below in Section III) into a receivership, appointed Joseph T. Gardemal III as the Receiver over the entities set forth on Exhibit B (collectively, the "Receivership Entities") to this Motion (the "Motion"), which created the receivership estate (the "Receivership Estate"), and directed the Receiver to, among other things, within forty-five (45) days of entry thereof, "propose to the Court a plan to distribute available Receivership Assets (subject to appropriate reserves) to investors and creditors of the Receivership Entities" (the "Receivership Order"). *See* ECF No. 187.  Upon the motion of Gentile, Schneider, and Ascendant Capital, LLC (collectively, the "Defendants") which the SEC did not oppose, this Court entered an order staying the Receivership Order pending appeal. Following the filing of an appeal by the Defendants, the United States Court of Appeals for the Second Circuit (the "Second Circuit") imposed its own stay of the Receivership Order. On December 3, 2024, the Second Circuit affirmed the Receivership Order and lifted the stay, thereby permitting the Receiver to immediately implement the receivership pursuant to the Receivership Order.

1

Therefore, pursuant to the Receivership Order and its requirement that the Receiver develop a plan to return funds to Investors, the Receiver now submits this Motion seeking approval of a plan of distribution (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"; the Plan is attached hereto as Exhibit A),[1] and his declaration, filed contemporaneously with this Motion, in support of the Plan (the "Gardemal Declaration"). The Plan, which has been briefed to the SEC and state agencies who have filed similar enforcement actions against GPB Capital, authorizes an initial distribution of not more than $400,000,000 within fourteen (14) business days of the Court's entry of the Plan Order (as defined below) (the "Initial Distribution"; with respect to each individual Investor, the "Initial Distribution" shall mean the payment to such Investor of its portion of such aggregate distribution) to thousands of Investors in three of the Partnerships: (i) GPB Automotive Portfolio, LP ("APLP"), (ii) GPB Holdings II, LP ("Holdings II"), and (iii) GPB Cold Storage, LP ("Cold Storage"), which collectively hold approximately $1,109,111,000 in cash as of December 31, 2024. For Investors in the other Partnerships, the Plan establishes a framework for obtaining and distributing funds during the course of the receivership, including through litigation.

Although the Plan consists of many parts, its core objective is the efficient return of available capital to Investors. *First*, the Plan recognizes that some Partnerships have the funds to make an Initial Distribution to their Investors, while others have limited to zero funds available at present (after accounting for existing financial obligations and appropriate Reserves (as defined below)). After an extensive analysis, however, the Receiver has determined that there is not an appropriate legal or equitable basis to pool the Partnerships' assets under the Plan—particularly because the Receiver has not identified material instances of improper commingling amongst the

---

[1] Unless otherwise indicated, capitalized terms not defined in this Motion have the meanings given to such terms in the Plan.

Partnerships. Rather, the Partnerships were offered as individual, unique investment opportunities, and they in fact operated as distinct entities. Accordingly, the Receiver has determined that it is appropriate for the Plan to treat each Partnership's assets as separate and apart from the others. Thus, distributions from each Partnership with available funds will be conducted pursuant to the distribution waterfall contained in that specific Partnership's operative Limited Partnership Agreement ("LPA"), as determined by the Receiver pursuant to the powers and discretion granted to him under the Receivership Order and the proposed order approving the Plan attached as Exhibit C (the "Plan Order").[2] *Second*, as described herein, litigation may result in the securing of funds for Partnerships that are not in a financial position to make payments to Investors in the near-term and enhance overall recoveries for investors in the long-term.

Accordingly, and as discussed more fully below, the Receiver respectfully requests that, pursuant to the Receivership Order, the Court approve (i) the Plan granting the Receiver the authority to, among other things, distribute funds to Investors pursuant to the Plan, and (ii) the Plan Order.

## SUMMARY OF THE PLAN

As the following summary of the key elements of the Plan explains, the Plan:

- Establishes the method and amounts for the Initial Distributions totaling approximately $400,000,000 to Investors in APLP, Holdings II, and Cold Storage.

- Distributes funds on a Partnership-by-Partnership basis pursuant to the existing and agreed-upon payment waterfalls contained in each Partnership's LPA. Investors in APLP, Holdings II, and Cold Storage will not need to submit proofs of claim in order

---

[2] The operative LPA for each Partnership is the most recent version provided to Investors: GPB Holdings Third Amended and Restated Agreement of Limited Partnership, dated December 19, 2016; GPB Holdings II Fourth Amended and Restated Agreement of Limited Partnership, dated April 26, 2018; GPB Holdings Qualified Second Amended and Restated Agreement of Limited Partnership, dated May 13, 2014; GPB Holdings III Amended and Restated Agreement of Limited Partnership, dated January 2, 2018; Waste Amended and Restated Agreement of Limited Partnership, dated March 1, 2018; NYCD Agreement of Limited Partnership, dated April 7, 2016; Cold Storage Agreement of Limited Partnership, dated July 2, 2015; and APLP Fifth Amended and Restated Agreement of Limited Partnership, dated April 27, 2018.

3

to get an Initial Distribution (but, as described below, may submit proofs of claim later in the discretion of Investors in such Partnerships).

- Creates a structure for Subsequent Distributions (as defined below), which will be made at the Receiver's discretion, after taking into consideration available funds and necessary Reserves. Like the Initial Distributions, Subsequent Distributions will be made in accordance with the waterfall provisions of the operative LPAs.

- Establishes claims submission and resolution procedures, including a detailed schedule of deadlines and relevant dates to ensure proper notice to interested parties.

## STATEMENT OF FACTS

**I.     GPB Capital: The General Partner**

David Gentile founded GPB Capital in 2013. *See* Complaint, ECF No. 1 ¶¶ 2, 24. Since 2014, GPB Capital (or affiliates controlled by GPB Capital) has served as the general partner, or a similar controlling entity, and provides management services for the following pooled investment vehicles: (i) GPB Capital Holdings, LLC ("GPB Capital"),[3] (ii) GPB Holdings, LP ("Holdings"),[4] (iii) Holdings II, LP, (iv) GPB Holdings III, LP ("Holdings III"),[5] (v) APLP, (vi) Armada Waste Management (fka GPB Waste Management), LP ("Waste"), (vii) Cold Storage, (viii) GPB NYC Development, LP ("NYCD"), and (ix) GPB Automotive Income Fund, Ltd. ("AIF")[6] (collectively, the "Partnerships"). *Id*. ¶ 2. Most of the Partnerships acquired a controlling interest in, and provided management services to, income-producing private companies primarily in the automotive retail, waste management, solar energy, real estate, and healthcare sectors (the "Portfolio Companies"), while others, such as Cold Storage and NYCD, acquired property to develop and generate income.

---

[3] GPB Capital is the general partner. However, it is included in the definition of "Partnerships" as a convenience.

[4] When referred to in this Plan, "Holdings" shall be deemed to represent the combined structure of both     (i) GPB Holdings Qualified, LP ("Holdings Qualified"), a feeder fund into Holdings, and (ii) Holdings.

[5] In December 2017, GPB Capital organized Holdings III, a Delaware limited partnership, which would acquire the same types of investments in the same manner as Holdings. Holdings III held one asset that it sold to Holdings II, after which time Holdings III was wound down.

[6] GPB Capital formed, and currently holds the management voting shares of, AIF, a Cayman Islands exempted company that has an independent board of directors. AIF is part of the Receivership Estate.

4

## II.        Overview of the Partnerships and Marketing Efforts

At various points between 2013 and 2016, GPB Capital, with the help of others, established the eight Partnerships. Each Partnership had a unique investment thesis and strategic focus designed to achieve distinct investment objectives for the Limited Partners.

Defendant Ascendant Capital, LLC ("Ascendant Capital") served as the placement agent for GPB Capital and promoted GPB Capital's investments to a network of broker-dealers and investment advisors throughout the United States. *Id.* ¶¶ 22, 31. The broker-dealers, in turn, sold interests in the Partnerships to the Investors. Schneider is the owner and CEO of Ascendant Capital, which he also ran. *Id*. ¶ 25. Ascendant Capital operated in association with two registered broker-dealers: Axiom Capital Management, LLC ("Axiom"), and later, Defendant Ascendant Alternative Strategies, LLC ("AAS"). *Id.* ¶ 31. Gentile and Schneider are both minority owners of AAS. *Id.* ¶¶ 24, 25.

Approximately 17,000 Investors invested a total of approximately $1.8 billion in the Partnerships. Investors received marketing materials and offering documents for each Partnership describing the possibility of receiving per annum cash distributions and "special distributions" (that would be paid periodically) during the life of the Partnership. *Id.* ¶ 3.

For example, the original APLP Private Placement Memorandum (the "PPM"), from May 2013, stated that the Partnership would "make distributions based on cash flows received from Dealerships . . . to the [Limited Partners] beginning three months after their subscription at annual return rates targeted to be at least 8%, [which could be] more, less, or none at all, depending on the cash flows." APLP PPM, May 27, 2013, p. 8. The later APLP PPMs, starting in 2016, provided that the Partnership would make "distributions of cash as it's available," and "reserve[d] the right to return Capital Contributions to LPs as part of [the Partnership's] distributions, though [it did] not presently plan to do so." *See, e.g.*, APLP, Second Amended Class A PPM, June 30, 2016, pp.

5

5-6; APLP, Second Amended Class B PPM, June 30, 2016, pp. 5, 6; *see* also, e.g., APLP, Fifth A&R Class A PPM, July 2018, p. 6; APLP, Fifth A&R Class B PPM, July 2018, p. 6. The initial Holdings PPM, from 2013, provided that the Partnership would "make distributions of cash, if any, to the [Limited Partners] beginning three months after their subscription," with a target rate for the distributions of 5-8%. *See, e.g.*, Holdings, Class A PPM, March 29, 2013, pp. 6-7; Holdings, Class B PPM, March 29, 2013, pp. 6-7. The 2013 Holdings PPM did not identify the source of the cash distributions. As of 2016, the Holdings PPMs provided that the Partnership "reserve[d] the right to return Capital Contributions to [Limited Partners] as part of distributions, although [the Partnership did not] presently have plants to do so." *See, e.g.*, Holdings, Second Amended Class A PPM, May 2016, p. 6; Holdings, Third Amended Class A PPM, December 2016, p. 7; Holdings, Third Amended Class B PPM, December 2016, p. 6. The original NYCD PPM from 2016 stated that the Partnership would "make cash distributions to [Limited Partners] as a class when, if ever, and in such amounts as determined by GPB." NYCD, Class A PPM, April 7, 2016, p. 5.

### A.     Holdings

GPB Capital organized its first Partnership, Holdings, in March 2013. *See* Compl. ¶ 24. The Partnership raised $199,807,000 and includes 1,989 Limited Partners, including 94 in Holdings Qualified. Holdings is a diversified, multi-strategy Partnership primarily focused on acquiring and operating Portfolio Companies in the automotive retail and managed IT sectors; it also made debt investments in the life sciences and real estate sectors.[7]  Predominantly all of Holdings' assets have been sold. However, a significant portion of the automotive assets in which Holdings invested have been the subject of pending litigation with a former operating partner since

---

[7] Holdings Qualified was organized as a Delaware limited partnership in 2013 to act as a "feeder fund" for U.S. tax exempt investors that would invest substantially all of its capital in Holdings.

6

2017. From its inception to date, Holdings has distributed approximately $74.7 million to its Limited Partners. Holdings does not have sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

### B. APLP

In May 2013, GPB Capital organized APLP, a single-strategy partnership focused on acquiring, operating and consolidating retail automotive dealerships, including, in most cases, their underlying real estate as well. APLP raised $682,864,000 from 6,834 Limited Partners. APLP ultimately acquired, and at its peak operated, over fifty automotive dealerships, predominantly in the northeastern United States and under the trade name "Prime Automotive Group." In November 2021, APLP, together with Holdings II, sold substantially all of the assets of Prime Automotive Group for gross consideration of $923 million. From its inception to date, APLP has distributed approximately $109.7 million to its Limited Partners. APLP has sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

### C. AIF

GPB Capital organized AIF as a Cayman Islands exempted company in February 2015. AIF raised $55,510,000 through 77 nominee shareholders. The purpose of AIF was to solicit investments into APLP and Holdings from non-U.S. Investors through indirect investments in an intermediate entity, GPB Automotive Income Sub-Fund, Ltd., a Cayman Islands exempted company ("AISF"). AISF, using funds invested in AIF and directed to AISF, purchased notes issued by each of APLP and Holdings (the "AIF Notes"), thus facilitating debt investments in APLP and Holdings themselves, rather than, as was the case in the other Partnerships, in portfolio companies. Although Investors in AIF were issued shares, the sole holder of the AIF Notes is AISF. As such, Investors in AIF depend on the performance of the AIF Notes issued by APLP and

Holdings to AISF, which as of December 31, 2024, had $21,452,000 outstanding in principal and $10,815,000 million accrued in outstanding interest.

The Receiver will not be making any distributions to Investors in AIF unless (i) there are assets available in the relevant Partnerships for such purpose and (ii) the Receiver has reasonably determined that the Claims asserted in connection with the AIF Notes are Allowed Claims. In addition, no distributions will be made to the Excluded Parties (as defined below), any person or entity related to or associated with the Excluded Parties, and/or to any Claimants as determined within the sole discretion of the Receiver. The Receiver is authorized to require additional information, including, without limitation, the identities of the direct or indirect shareholders of AIF and their relationship to the Partnerships and/or the Excluded Parties. The Receiver has the right to base determinations of distributions to holders of AIF Notes on his review and analysis of such information and withhold any distributions to any holder of AIF Notes that does not provide such information in form and substance satisfactory to the Receiver. Additionally, and pursuant to the Receivership Order, the Receiver is authorized (i) to issue subpoenas for documents and testimony seeking such information and (ii) to engage in any motion practice, or to commence litigation in connection with, or in response to, any Proofs of Claim or as otherwise determined by the Receiver in his sole discretion, including, without limitation, litigation based on theories of equitable subordination, recharacterization and/or fraudulent conveyance, pursuant to the Receivership Order, this Plan, any other order of the Court, and/or applicable law.

### D. Holdings II

In April 2015, GPB Capital formed Holdings II, which raised $688,405,000 from 6,404 Limited Partners. *Id.* ¶ 25. Holdings II is a diversified, multi-strategy partnership that was primarily focused on acquiring and operating portfolio companies in the automotive retail, energy, healthcare, and tech-enabled services industries. Holdings II's investments in the tech-enabled

8

services sector were focused largely on the healthcare space, including investments in portfolio companies that (i) sell and license various electronic health records software, and (ii) offer practice management software platforms for ambulatory, acute and long-term care facilities. Further, in connection with its automotive retail strategy, Holdings II invested in the Prime Automotive Group along with APLP. The sale of substantially all of the assets of Prime Automotive Group in late 2021 resulted in Holdings II receiving approximately 33.5% of the net proceeds of that transaction. Currently, Holdings II owns businesses in the tech-enabled services, energy, and real estate sectors, as well as equity positions. From its inception to date, Holdings II has distributed approximately $132.5 million to its Limited Partners.  Holdings II has sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

### E.     Cold Storage

GPB organized Cold Storage in July 2015. *Id.* ¶ 27. Cold Storage raised $57,331,000 from 500 Limited Partners. Cold Storage was organized as a single-strategy fund to acquire, develop and operate cold storage facilities in Newark, New Jersey. In furtherance of that strategy, Cold Storage acquired interests in two cold storage facilities, as well as a 30-acre development site for the purposes of constructing a new cold storage facility. As of April 2022, the Partnership sold all of its assets for approximately $78,000,000, and from its inception to date, Cold Storage has distributed approximately $10.9 million to its Limited Partners. Cold Storage has sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

### F.     NYCD

GPB organized NYCD in April 2016. NYCD was not named as a relevant entity in the Complaint. *See e.g.* Compl. NYCD raised $31,897,000 from 376 Limited Partners. NYCD was organized as a single-strategy fund to acquire a parcel of land in downtown Brooklyn to be

9

developed into a luxury condominium with residential units and commercial space. Construction commenced in early 2017, with an initial goal of completing development by late 2018 or early 2019. The project, however, was subject to significant delays stemming from, among other things, permitting issues, construction challenges, and the COVID-19 pandemic. The building was ultimately completed and ready for occupancy in early 2021. All of the residential units have been sold, and the commercial space is under contract to be sold. NYCD has made no distributions to its Limited Partners. NYCD does not have sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

G. **Waste**

In June 2016, GPB Capital organized Waste, which raised $166,291,000 from 1,678 Limited Partners. *Id.* ¶ 26. Waste was organized as a single-strategy fund focused on acquiring companies in the waste management industry serving commercial, industrial and recycling markets. Waste acquired assets in New York, Massachusetts, Ohio, Pennsylvania, and West Virginia and focused on consolidating the assets into a vertically integrated waste management platform with collections operations, transfer stations, recycling facilities and landfills. As of December 31, 2024, all of Waste's operating assets have been sold. From its inception to date, Waste has made approximately $18,280,000 in distributions to its Limited Partners. Waste does not have sufficient assets to enable the Receiver to make a distribution to Investors in such Partnership as part of the Initial Distribution.

III. **Enforcement Actions; Criminal Indictments and Convictions**

The SEC's investigation into Gentile and GPB Capital began in 2018, and ultimately led to the commencement of the Action in February 2021. Within days of filing its Complaint, the SEC also filed an Emergency Motion to appoint Joseph T. Gardemal III to serve as independent Monitor over GPB Capital. ECF No. 10. The Court granted the motion and appointed Mr.

10

Gardemal as Monitor pursuant to the Order Appointing Monitor, which was later amended. ECF Nos. 23, 39 (the "Amended Monitor Order"). Among other things, the Amended Monitor Order required GPB Capital to provide the Monitor with access to its books and records and financial statements (the "Books and Records") and also granted the Monitor the authority to approve or disapprove of certain material transactions and other aspects of the operations of GPB Capital and the Partnerships.

On February 4, 2021, the same day that the SEC filed its enforcement action, the United States Attorney for the Eastern District of New York announced that a grand jury had indicted Gentile for securities fraud, wire fraud, and related conspiracies based on essentially the same conduct alleged in the SEC's Complaint. *See United States v. Gentile, et al.*, 21-cr-00054 (E.D.N.Y) (the "Criminal Case"). Schneider and Lash, a former GPB Capital managing partner who focused on the automotive business, were also indicted with Gentile. As noted above, Gentile, Schneider and Lash have all been convicted of various charges in the Criminal Case.

Relatedly, Attorneys General, Secretaries of State, and Securities Commissions in Alabama (*Ala. Sec. Comm'n. v. GPB Capital Holdings, LLC, et al.*, No. 47- cv-2021-900169.00), Georgia (*GPB Capital Holdings, LLC, et al.*, No. ENSC-200879), Illinois (*GPB Capital Holdings, LLC, et al.*, No. 2000838), Massachusetts (*In re GPB Capital Holdings, Inc.,* No. E-2018-0100), Missouri (*GPB Capital Holdings, LLC, et al.*, No. AP-21-01), New Jersey (*Grewal v. GPB Capital Holdings, LLC, et al.*, No. ESX-C-000019-21), New York (*State of N.Y. v. GPB Capital Holdings, LLC, et al.*, No. 450287/2021), and South Carolina (*GPB Capital Holdings, LLC, et al.,* No. 20202719) (collectively, the "State Enforcement Actions") filed enforcement actions against GPB Capital, as well as Gentile, Schneider, and Lash personally. Although the State Enforcement Actions vary slightly, each contains the same material allegations: under Gentile's direction, GPB

11

Capital misled investors by promising regular distributions of up to 8% from the proceeds of its investments; Gentile and the other individual defendants diverted monies from Portfolio Companies to themselves through shell companies; Gentile collected millions of dollars in stipends and fees for work for which he was already otherwise being paid; Investors' money was improperly used to enrich Gentile and his family; Gentile had a Portfolio Company purchase him a Ferrari for personal use; and Gentile received tens of millions of dollars in undisclosed acquisition fees. *See e.g., New York v. GPB Capital Holdings, LLC, et. al.*, Index No. 450287/2021 (Sup. Ct. N.Y. Cnty.), NYSCEF Doc. No. 2, ¶¶ 8, 9, 31-33. Moreover, each State Enforcement Action asserts state law securities fraud claims arising from alleged material misstatements, fraud, and false promises regarding the sale and management of GPB Capital-related securities. *See id.*

## IV.     The Receiver's Review of GPB Capital and the Partnerships

Under the leadership of its Chief Executive Officer, Rob Chmiel (who assumed such role following the commencement of the Action and who has no involvement with the Criminal Case or State Enforcement Actions) and with the Monitor's independent oversight, GPB made significant improvements to the financial and operational health of the Partnerships. This progress included, among other things, completing sale transactions that have returned approximately $1.3 billion in gross proceeds to the Partnerships, and filing required financial and reporting forms with the SEC.

During the Monitorship, the Monitor (now the Receiver) and his team conducted a thorough review and analysis of GPB Capital's and the Partnerships' Books and Records.[8] Among other things, they examined the manner in which GPB Capital's financial and business affairs were conducted. The analysis included a review of historical loan transactions between the Partnerships

---

[8] The Monitor's team is made up of forensic accountants and restructuring experts, including Mark Roberts, Dan You, and Paul Coloma, among others, from the firm of Alvarez & Marsal.

12

(the "<u>Interfund Loans</u>") in the general ledgers of each Partnership, as well as associated loan documentation, and, where applicable, relevant communications concerning the transactions. The purpose of the review was to determine whether prior GPB Capital management under Gentile properly respected the unique corporate form of the respective Partnerships. This review analyzed whether the Interfund Loans were made and repaid on commercially reasonable terms, and whether the Interfund Loans were permitted under the Partnerships' governing documents. In addition, the review examined whether Investors' funds were improperly used across the Partnerships to support redemptions, operations, or any other payments. Finally, the Receiver's team performed analytical procedures on the Books and Records of each Partnership, including those maintained by the third-party administrator, Phoenix American Financial Services, Inc. ("<u>Phoenix</u>"), to assess, among other things, whether expenses and earnings of each Partnership were allocated to the respective Investors' capital accounts consistent with the terms of the relevant governing agreements after accounting for corrections and true-ups. As discussed below, each component of the Receiver's review has led him to conclude that GPB Capital did, in fact, respect the corporate form of each Partnership.

### A. The Treatment of Each Partnership as a Distinct Corporate Entity

The Receiver's review determined that each Partnership constituted and was treated as a distinct entity. While some of the Partnerships held common investments -- for example, APLP and Holdings II jointly owned the Prime Automotive Group assets -- each Partnership was launched at a different time, produced separate offering materials, had and executed on its own unique investment strategy, and acquired substantially different assets. Each of these differences was disclosed in each Partnership's specific offering materials distributed to its Investors.

| Partnership | Launch Date | Investment Objective |
|---|---|---|
| Holdings | March 2013 | Diversified, multi-strategy partnership focused on acquiring and operating portfolio companies in the automotive retail and managed IT sectors and making debt investments in life sciences and real estate. |
| APLP | May 2013 | Acquire, operate, and consolidate retail automotive dealerships, typically along with their underlying real estate. |
| Holdings II | April 2015 | Diversified, multi-strategy partnership focused on acquiring and operating portfolio companies in the automotive retail, energy, healthcare, and tech enabled services (with a focus on healthcare) sector. |
| Cold Storage | July 2015 | Single-strategy fund to acquire, develop and operate cold storage facilities |
| NYCD | April 2016 | Single-strategy fund to acquire, develop, and lease a residential and commercial real estate property. |
| Waste | June 2016 | Single-strategy fund focused on acquiring companies in the waste management industry that serve the commercial, industrial, and recycling markets. |

Moreover, the Partnerships historically maintained separate books and records with respect to their operations—*i.e.*, inflows and outflows of capital are reflected in the Books and Records for each individual Partnership, not across the Partnerships. Further, prior to and during the Monitorship, Investors received periodic statements and Schedule K-1s that reflected the activities of each individual Partnership, and not on a consolidated or other combined basis among all of Partnerships. As a result, Investors have tax liability with respect to investments in a particular Partnership, rather than across all Partnerships collectively. Audited financials were similarly generated on a Partnership-by-Partnership basis. Thus, based on the Receiver's thorough review, the Receiver has concluded that (i) GPB Capital respected the separate legal corporate status of each Partnership and did not commingle assets or operations, or treat the Partnerships on a consolidated basis, and (ii) Investors did not, and could not, view their investments as having been made in the Partnerships on an actual or deemed consolidated basis.

### B.   The Interfund Loans were Appropriately Administered

Through the Receiver's analysis, it was determined that, with limited exceptions, as discussed below, the Interfund Loans were documented with loan agreements on commercially reasonable terms, and interest and principal payments were made consistent with the terms of the respective loan agreements. In total, the Receiver identified twenty-six Interfund Loans, with a total original principal balance of approximately $118 million. As reflected in the table below, twenty-three of the Interfund Loans were transactions between APLP, Holdings, and/or Holdings II.

| | | Lender | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Auto Portfolio | | Holdings I & HQ | | Holdings II | | Waste Management | | NY City Development | | Cold Storage | | Total | |
| | Values In ($000s) | Principal $ | Count | Principal $ | Count | Principal $ | Count | Principal $ | Count | Principal $ | Count | Principal $ | Count | Principal $ | Count |
| Borrower | Auto Portfolio | - | - | 3,520 | 6 | - | - | 25,000 | 1 | - | - | - | - | $ 28,520 | 7 |
| | Holdings I & HQ | 34,694 | 14 | 803 | 1 | - | - | - | - | - | - | - | - | $ 35,497 | 15 |
| | Holdings II | 28,000 | 2 | - | - | - | - | 20,000 | 1 | - | - | - | - | $ 48,000 | 3 |
| | Waste Management | - | - | - | - | - | - | - | - | - | - | - | - | $ - | - |
| | NY City Development | - | - | 6,000 | 1 | - | - | - | - | - | - | - | - | $ 6,000 | 1 |
| | Cold Storage | - | - | - | - | - | - | - | - | - | - | - | - | $ - | - |
| | Total | $ 62,694 | 16 | $ 10,323 | 8 | $ - | - | $ 45,000 | 2 | $ - | - | $ - | - | $ 118,017 | $ 26 |

All but five of the Interfund Loans were supported by documented loan agreements. The effective interest rates the borrower Partnerships paid on twenty-two of the loans were within the range of approximately 10% to 15% per annum. To assess the reasonableness of the interest rates earned by the lender Partnerships, the Receiver considered Pepperdine Capital Markets Reports, which analyze survey results and investigate, for each private capital market segment, what the required returns are for extending capital in the current economic environment. The surveys indicated that, between 2013 and 2017, the expected rate of return on debt financing and asset-based lending ranged from approximately 3% to 14%, and mezzanine lending ranged from approximately 8% to 24%, which is consistent with the rates charged in the Interfund Loans. No interest was paid on three of the Interfund Loans but the full principal balance of each of those loans was repaid within one day of the funds being borrowed. For the remaining Interfund Loan,

15

the borrower Partnership appeared to have mistakenly paid the interest twice. Finally, all but two of the Interfund Loans were repaid in full, and those two Interfund Loans (with a combined principal balance of approximately $1.6 million) were instead fully offset against other amounts that the lender Partnership owed.

Accordingly, based on the Receiver's review, the Receiver concluded that the Interfund Loans were consistent with the treatment of the Partnerships as distinct entities, were used for legitimate business purposes such as to support liquidity, were not improperly used across the Partnerships, and were not comingled or otherwise improperly shared among the Partnerships.

### C. GPB Capital's Books and Records are Materially Accurate

The Receiver and his team also performed analytical procedures to assess the completeness of GPB Capital's Books and Records. Specifically, they compared the monthly activity (*i.e.*, total debits and total credits) recorded in the cash accounts on each of the Partnerships' general ledgers to more than 1,250 monthly supporting bank statements and observed only minor, non-material differences. Based on this analysis, the Receiver has concluded that the Partnerships' general ledgers accurately reflected the separate economic activity of each of the Partnerships.

### V. <u>Authority to Propose Plan</u>

Under the Receivership Order, the Receiver has the power and was directed to propose a plan to distribute available Receivership Assets to Investors and creditors of the Receivership Entities. Consistent with the Receivership Order, the Receiver now submits this Motion for approval of the Plan to effectuate, among other things, (i) the Initial Distribution in an amount of not more than $400,000,000 of the Receivership Assets to Investors in (a) APLP, (b) Holdings II, and (c) Cold Storage; (ii) the establishment and maintenance of cash Reserves in the initial amount of approximately $719,000,000; (iii) claims solicitation and resolution procedures that bind

Investors and holders of Claims against any Receivership Entity; and (iv) Subsequent Distributions to the extent of funds available for such purpose.

## ARGUMENT

### I.  The Court has Broad Discretion to Approve the Plan.

"District courts have discretion to approve a receiver's proposed distribution plan as long as the plan is 'fair and reasonable.'" *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS), 2014 WL 2112032, at \*14 (S.D.N.Y. May 6, 2014), *aff'd sub nom. SEC v. Amerindo Inv. Advisors*, 639 F. App'x 752 (2d Cir. 2016) (quoting *SEC v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y.2009)); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (district court must only find that a distribution plan "is fair and reasonable" and then "its review is at an end."). "Once the equity jurisdiction of the district court has been properly invoked . . . the court possesses the necessary power to fashion an appropriate remedy." *SEC v. Certain Unknown Purchasers of Common Stock of & Call Options for Common Stock of Santa Fe Int'l Corp.*, 817 F.2d 1018, 1020 (2d Cir. 1987) (citation omitted). Indeed, this Court's order approving the conversion of the Monitorship to the Receivership explicitly ordered that the Receiver has been "appointed . . . [to] propose . . . a fair and equitable distribution of the remaining Receivership Assets."  Receivership Order ¶ 2.

### II.  The Receiver's Proposed Plan of Distribution is Fair and Reasonable.

Where a plan of distribution is "drafted in consultation with the SEC, the SEC fully supports the [p]lan, and, [] the SEC [offers its] view, [that] the Plan 'is consistent with Second Circuit and other legal authority' . . . [t]he SEC's judgment is entitled to deference." *Byers*, 637 F. Supp. 2d at 175 (*citing Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 34 n.6 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006)). Moreover, "[i]n making its decision, a court may [also] defer to the receiver's choices for the plan's details." *Amerindo*, 2014 WL 2112032, at \*14 (citing *Byers*, 637 F. Supp. 2d at 175). As discussed more fully below, the

17

Receiver has determined that the distribution methodology under the Plan and as described herein and in the Gardemal Declaration is the optimal approach for returning funds to Investors based on the specific facts and circumstances of this matter. The Plan has been briefed to the SEC and the State Enforcement Agencies.

### A. Partnership-By-Partnership Distribution is Fair and Equitable.

"[T]he distribution of assets to defrauded investors in [the context of] receiverships. . . . [is governed by] equitable principles." *SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395 (RWS), 2000 WL 1752979, at *13 (S.D.N.Y. Nov. 29, 2000), *aff'd*, 290 F.3d 80 (2d Cir. 2002). "Of course, what is equitable will depend on the circumstances of the case." *Id.*

Critically, "where there are distinct groups of investors who are not similarly situated in material aspects, the [c]ourt need not distribute funds on a pro rata basis." *SEC v. Morgan*, No. 19 Civ. 661 (EAW), 2020 WL 6536894, at *6 (W.D.N.Y. Nov. 6, 2020) (citing *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 652 (7th Cir.2009)); *see also Credit Bancorp*, 290 F.3d at 90 ("return of identifiable assets to particular victims" permissible where "the assets had somehow been segregated in the manner of true trust accounts" (citations omitted)); *CFTC v. Walsh*, 712 F.3d 735, 751 (2d Cir. 2013) (recognizing that pro rata distribution was inappropriate where "two groups were not similarly situated") (citing *Enterprise Trust Co.*, 559 F.3d at 652); *SEC v. Shiv*, 379 F. Supp. 2d 609, 617 (S.D.N.Y. 2005) ("The Second Circuit . . . [has] extended the [r]eceiver's equity jurisdiction to trace and repatriate funds from many discrete accounts."); *SEC v. Bivona*, No. 16 Civ. 1386 (EMC), 2017 WL 4022485, at *8 (N.D. Cal. Sept. 13, 2017) ("[C]ourts have authorized tracing in circumstances where traceability was not simply a function of chance, but rather, due to true constraints on the defendant's control or use of the funds"). In other words, where "investors had different relationships with [the Partnerships], the terms of their agreements with [the Partnerships] were different, and there is no evidence . . . to support the conclusion that

18

their funds were commingled in a manner supporting a *pro rata* distribution," "a *pro rata* distribution is not appropriate." *Morgan*, 2020 WL 6536894, at *6; *see also SEC v. Detroit Mem'l Partners, LLC*, No. 13 Civ. 1817 (WSD), 2016 WL 6595942, at *6-7 (N.D. Ga. Nov. 8, 2016) (rejecting "pooling of entity assets" in connection with distribution plan where: (1) "[t]he schemes concocted for . . . entities were not unified"; (2) "investors [we]re not similarly situated"; and (3) "funds were not inextricably commingled among the . . . entities").

As set forth in the Gardemal Declaration, in determining the optimal approach for achieving the return of money to Investors and creditors under the Plan, the Receiver evaluated various potential models, the facts and circumstances of this matter, and consulted with the SEC. The Receiver determined that a pooled, or *pro rata*, distribution across the Partnerships is not appropriate in this matter. *See* Gardemal Declaration ¶ 14.

The Receiver based his decision on several considerations, including that Investor funds were not improperly commingled among the GPB Funds. To the extent that there were interfund transactions among the Partnerships, such transactions were on commercially reasonable terms and were documented in the Books and Records. Moreover, each Partnership's Investors are not similarly situated. The Partnerships maintained separate Books and Records. Each Partnership operated as its own distinct investment vehicle with unique and generally non-overlapping investment objectives, which formed one of the main points of differentiation between and among the Partnerships. In addition, each Partnership was launched at a different time (as described below), and based on the applicable offering materials, a reasonable Investor would have understood that an investment in one Partnership would assume the risks, as well as the benefits, associated only with that specific Partnership's investment objective. *Id*.

19

The Receiver must consider all Investors, and while pooling might benefit those Investors in funds whose investments did not fare as well as others, that approach would not be consistent with due process or individual property rights for, nor would it be fair to, the Investors in APLP, Holdings II, and Cold Storage, who make up the majority of the Investors in the Partnerships. Further, audited financial statements, periodic statements, and other documentation provided to Investors reflected the activities of each Partnership on an individualized—that is, not on a consolidated—basis.

**B.      Neither Substantive Consolidation, nor Veil-Piercing, is Appropriate Here.**

For similar reasons, the Receiver has determined that it is not appropriate to apply the bankruptcy doctrine of substantive consolidation, or corporate veil-piercing, in connection with the Plan. *Id*.

As a threshold matter, in considering substantive consolidation, it is important to keep in mind that "[w]hen an equity receivership is involved, case law concerning equity receiverships is generally more applicable than bankruptcy case law." *CFTC v. Eustace*, No. 05 Civ. 2973 (MMB), 2008 WL 471574, at *7 (E.D. Pa. Feb. 19, 2008); *see also In re Stanford International Bank, Ltd*., No. 09 Civ. 721 (DCG), 2012 WL 13093940, at *15 (N.D. Tex. July 30, 2012) (acknowledging that substantive consolidation would be equitable in the given case but refusing to extend it beyond the bankruptcy context); *SEC v. Sunwest Management, Inc.*, No. 09 Civ. 6056 (HO), 2009 WL 3245879, at *10 (D. Or. Oct. 2, 2009) ("The Court is not bound in this Federal Receivership Case to apply the bankruptcy law concept of substantive consolidation or to follow bankruptcy case law regarding that separate and distinct concept.").

Bankruptcy courts have authority in appropriate cases to order substantive consolidation, which "has the effect of consolidating the assets and liabilities of multiple debtors and treating them as if the liabilities were owed by, and the assets held by, a single legal entity. In the course

20

of satisfying the liabilities of the consolidated debtors from the common pool of assets, intercompany claims are eliminated and guaranties from co-debtors are disregarded." *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *35 (Bankr. S.D.N.Y. Oct. 31, 2003) (internal citations omitted). To determine whether to substantively consolidate entities, bankruptcy courts traditionally have considered a variety of factors, including:

> [T]he presence or absence of consolidated financial statements; the unity of interest and ownership among various corporate entities; the degree of difficulty in segregating and ascertaining individual assets and liabilities; the transfers of assets without formal observance of corporate formalities; the commingling of assets and business functions; the profitability of consolidation at a single physical location; and the disregard of legal formalities.

*In re Republic Airways Holdings Inc.*, 565 B.R. 710, 716-17 (Bankr. S.D.N.Y. 2017), *aff'd*, 582 B.R. 278 (S.D.N.Y. 2018) (internal quotations omitted) (quoting *Worldcom, Inc.*, 2003 WL 23861928, at *35).

In a similar vein, courts "will not disregard the corporate form or otherwise disturb the legal attributes, such as limited liability" of a corporate entity (*Midland Interiors, Inc. v. Burleigh*, No. 18544, 2006 WL 4782237, at *3 (Del. Ch. Dec. 19, 2006)), except if an affiliated entity is merely an "alter ego" of the other and is "used in perpetration of fraud or injustice." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 713 (Del. Ch. 2021). For example, where a parent entity has "disregard[ed] the separate corporate" status of its subsidiaries to cause fraud or injustice, the parent may be held liable for the acts of its subsidiaries. *See Midland Interiors*, 2006 WL 4782237, at *3. Under this theory, a court determines whether an affiliated entity can be held liable based on several factors, "includ[ing] insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a facade for the owner." *Manichaean Capital*, 251 A.3d at 714.

21

Here, many of the facts that favor implementation of Partnership-by-Partnership distributions, at the same time, weigh *against* the application of substantive consolidation and veil-piercing. Critically, the Receiver did not identify evidence of improper commingling of funds between or among the Partnerships, and with few exceptions, the limited number of Interfund Loans were executed in observance of corporate formalities. *See* Gardemal Declaration ¶ 14. Further, the Partnerships' audited financial statements were not consolidated, nor has the Receiver identified an instance in which any of the Partnerships were undercapitalized to carry out a fraud or injustice. In contrast, each Partnership had its own unique investment objective, and assets were not shared among the Partnerships to achieve those different objectives. The Receiver has also not encountered any difficulty in segregating and ascertaining individual assets and liabilities. To the contrary, the Receiver has reviewed the Books and Records for each Partnership and has determined that they are materially accurate such that they will facilitate a Partnership-by-Partnership distribution to Investors. *Id*. ¶ 12.

Therefore, the Receiver has determined that the most appropriate course of action is to return as much cash as possible, as promptly as possible, on a Partnership-by-Partnership basis, while holding back and maintaining sufficient Reserves to, among other things, (i) maintain the Receivership Assets and their value during the pendency of the Receivership Estate; (ii) administer the Receivership Estate and pay administrative expenses including, without limitation, administrative fees and expenses, and indemnification and advancement costs; (iii) account for certain unresolved contingent liabilities arising from ongoing ancillary actions related to the Partnerships or otherwise; (iv) fund litigation; (v) process disputed obligations and Claims; (vi) pay fees and expenses in respect of the wind-down and termination of the Receivership Estate and Receivership Entities; and (vii) make subsequent distributions from time to time. *Id*. ¶ 25.

* * *

Accordingly, the Court should approve the Receiver's proposed distribution methodology based on payments to Investors on a Partnership-by-Partnership basis to the extent of available assets for such purpose.

## III.   The Initial Distribution (and all Distributions) will be Made in Accordance with each Partnership's LPA.

The Receiver seeks Court authorization pursuant to the Receivership Order to make the Initial Distribution to Investors in APLP, Holdings II, and Cold Storage of no more than $400,000,000 in aggregate on a Partnership-by-Partnership basis from the assets of the Receivership Estate applicable to each such Partnership.

The Receiver will make the Initial Distribution and all Subsequent Distributions in a manner consistent with the relevant governing documents for each Partnership. Therefore, the Initial Distribution and all Subsequent Distributions will be made in accordance with each Partnership's LPA, which in turn means that an individual Investor's Claim will be limited to the amount that Investor is entitled to under the applicable LPA. The Initial Distribution will be made in accordance with each Partnership's LPA's "waterfall of distributions" provision, which outlines the order in which the Investors and certain entities affiliated with GPB Capital (the "Special Limited Partners") receive payments from that Partnership.  As provided in each LPA, the waterfall of distribution takes into account amounts previously received by a Limited Partner (whether in the form of distributions or redemption payments) and hence the amount of the Initial Distribution received by a Limited Partner will be adjusted to reflect these previous amounts. The Receiver will not make any distributions as part of the Initial Distributions to the Special Limited Partner, which are Excluded Entities under the Plan, of any Partnership. For the Initial Distribution, monies will go to Investors who invested in the three Partnerships that, according to those

23

Partnerships' Books and Records, currently have available capital to make distributions: (i) APLP, (ii) Holdings II, and (iii) Cold Storage.[9]

The mechanics for the waterfall distributions under each of Cold Storage, Holdings II, and APLP are set forth in Article VIII of the Plan. Under the Plan, the Receiver may also make additional distributions to APLP, Holdings II and/or Cold Storage of any money that becomes available for such purpose. Any such distributions would be calculated and paid out to Investors in accordance with these same waterfall provisions, and such calculations would start from the point in the waterfall where the Initial Distribution ended. As noted above, Holdings, Waste, and NYCD do not have assets available at this time to make distributions as part of the Initial Distribution. The Receiver may make distributions of any money that becomes available to such Partnerships (such as, for example, the proceeds of litigating causes of action belonging to the Partnerships or that generally affect the Partnerships, or settlement thereof) as and when possible, again on a Partnership-by-Partnership basis.

## IV.    The Initial Distribution Will Occur Prior to the Bar Date.

To facilitate the Claims Resolution Procedures, ease the burden on individual Investors and the Receivership Estate, and start returning money to Investors as quickly as possible after the Plan Order is entered, the Receiver will rely on the Books and Records to quantify a substantial portion of the approximate $1.7 billion of potential Investor Claims, prior to the completion of the Claims reconciliation process, and make the Initial Distribution to Investors in APLP, Holdings II and Cold Storage. Pursuant to the Plan, the Receiver would make the Initial Distribution to such Investors within fourteen (14) business days of the Court's entry of the Plan Order and before the

---

[9] For those Investors who made a request for a distribution prior to or during the Monitorship that was not fulfilled, all of the Partnerships' LPAs dictate that those distribution requests are up to the General Partner's discretion. Given this fact and the general principal of fairness, all such Investors will be treated as if they had not made such a prior request.

Claims Bar Date, which the Receiver has proposed to be forty-five (45) days after the Court's entry of the Plan Order. As described in this Motion and the Gardemal Declaration, the amount of the Initial Distribution allows the Receiver to establish sufficient Reserves for the Receivership Estate. As described below, (i) each Investor receiving an Initial Distribution will also receive a Notice of Determination which sets forth the amount of such Investor's Claim and the basis for the Initial Distribution and (ii) Investors in the other Partnerships (other than AIF, unless the Receiver determines to include any or all such Investors) will also receive Notices of Determination which sets forth the amount of such Investor's Claim and the reason why they are not receiving an Initial Distribution.

Pursuant to the Plan, the Receiver will have sole discretion to determine the timing, sequence, and size of the Initial Distribution, subject to the Plan Order and any other orders entered by the Court affecting Claims and/or distributions. This Court will retain jurisdiction for this purpose and any other matters that may arise in relation to the Plan, this Plan Order and any further distribution plans. None of the Excluded Parties will receive an Initial Distribution.

## V. Subsequent Distributions.

The Receiver is also seeking authority under the Plan to make Subsequent Distributions from time to time and without further order of the Court (unless the Receiver, in his sole discretion, determines to seek such an order), to the extent of and from available Receivership Assets, including, without limitation, (i) cash on hand, (ii) proceeds from the sale of assets of the Receivership Entities, or (iii) materialization of Causes of Action, when available Receivership Assets are deemed sufficient by the Receiver after taking necessary reserves into consideration.

The Receiver reserves the right to seek from the Court additional orders and authority in respect of Subsequent Distributions and/or to amend the Plan from time to time as appropriate or necessary (including, without limitation, to submit additional distribution proposals for any assets

that become available to any Receivership Entity, or in connection with any other matters concerning the Receivership Estate).

Pursuant to the Plan, the Receiver will have sole discretion to determine the timing, sequence, and size of each Subsequent Distribution, subject to the Plan Order and any other orders entered by the Court affecting Claims and/or distributions. This Court will also retain jurisdiction for this purpose and any other matters that may arise in relation to the Plan, the Plan Order and any further distribution plans. The Excluded Parties will not receive any Subsequent Distributions unless and until it has been determined by a final, non-appealable order of the Court that such Excluded Parties are entitled to such distributions.

## VI. The Receiver Will be Authorized to Establish and Maintain Reserves for Future Expenses and Distributions.

Under the Plan, the Receiver may withhold from amounts distributable to any Claimant, and supplement from time to time, one or more Reserves in such amount or amounts as the Receiver, in his sole discretion, determines is or may be reasonably necessary: (a) to make future distributions; (b) to maintain the Receivership Assets and value thereof during the term of the Receivership Estate; (c) to administer the Receivership Estate and pay administrative expenses including, without limitation, administrative fees and expenses, and indemnification and advancement costs; (d) to account for certain unresolved contingent liabilities arising from ongoing ancillary actions related to the Partnerships or otherwise; (e) to fund litigation; (f) to process disputed obligations and Claims; and (g) to pay fees and expenses in respect of the wind-down and termination of the Receivership Estate and Receivership Entities. In addition, the Receiver may withhold from amounts distributable to any Claimant any and all amounts, determined in the Receiver's sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Receiver will determine, in his sole discretion, the timing,

sequence, and size of the Initial Distribution and Subsequent Distributions (subject to the terms of the Plan Order), and the amount of assets that should be held in reserve.

Under the Plan, the Receiver (i) will not be required to maintain the Reserves in segregated bank accounts or in escrow accounts, (ii) may pool any or all funds in the Reserves with each other and other funds of the Receivership Estate, and (iii) may invest funds in the Reserves in accordance with the provisions of the Receivership Order. The Receiver, however, will be required to maintain records of the Reserves, and record and treat all such Reserves as if they were being held in segregated accounts.

Accordingly, the Receiver is seeking authorization to establish cash reserves in the initial aggregate amount of approximately $719,000,000 (the "Reserves") and to maintain such Reserves as determined by the Receiver. The Receiver is also seeking authority to be able to determine, in his sole discretion, whether to reduce or eliminate fees charged to the Partnerships for management and related services and apply any amounts that otherwise would have been paid for such services to distributions and/or the Reserves.

\* \* \*

Consistent with the decisions of this Circuit, the Receiver has determined that the distribution methodology for the Plan, including the Initial Distribution and Subsequent Distributions, is the optimal approach for distributing funds back to Investors who have been waiting for a distribution since well before the SEC commenced this Action in February 2021.

## VII. The Claims Solicitation, Verification, and Resolution Process.

Under the Plan, the determination of amounts owed by the Receivership Entities to Claimants will be determined by the Receiver in his sole discretion based on his review of the Books and Records.

27

### A. Timeline

Pursuant to the Plan Order, the Receiver will administer Claims in accordance with the following Claims Resolution Procedures timeline.

| *Date* | *Deadline* |
|---|---|
| 5 business days after the entry of the Plan Order or as soon as practicable | First publication of Notice of Claims Bar Date and instructions to file Proof of Claim Form in national editions of the Wall Street Journal and/or USA Today |
| 5 business days after the entry of the Plan Order or as soon as practicable | Posting of Notice of Claims Bar Date, and the Proof of Claim Form, on the Claims Agent's website maintained for the Receivership Estate |
| 14 business days after the entry of the Plan Order or as soon as practicable | Deadline to send the Notice of the Claims Bar Date and other documentation to all Claimants |
| 14 business days after the entry of the Plan Order or as soon as practicable | Deadline to send Notices of Determination to all Investors (except for Investors to AIF; the Receiver reserves the right to provide Notices of Determination to some or all Investors in AIF) |
| 15 business days after first publication notice | Second publication of Notice of Claims Bar Date and instructions to file Proof of Claim Form in national editions of the Wall Street Journal and/or USA Today |
| 45 days after the entry of the Plan Order | Claims Bar Date |
| 100 calendar days after the Claims Bar Date | Deadline to resolve Claims of Investors (or for the Receiver to file objections to Claims of Investors) |
| 170 calendar days after the Claims Bar Date | Deadline for the Receiver to file objections to Claims (other than Investors' Claims) |

The Receiver will have the right under the Plan to extend any deadlines (including any deadlines that have previously been extended), without further approval of the Court (unless the Receiver, in his sole discretion, decides to seek a confirmatory order from the Court), by filing a notice of extension with the Court prior to the applicable deadline. The Receiver will also have the

28

right to seek relief from the Court, on an expedited basis, if necessary, to otherwise modify any deadlines.

### B. Procedure for Submitting a Proof of Claim

Each Claimant (excluding Exempt Claimants, as defined below) will be required to properly complete and sign a Proof of Claim Form, which, together with supporting documentation, must be timely submitted to Epiq Corporate Restructuring, LLC ("Epiq"), the Claims Agent, in accordance with the instructions included with the Proofs of Claim Form and available at the Claims Agent's website: https://dm.epiq11.com/GPBCapital.

Proof of Claims that are filed or sent in a manner that is inconsistent with the Proof of Claim Form instructions will not be considered properly submitted and will be automatically disallowed without further order of the Court; *provided, however*, that the Receiver will have the sole discretion under the Plan to accept any Proof of Claim that is received in a manner that is inconsistent with the Proof of Claim Form instructions.

The following persons and entities will not be required to file a Proof of Claim (collectively, the "Exempt Claimants"): (i) the Receiver, the Claims Agent, Retained Professionals and Ordinary Course Professionals, and Priority Claimants; and (ii) any Investor who both (a) does not dispute the amount or characterization of its Claim as set forth in its Notice of Determination and (b) agrees that the Claim is an obligation of the specific Partnership identified in such Notice of Determination.

### C. Investors and Notices of Determination

Under the Plan, the Receiver will provide a Notice of Determination to all Investors in the Partnerships (excluding Investors in AIF who must file Proofs of Claim; *provided, however*, the Receiver will be authorized to provide Notices of Determination to some or all Investors in AIF in

his sole discretion), regardless of whether they are each entitled to receive an Initial Distribution, within fourteen (14) business days after the entry of the Plan Order.

If an Investor disagrees with the information or amounts in the Notice of Determination and wants to assert a Claim that is different, such Investor must timely and properly submit a Proof of Claim Form, including all required supporting documents in accordance with the Plan and Plan Order. Any Investor filing a Proof of Claim will have the burden of proving, by a preponderance of the evidence, the validity and amount of their Claim with sufficient documentary evidence to support such Claim. The Receiver's determination as to the amount of an Investor's Claim arising from that Investor's investment in the Partnership will be deemed final, unless the Investor demonstrates to the Receiver by a preponderance of the evidence and to the Receiver's satisfaction, either through the resolution process set forth in the Plan and described below, or by filing a Proof of Claim, that the Receiver should not rely on the Books and Records or the Court otherwise orders the Receiver, pursuant to a final, non-appealable order, to adjust the amount of such Investor's Claim arising from that Investor's investment in the Partnership.

Enclosed with each Notice of Determination for each Investor of APLP, Holdings II, and Cold Storage will be an Initial Distribution check for that Investor unless such Investor is not entitled to receive an Initial Distribution. As discussed above, the amount of such Initial Distribution check will be determined by the Receiver based on the Books and Records of the relevant Partnership. Investors who are not entitled to receive an Initial Distribution will also be sent Notices of Determination, and such notices will include a determination of such Investor's Claim by the Receiver based on the Books and Records and a brief explanation regarding why such Investor is not receiving an Initial Distribution.

30

If an Investor cashes its Initial Distribution check (regardless of when received), under the Plan that Investor will be irrevocably agreeing and representing that: (i) such Investor has not transferred or assigned all or any part of their investment in the Partnership indicated in Schedule A to their Notice of Determination, or any of their rights to receive any distributions or recoveries on or with respect to such investment, to any other person or entity for any reason; (ii) the amount of such Investor's Allowed Claim set forth in Schedule A to their Notice of Determination is correct; (iii) the amount of such Investor's Initial Distribution is in partial satisfaction of amounts owed to them by the Partnership indicated in Schedule A to their Notice of Determination, regardless of whether such Investor files or has filed a Proof of Claim Form asserting a Claim in an amount greater than that appearing in their Notice of Determination and/or such Investor seeks any relief from the Court concerning their Claim that is the subject of their Notice of Determination; and (iv) such Investor has not received any recovery, funds, compensation, payments or other property of any kind from any other source in connection with their investment in the Partnership indicated in Schedule A to their Notice of Determination. Furthermore, if an Investor cashes their Initial Distribution check, they are barred from filing a Proof of Claim Form and/or seeking or continuing to seek any relief from the Court concerning their Claim that is the subject of their Notice of Determination. If an Investor agrees with the amount set forth in the Notice of Determination, all it would need to do is cash the accompanying distribution check.

### D.     Request for Additional Information

If at any time after receiving a Proof of Claim, the Receiver determines that additional information is needed to assess and process a Claim, the Receiver will be authorized under the Plan to contact the Claimant (or counsel, if one is designated in the Proof of Claim) to request such additional information. Upon request from the Receiver, all Claimants will be required under the Plan to provide adequate information as to their identity and relationship to the Partnerships and/or

31

the Excluded Parties in order to be considered for any distribution. Additionally, and pursuant to the Receivership Order, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure without further leave of Court. The Receiver may base determinations of distributions to holders of Claims on his review and analysis of such information and withhold any distributions to any Claimant that does not provide such information in form and substance satisfactory to the Receiver. Under the Plan, the Receiver will also be authorized to expunge or disallow a Proof of Claim without seeking further order of the Court if that Proof of Claim is not, in the sole discretion of the Receiver, thereafter adequately substantiated by the Claimant with accurate and complete documentation.

### E. Effect of Failure to Submit a Proof of Claim Before the Claims Bar Date

Any Claimant who is required to submit a Proof of Claim under the Plan but fails to do so in a timely manner or in the proper form (i) will be forever barred, estopped, and enjoined to the fullest extent allowed by applicable law from asserting, in any manner, the Claim that was required to be included in such Proof of Claim against (a) any Receivership Entity or (b) the Receivership Estate or its assets and (ii) will not receive any distribution under the Plan with respect to such Claim.

### F. Dispute Resolution Process

Under the Plan, any Claimant who disputes the amount or status of their Claim as set forth in a Notice of Determination will be required to submit their dispute and the detailed records of their Claim and information supporting the nature and validity of their dispute as part of their Proof of Claim to the Receiver by the Claims Bar Date. The Receiver will then evaluate the Proof of Claim by comparing the Claimant's documentation against the Books and Records and taking into account available reserves, operational funding needs, and the effect such Claim has on other Claimants. Upon completing this process, the Receiver will then send a letter to the Claimant (to

32

the email or physical address supplied in the Claimant's Proof of Claim) with his findings and decision. If the Claimant agrees with the Receiver's decision, no further action will be required by the Claimant. If the Claimant disagrees with the Receiver's decision, the Claimant will have ten (10) calendar days from the date it received the letter from the Receiver to mail a return letter to the attention of the address referenced in the Receiver's letter further disputing the findings and requesting further adjudication. If, for whatever reason, the Claimant does not respond back within ten (10) calendar days of receiving the letter from the Receiver, they will be deemed to have irrevocably accepted the Receiver's findings and decision.

The Receiver will be authorized under the Plan to employ any additional methods that he deems reasonable and necessary to process and reconcile Proofs of Claim and to verify the Claims asserted in the Proofs of Claim. If the Receiver is unable to resolve any disputes about a Claim (and, in case of an Investor Claim, if the Investor has not cashed the check for the Initial Distribution) within the timeline prescribed herein, the Receiver is authorized to file a written objection to the Claim with the Court, with a copy served on the Claimant and/or the Claimant's counsel within the timeframe set forth in the Plan. The objection will be required to include a statement of the reasons for the Receiver's objection and may include copies of any document or other writing upon which the Receiver relies. The Claimant's response to the Receiver's objection will be required to be filed with the Court, with a copy served on the Receiver and his counsel by electronic mail to GPBCapInfo@epiqglobal.com, within thirty (30) calendar days of the date on which the Receiver filed his written objection to the Claim. The Receiver will then have thirty (30) calendar days to file and serve his reply.

Pursuant to the Plan, no distribution will be made with respect to any disputed Claim until such dispute has been resolved in accordance with the Plan and the Plan Order. However, nothing

33

in the Plan or Plan Order will preclude the Receiver in his sole discretion from making distributions on account of the undisputed portions of disputed Claims.

The Receiver will be further authorized under the Plan to file one or more objections or omnibus objections, which objections may be based on one or more of the following, or any other basis:

     a.    the Proof of Claim was not timely filed;

     b.    the Proof of Claim fails to specify the basis for the Claim or provide supporting documentation for such Claim to the satisfaction of the Receiver;

     c.    the Proof of Claim is duplicative of another Proof of Claim;

     d.    the Proof of Claim merely disputes the amount of the Investor Claim and does not assert any other basis for relief;

     e.    the Proof of Claim was filed against the wrong entity;

     f.    the Investor agreed to the amount of the Investor Claim by cashing out the Initial Distribution;

     g.    the Claims are not valid, assert an incorrect amount, and/or are subject to equitable subordination, recharacterization or offset; and/or

     h.    the Claims have been otherwise satisfied or released.

**G.    Consent to Jurisdiction and Agreement to be Bound**

Cashing a distribution check and/or submission of a Proof of Claim will constitute consent to the jurisdiction of the Court for all purposes and will constitute an irrevocable agreement to be bound by (i) the Court's decision, including, without limitation, a determination as to the extent, validity, and amount of any Claim asserted against the Receivership Estate, (ii) the Receiver's determination in accordance with the procedures described in the Plan, and (iii) all other decisions of the Court regarding the Plan.

34

**H.      Investor Claims Should be Determined Based on the Books and Records**

This Court possesses "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978); *see also SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (quoting same). Generally, the Second Circuit will uphold any "reasonable procedures instituted by the district court that serve the purpose of orderly and efficient administration of the receivership for the benefit of creditors." *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) (cleaned up).

Therefore, the Receiver respectfully requests that the Court approve the Plan granting the Receiver the authority to determine the Investors and amounts payable to each Investor based on the Books and Records as a reasonable exercise of his discretion and in furtherance of the orderly and efficient administration of the Receivership Estate.

**VIII.   The Claims Procedures and Documents to be Used in Connection Therewith Should be Approved by the Court as Satisfying Due Process**

District courts supervising receivership proceedings, in the exercise of their discretion, frequently establish claims procedures and a claims bar date. *See, e.g., SEC v. Hardy*, 803 F.2d 1034, 1039 (9th Cir. 1986) ("[T]he district court's decision to establish deadlines for filing claims, and to bar untimely claims, is reasonable in light of the complexity of the receivership and the procedure employed to notify potential claimants"); *SEC v. Path Am., LLC*, No. C15-1350 (JLR), 2016 U.S. Dist. LEXIS 117684, at *21 (W.D. Wash. Aug. 30, 2016) (establishing claims bar date); *SEC v. Capital Cove Bancorp LLC*, No. SACV15-00980-JLS (JC), 2015 U.S. Dist. LEXIS 174855 (C.D. Cal. Oct. 13, 2015) (establishing claims bar date).

Moreover, "the use of summary proceedings to determine appropriate relief in equity receiverships, as opposed to plenary proceedings under the Federal Rules, is within the jurisdictional authority of a district court." *Hardy*, 803 F.2d at 1040. By "avoid[ing] formalities

35

that would slow down the resolution of disputes," the use of summary proceedings "promotes judicial efficiency and reduces litigation costs to the receivership." *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986). A "summary process" will be permitted and encouraged to resolve claim objections and a full plenary process to resolve disputes shall not be required. *See SEC v. Byers*, 637 F. Supp. 2d 166, 184 (S.D.N.Y. 2009) ("It is well-settled that a District Court has the authority, in implementing a distribution plan in a receivership case, to use summary proceedings to evaluate claims and claim priority, provided the parties have an opportunity to be heard to argue their claims."). Implementing such a process here will allow the Receiver to quickly and simply allow, disallow, or subordinate Claims of interested parties, thereby further ensuring the efficient return of funds to Investors and other creditors.

This Court's exercise of discretion is guided in part by consideration of due process—namely, ensuring interested parties obtain adequate notice and an opportunity to be heard. *See*, *e.g.*, *SEC v. American Capital Invs., Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996) ("For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard."); *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 459 (9th Cir. 1984). A claimant's due process right to adequate notice is satisfied where notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The form of notice to which a claimant is entitled turns on whether that claimant is deemed known or unknown. Claimants whose claims are known or should be known to the party providing notice are entitled to receive actual, formal notice of the claims bar date. *See In re Maya Constr. Co.*, 78 F.3d 1395, 1399 (9th Cir. 1996). In contrast, an unknown claimant—that is, a claimant

36

whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]," *Mullane*, 339 U.S. at 317—has no such entitlement to actual notice. Instead, unknown claimants are entitled only to notice reasonably calculated under the circumstances to reach them. *Id.* at 314-18. The means employed for notifying such unknown claimants of a deadline for the exercise of their rights must be either "reasonably certain" to reach them or, where such reasonable certainty is not feasible, "not substantially less likely" to reach them than other feasible alternatives. *Id.* at 315. For unknown claimants, notice by publication generally satisfies such claimants' due process rights. *See In re Arch Wireless, Inc.*, 534 F.3d 76, 80 (1st Cir. 2008) ("For notice purposes, bankruptcy law distinguishes between 'known creditors,' who are entitled to receive direct notice of each stage in the reorganization proceedings, and 'unknown creditors,' for whom publication notice is sufficient."); *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296 (1953) ("[W]hen the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication"); *Chemetron Corp. v. Jones*, 72 F.3d 341, 348-49 (3d Cir. 1995) ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business.").

Establishing the Claims Bar Date and approving the Claims Resolution Procedures, including the notice procedures, in the Plan as described herein will assist the Receiver and the Court in identifying and assessing the nature and scope of the potential Claims against, and liabilities of, the Receivership Estate. *See, e.g.*, *Path Am., LLC*, 2016 U.S. Dist. LEXIS 117684, at *11, 21 (approving claims procedure sought by receiver to ensure "universe and magnitude of possible claims is known"). Furthermore, it is critically important to the efficient administration

of the Receivership and the fair distribution of assets among Claimants that Proofs of Claim be timely submitted for determination and that untimely Proofs of Claim be barred.

## IX. The Plan Provides for Specific Treatment of Certain Claimants.

It is well established that the Court "has the authority to consider the culpability of any investor seeking to recover under the Plan under the equitable doctrine of unclean hands." *Byers*, 637 F. Supp. 2d at 184 n.21. Similarly, the Northern District of Illinois has explained that "[d]isqualifying those who took the business over the edge is the most common feature, and the least contested aspect, of distribution plans," and that those who are not "innocent victims" of a fraud should not be entitled to distribution. *SEC v. Enter. Tr. Co.*, No. 08 C 1260, 2008 WL 4534154, at *3, *6 (N.D. Ill. Oct. 7, 2008), *aff'd,* 559 F.3d 649 (7th Cir. 2009).

### A. Excluded Parties

In the case of Gentile and others who are convicted or accused of various misconduct with regard to the Receivership Entities, given the equitable nature of the receivership proceedings, the Receiver will refrain from making any distributions to the Excluded Parties until it has been determined by a final, non-appealable order of this Court that any such Excluded Party is entitled to such distributions. Outside of the Receivership, under the LPAs, Gentile and others may have been entitled to distributions, both as Limited Partners (Investors) and Special Limited Partners, as outlined in the waterfall of distributions provisions discussed in the Plan.

However, the following parties (and any of their affiliates) will be excluded under the Plan from any distributions and are not permitted to avail themselves of the dispute resolution process:

- David Gentile;
- Jeffry Schneider;
- Jeffrey Lash;
- Ascendant Capital, LLC;
- Ascendant Alternative Strategies, LLC;
- Axiom Capital Management, Inc.;

38

- Michael Cohn;
- DJ Partners, LLC;
- GPB SLP, LLC;
- GPB Auto SLP, LLC;
- GPB H2 SLP, LLC;
- GP H3 SLP, LLC
- GPB NYCD SLP, LLC;
- GPB WM SLP, LLC; and
- All other persons and entities determined by the Receiver, in his sole discretion, from time to time (collectively, the "Excluded Parties").

The Receiver has determined that the Excluded Parties should not be permitted to receive distributions under the Plan at this time. Instead, any amounts that the Receiver determines the Excluded Parties would otherwise have been entitled to in accordance with the terms of the Initial Distribution will be reserved unless and until it has been determined by a final, non-appealable order of the Court that such Excluded Parties are legally and equitably entitled to such payments.

**B.     Class Action Claimants**

Pursuant to the Plan, if an Investor is a plaintiff or class member in any litigation or other dispute resolution proceeding involving a Receivership Entity, the Receiver, the Receivership Estate, or any assets of any of the foregoing, it will be required to bear sole responsibility for any costs and fees incurred as a result of such litigation and any other disputes arising in connection with amounts owed to its attorneys in connection with such litigation and otherwise. The Receivership Entities will not pay any costs, fees, or expenses of any such plaintiffs' counsel. Pursuant to the Plan, the Receiver will not recognize any Claims or Proofs of Claim seeking payment on account of any such costs, fees, or expenses and such Claims will be expunged automatically.

**X.** **The Receiver Will be Authorized to Pursue Claims of the Receivership Entities as Necessary and Appropriate.**

Pursuant to paragraph 25 of the Receivership Order, the Causes of Action (as defined therein) belonging to each Receivership Entity will be identified and pursued pursuant to the Receiver's business judgment, in his capacity as Receiver. Such Causes of Action would be asserted in plenary litigation or utilized in negotiations to achieve settlements. Options include contribution of Causes of Action to liquidation trust(s) and/or utilization in claims resolution negotiations. Pursuant to paragraph 6(e) of the Receivership Order, the Receiver has the authority to compromise and settle any Causes of Action of the Receivership Entities.

In addition, the Receiver will have the authority under the Plan to compromise and settle any Claim, at any time, as appropriate, without further order of this Court. The Receiver may, in his discretion, file a motion seeking Court approval of any compromise or settlement of a Claim.

The Receiver will also have the right under the Plan to dispute or assert offsets or defenses as to the extent, validity, or priority, or otherwise against amounts asserted in any Proof of Claim or against the initial Allowed Claim of any individual or entity who received a Notice of Determination, including but not limited to, the manner in which accounts will be aggregated and Claims treated under a Court-approved distribution plan. Nothing in the Plan will preclude the Receiver from objecting to any Claim on any grounds. The below-described steps set forth how litigation proceeds may result in the obtaining of additional funds for all of the Partnerships.

## A. Distribution of Litigation Proceeds

### 1. Proceeds of Causes of Action Belonging Generally to the Receivership Estate.

Pursuant to the Plan, the proceeds received from the prosecution or settlement by the Receiver of Causes of Action based on harm applicable to all Receivership Entities ("General Harm Litigation Proceeds") will be held by the Receiver as they are received, with the net proceeds thereof to be distributed by the Receiver at the time the final distribution is to be made under the Plan, to Investors in the following Partnerships (i) Holdings, (ii) Holdings II, (iii) APLP, (iv) Waste, (v) Cold Storage, and (vi) NYCD (collectively, the "Specified Partnerships") *pro rata* as among such Specified Partnerships based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in a specific Specified Partnership, by (b) the aggregate amount of all gross capital contributions in all Specified Partnerships, until all Investors in a Specified Partnership have been paid an amount equal to 100% of their Net Capital Contribution in such Specified Partnership (the "Specified Partnership Trigger Amount") as a result of the application of General Harm Litigation Proceeds, other Receivership Assets, or funds from other sources.

Under the Plan, to the extent an Investor in a Specified Partnership has been paid an amount equal to 100% of their Net Capital Contribution prior to other Investors in the same Specified Partnership, General Harm Litigation Proceeds that would have been distributed to such Investor but for the such Investor having been paid an amount equal to 100% of their Net Capital Contribution, shall be allocated to other Investors in the same Specified Partnership until the Specified Partnership Trigger Amount has been reached with respect to such Specified Partnership. In addition, pursuant to the Plan, to the extent that all Investors in a Specified Partnership have been paid the Specified Partnership Trigger Amount, the Receiver will direct such proceeds *pro*

*rata* to the other Specified Partnerships in which the Investors have not been paid the Specified Partnership Trigger Amount at the time of such distribution.

After all Investors in all Specified Partnerships have been paid an amount equal to their Specified Partnership Trigger Amount as a result of the application of General Harm Litigation Proceeds, other Receivership Assets or funds from other sources, the Receiver, solely to the extent of funds available for such purpose, will pay each Investor in a Specified Partnership on a *pro rata* basis an amount equal to, but not in excess of, the aggregate commissions such Investor paid in making their gross capital contribution in such Specified Partnership.

Once each Investor has been paid their Specified Partnership Trigger Amount and recovered their aggregate commissions, all remaining General Harm Litigation Proceeds will be paid *pro rata* to Investors in the Specified Partnerships based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in a specific Specified Partnership, by (b) the aggregate amount of all gross capital contributions in all Specified Partnerships.

2.      Partnership-Specific Litigation.

Pursuant to the Plan, the net proceeds received from the successful prosecution or settlement by the Receiver of Causes of Action based on harm applicable to a specific Partnership ("Specific Harm Litigation Proceeds") will be distributed by the Receiver only to the Investors of such Partnership. Distributions of Specific Harm Litigation Proceeds will be made under the Plan to Investors in a specific Partnership *pro rata* based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in such Partnership, by (b) the aggregate amount of all gross capital contributions in such Partnership, until each Investor in such Partnership has been paid an amount equal to 100% of their Net Capital Contribution in such

42

Partnership (the "Specific Harm Trigger Amount") as a result of the application of Specific Harm Litigation Proceeds, other Receivership Assets, or funds from other sources.

Under the Plan, after each Investor in a Partnership has been paid an amount equal to its Specific Harm Trigger Amount (as a result of the application of Specific Harm Litigation Proceeds, other Receivership Assets or funds from other sources), the Receiver, solely to the extent of funds available for such purpose, will pay each Investor in a Partnership on a *pro rata* basis an amount equal to the aggregate commissions such Investor paid in making their gross capital contribution in such Partnership until all such amounts have been paid in full. This allocation methodology will apply even if distributions to an Investor in a Partnership exceed 100% of such Investor's gross capital contribution in such Partnership.

### 3. Other Investor Litigation Recoveries.

Pursuant to the Plan and in order to prevent Investors from obtaining a "double recovery" from the Receivership Estate, any amount paid or to be paid to an Investor in connection with any litigation or other dispute resolution proceedings brought, whether on a class or individual basis, to recover losses from investments in one or more Partnerships, regardless of the parties to such litigation or other dispute resolution proceeding, will be deducted from and reduce on a dollar-for-dollar basis any later distributions to be made to such Investor pursuant to the Plan. Notwithstanding any other language or provisions in the Plan to the contrary, the Receiver shall have the discretion, subject to Court approval, to allocate other investor litigation recoveries that are funded from the Receivership Estate in a manner that the Receiver determines is fair and appropriate.

### B. Privilege

Pursuant to the Receivership Order, any and all attorney-client privilege, work product protection, common interest or joint defense privilege, or other privilege or immunity (collectively,

43

the "Privileges") of the Receivership Entities, the Monitor, the Monitorship, and/or attaching to or arising in or in connection with any of their documents, data or communications (whether written or oral), were transferred and belong exclusively to the Receiver for the benefit of the Receivership Estate. The Receiver therefore has sole authority, and is empowered, to enforce, waive, assign, or release any or all Privileges in the exercise of his duties as Receiver.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court enter the Plan Order in the form attached hereto as Exhibit C and grant such further relief as appropriate or necessary.

Dated: January 17, 2025
       New York, New York

Respectfully submitted,

By: _____/s/ Douglas A. Fellman_____

Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
(202) 637-5600
Douglas A. Fellman
David M. Foster
douglas.fellman@hoganlovells.com
david.foster@hoganlovells.com

Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017
(212) 918-3000
Robert B. Buehler
Christopher R. Bryant
robert.buehler@hoganlovells.com
chris.bryant@hoganlovells.com

*Attorneys for Receiver Joseph T. Gardemal III*

44

**EXHIBIT A**

**Distribution Plan**

**(Attached)**

Case 1:21-cv-00583-MKB-VMS Document 524-1 Filed 01/17/25 Page 53 of 169 PageID #: 20736

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | 21-cv-00583-MKB-VMS |
| GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH, | |
| Defendants. | |

# DISTRIBUTION PLAN

*Receiver Joseph T. Gardemal III*

January 17, 2025

This is the plan of distribution (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") of Joseph T. Gardemal III, the court-appointed receiver (the "<u>Receiver</u>") for GPB Capital Holdings, LLC ("<u>GPB Capital</u>") and the other Receivership Entities.[1] The Receiver's powers and duties are set forth in the Receivership Order and in the Plan Order, and include, among other things, the power to propose and implement this Plan to distribute available Receivership Assets to Claimants of the Receivership Entities. This Plan was approved by the Court pursuant to an order entered on _____, 2025 (the "<u>Plan Order</u>") [Dkt. No. __].

EACH CLAIMANT SHOULD CAREFULLY CONSIDER ALL THE INFORMATION CONTAINED IN THIS PLAN AND THE PLAN ORDER. EACH CLAIMANT IS URGED TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS PLAN AND THE PLAN ORDER.

## I.     <u>INTRODUCTION</u>

This Plan sets forth, among other things, (a) the structure for making Initial Distributions of Receivership Assets to Claimants of the Receivership Estate of no more than $400,000,000 in the aggregate to expedite the return of money to Investors in the managed funds of GPB Capital, and (b) the structure for making Subsequent Distributions of Receivership Assets from time to time to Claimants of the Receivership Estate.

Set forth below, for informational purposes only, are certain details concerning the Initial Distribution and other Partnership information.

---

[1] Please refer to Article III below for additional defined terms.

|  | GPB Automotive Portfolio, LP | GPB Holdings II, LP | GPB Cold Storage, LP | GPB Holdings, LP | GPB NYC Development, LP | GPB Waste Management, LP |
|---|---|---|---|---|---|---|
| Gross Capital Contributions | $682.9 million | $688.4 million | $57.3 million | $199.8 million | $31.9 million | $166.3 million |
| Amount Distributed (prior to the appointment of Receiver) | $109.7 million | $132.5 million | $10.9 million | $74.7 million | $0 | $18.3 million |
| Selling Fees | $61.6 million | $50.9 million | $4.7 million | $17.4 million | $3.2 million | $14.1 million |
| Net Capital Contributions | $511.5 million | $505.1 million | $41.7 million | $107.7 million | $28.7 million | $133.9 million |
| Cash on Hand Prior to Initial Distribution | $529.1 million | $507.1 million | $73.0 million | $2.4 million | $1.1 million | $6.7 million |
| Initial Distribution | $190.0 million | $180.0 million | $30.0 million | $0 | $0 | $0 |
| Cash on Hand After Initial Distribution | $339.1 million | $327.1 million | $43.0 million | $2.4 million | $1.1 million | $6.7 million |
| Estimated Reserves through 12/31/26 | $80.2 million | $51.7 million | $7.2 million | $28.2 million | $1.2 million | $1.9 million |
| Estimated Range of Recoveries[2] | 80.0% to 90.0% | 90.0% to 100.0% | 140.0% to 150.0% | 40.0% to 50.0% | 0.0% to 10.0% | 10.0% to 20.0% |

As described in the *Declaration of Joseph T. Gardemal III, Receiver, in Support of the Distribution Plan* filed concurrently with this Motion (the "Gardemal Declaration"), the Partnerships ceased making distributions to Investors or permitting redemptions in or about the middle of 2018. As further detailed in the Gardemal Declaration, the Partnerships are all separate and distinct legal entities, each governed by its own limited partnership agreement, or "LPA", as defined herein. Each Partnership is in a unique financial position primarily reflecting the success, or lack thereof, of the Partnership's investments, including the disposition of its assets. For

---

[2] "Estimated Reserves" and "Estimated Range of Recoveries" are determined based on information that is available to the Receiver as of December 31, 2024, are not binding, and are subject to change. The Receiver reserves the right

example, three of the Partnerships are in possession of distributable cash, while three of the Partnerships do not have sufficient funds available to distribute at this time. Assets remain to be liquidated before the resulting proceeds can be distributed, and each has unresolved claims asserted against it. As such, total distributions made from each Partnership will vary and cannot be specifically determined as of the date of this Plan.

## II.    PLAN OVERVIEW

Distributions under this Plan shall be on a partnership-by-partnership basis and made pursuant to the existing and agreed payment "waterfalls" set forth in the relevant LPA for each respective Partnership (other than with respect to Excluded Parties), with the *pro rata* amounts of distribution payments to be calculated based on the Books and Records of each such Partnership.

Each Partnership's LPA contains a "waterfall of distributions" provision, which outlines the order in which the Investors (referred to under the LPAs as the "limited partners") and certain entities affiliated with GPB Capital (the "Special Limited Partner") receive payments to the extent of available funds; in each step of the waterfall, payments must be made in full before any payments can be made in a subsequent step of the waterfall. Initial Distributions and all Subsequent Distributions to the Investors (other than with respect to Excluded Parties) will be calculated pursuant to the applicable waterfall set forth in the LPAs for each relevant Partnership. A high-level summary of the distribution waterfalls set forth in the LPAs is set forth in Article VIII below.

As described in the Gardemal Declaration, the Receiver has determined that the distribution method set forth in this Plan is the optimal approach based on the facts and circumstances of this matter.

---

to modify these estimates from time to time based upon available information. Parties in interest should look to the Receiver's quarterly reports for updated information.

This Plan contains detailed information pertaining to the Receivership Estate including, without limitation, (a) plans for the Initial Distribution and Subsequent Distributions, (b) the treatment of litigation causes of action both against, and potentially belonging to, the Receivership Estate, (c) the treatment of contingent and unknown liabilities, (d) claims solicitation and administration, (e) the other rights and powers of the Receiver to promote the efficient and equitable administration of this Plan, and (f) the eventual wind-down of the Receivership Entities and Receivership Estate, all of which form the basis for the structure of this Plan. More specifically, this Plan includes provisions for:

(i)      the amounts and methods of payment of the Initial Distribution to be made by the Receiver;

(ii)      the amounts and methods of payment of Subsequent Distributions to be made by the Receiver from time to time;

(iii)      a final distribution to be made by the Receiver;

(iv)      a bar date for the filing of Claims in the Receivership Estate against the Receivership Entities and the Receivership Assets and a deadline for the Receiver to file objections to claims;

(v)      a Claims review and reconciliation process;

(vi)      a dispute resolution process for resolving any disputes concerning Claims or proposed distributions;

(vii)      the methods for pursuit of claims or Causes of Action belonging to the Receivership Estate;

(viii)   creating and funding one or more Reserves; and

(ix)      such other matters as are determined by the Receiver to be reasonably necessary to facilitate or implement the claim and distribution processes.

### III. DEFINITIONS

The following terms are used in this Plan:

"AAS" means Ascendant Alternative Strategies, LLC.

"AIF Notes" means the notes issued by APLP and Holdings to AISF, a wholly owned subsidiary of AIF, pursuant to which AIF implemented its investment strategy.

"AISF" means GPB Automotive Income Sub-Fund, Ltd., a Cayman Islands exempted company.

"Allowed" means, with reference to any Claim: (a) a Claim in a liquidated amount as to which no objection has been filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim filed by the Claims Bar Date or that is not required to be evidenced by a filed Proof of Claim under the Plan or the Plan Order; (b)  a Claim that is upheld or otherwise agreed to by the Receiver in accordance with this Plan; *provided*, *however*, with respect to a Claim described in clauses (a) through (b) above, such Claim shall be considered "Allowed" only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed by the Receiver within the applicable period of time fixed by the Plan.

"Ascendant Capital" means Ascendant Capital, LLC.

"Books and Records" means the financial and other data obtained from the Partnerships, and the financial and other data provided to the Receiver by GPB Capital's advisors and consultants, and which is under the control of, or readily available to, the Receiver, which data may be updated or corrected from time to time by the Receiver.

"Causes of Action" means any Claims, cross-claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens,

6

indemnities, and guaranties of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the appointment of the Receiver, in contract, tort, law, equity, or pursuant to any other theory of law or otherwise, and also includes (a) any rights of setoff, counterclaim, or recoupment and any claims for breaches of duties imposed by law or in equity and (b) the right of the Receiver to object to or otherwise contest Claims.

"Claim" means any (a) potential or claimed right to payment, whether or not such right is based in equity or by statute, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (b) potential or claimed right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; *provided, however*, that an unfulfilled redemption request that was made by an Investor at any time prior to or after the date of entry of the Receivership Order is not, and shall not be treated or recognized as a "Claim" under this Plan with respect to such redemption request, and such Investor shall have no priority over any other Claimants as a result of having made such unfulfilled redemption request.

"Claimant" means an individual or entity (a) determined by the Receiver or the Court to hold a Claim against any or all of Receivership Entities or any Receivership Assets, or (b) asserting or who believes it is entitled to assert a Claim against any or all of Receivership Entities or any Receivership Assets, including, without limitation, Investors, General Unsecured Creditors, and Priority Claimants; *provided, however*, that an Investor who made an unfulfilled redemption request at any time prior to or after the date of entry of the Receivership Order shall

7

not be treated or recognized as a "Claimant" under this Plan solely as a result of having made such redemption request, and such Investor shall have no priority over any other Claimant as a result of having made such unfulfilled redemption request.

"Claims Agent" means Epiq Corporate Restructuring, LLC, as claims agent.

"Claims Bar Date" means the last day for all Claimants to properly submit a Proof of Claim, after which any Proof of Claim that was otherwise properly submitted will be disallowed unless the Claimant shows cause and the Court enters an order approving the late filing of such Claim. The Court established _____, 2025, at 11:59 p.m. (prevailing Eastern Time) as the Claims Bar Date.

"Claims Resolution Procedures" means the procedures for the solicitation, submission, administration, and resolution of the Claims as set forth in the Plan.

"Court" means the U.S. District Court for the Eastern District of New York.

"Excluded Parties" means (i) David Gentile, (ii) all others who are accused, suspected, or adjudicated of improper conduct with regard to the Partnerships, including, without limitation, (a) Jeffry Schneider, (b) Jeffrey Lash, (c) Michael Cohn, (d) AAS, (e) Ascendant Capital, (f) Axiom Capital Management, Inc., (g) DJ Partners, LLC, (h) GPB SLP, LLC, (i) GPB Auto SLP, LLC, (j) GPB H2 SLP, LLC, (k) GP H3 SLP, LLC, (l) GPB NYCD SLP, LLC, and (m) GPB WM SLP, LLC, and (iii) all other persons and entities determined by the Receiver from time to time.

"Exempt Claimants" has the meaning set forth in Article VII.A.

"Gardemal Declaration" has the meaning set forth in the Introduction of this Plan.

"General Harm Litigation Proceeds" has the meaning set forth in Article IX(B).

"General Unsecured Claim" means any Claim that is not secured by any collateral and which does not have any priority over any other Claims, including, without limitation, trade

8

claims accrued on or before the Record Date, other than (a) a Priority Claim, (b) a Claim arising as a result of an Investor's acquisition, ownership or interest of, in or to an equity interest in a Partnership (including all claims arising under or in connection with class action lawsuits and/or other litigation against or involving a Receivership Entity), or (c) a Claim of a Receivership Entity against another Receivership Entity.

"General Unsecured Creditors" means a holder of a General Unsecured Claim.

"GPB Capital" has the meaning set forth in the preamble of this Plan.

"Initial Distribution" means the distribution by the Receiver of Receivership Assets in the aggregate amount of no more than $400,000,000 to the Investors as set forth in this Plan, and, with respect to each individual Investor, shall mean the payment to such Investor of its portion thereof.

"Investor" means any Claimant with a Claim arising, in whole or in part, as a result of such Claimant's acquisition, ownership or interest of, in or to an equity interest in a Partnership (including all claims arising under or in connection with class action lawsuits and/or other litigation against or involving a Receivership Entity), other than any Investor who has previously redeemed its investment. Allowed Claims of Investors shall be *pari passu* with Allowed General Unsecured Claims.

"LPA" means each Partnership's most recent limited partnership agreement.

"Monitor" has the meaning in the Receivership Order.

"Monitorship" has the meaning in the Receivership Order.

"Net Capital Contribution" means an amount equal to an Investor's aggregate gross capital contributions to a Partnership prior to the imposition of the Receivership, less the aggregate amount of distributions received by such Investor on account of its investment in such

9

Partnership, less the aggregate amount such Investor paid in commissions in making its gross capital contribution in such Partnership.

"Notice of Claims Bar Date" means a notice to the Claimants informing them of the Claims Bar Date, substantially in the form attached as Exhibit A.

"Notice of Determination" means the notice sent to an Investor at the time its Initial Distribution is made, and which includes, among other things, (i) a statement of such Investor's total aggregate Claim amount and (ii) a statement of the amount being paid to such Investor pursuant to its Initial Distribution (which may be zero), substantially in the form attached as Exhibit B.

"Ordinary Course Professionals" means the professionals who were approved to be retained, or who are retained in the future, by the Receivership Estate pursuant to the Receivership Order.

"Partnerships" means (i) GPB Capital Holdings, LLC ("GPB Capital"),[3] (ii) GPB Holdings, LP ("Holdings"),[4] (iii) GPB Holdings II, LP ("Holdings II"), (iv) GPB Holdings III, LP ("Holdings III"), (v) GPB Automotive Portfolio, LP ("APLP"), (vi) GPB Waste Management, LP ("Waste"), (vii) GPB Cold Storage, LP ("Cold Storage"), (viii) GPB NYC Development, LP ("NYCD"), and (ix) GPB Automotive Income Fund, Ltd. ("AIF").

"Plan" has the meaning set forth in the preamble of this Plan.

"Plan Order" has the meaning set forth in the preamble of this Plan.

"Priority Claimants" means Claimants with Priority Claims. Priority Claimants shall not include the Excluded Parties.

---

[3] GPB Capital is the general partner. However, it is included in the definition of "Partnerships" as a convenience.
[4] When referred to hereafter in this Plan, "Holdings" shall be deemed to represent the combined structure of both (i) GPB Holdings Qualified, LP ("Holdings Qualified"), a feeder fund into Holdings, and (ii) Holdings.

"Priority Claims" means the following Claims: (a) tax claims, (b) professional, administrative, and operational expenses (including, without limitation, fees and expenses of Retained Personnel and Ordinary Course Professionals), (c) costs and expenses related to the provision of goods and services for the benefit of the Receivership Estate or at the request of the Receiver incurred after the Record Date, (d) wind-down costs, (e) all other actual and necessary costs and expenses of preserving the Receivership Estate and operating and administering the Receivership Entities incurred on or after the entry of the Receivership Order, and (f) all other fees, costs and expenses authorized to be paid under the Receivership Order and/or pursuant to any other order of the Court, including all unpaid fees, costs and expenses of Joseph T. Gardemal III in his prior role as Monitor and the professionals retained by the Monitor in the Monitorship. Priority Claims shall be senior to all Investor Claims and Allowed General Unsecured Claims.

"Privileges" has the meaning set forth in Article IX(C).

"Proof of Claim" means a Claimant's assertion of a Claim timely and properly submitted using a Proof of Claim Form and in compliance with the terms of the Plan Order.

"Proof of Claim Form" means a proof of claim form, substantially in the form attached as an exhibit to the form of Notice of Claims Bar Date attached as Exhibit A.

"Receiver" has the meaning set forth in the preamble of this Plan.

"Receivership Assets" has the meaning set forth in the Receivership Order.

"Receivership Entities" means the entities set forth in Schedule 1 of the Receivership Order.

"Receivership Estate" has the meaning set forth in the Receivership Order.

"Receivership Order" means the order entered by the Court on December 8, 2023 [Dkt. No. 187], which among other things, appointed the Receiver and imposed a litigation injunction.

"Record Date" means the date this Plan was filed with the Court.

11

"Reserves" means the cash reserves that the Receiver is authorized to establish and maintain pursuant to this Plan and the Plan Order.

"Retained Personnel" means agents, claim and noticing agents, persons, firms and other persons and entities, including accountants, attorneys, experts, liquidators, brokers, traders, or auctioneers, engaged by the Receiver in accordance with the Receivership Order to assist in the carrying out of the Receiver's duties and responsibilities.

"Special Limited Partner" has the meaning set forth in Article II.

"Specific Harm Litigation Proceeds" has the meaning set forth in Article IX(B)(2).

"Specific Harm Trigger Amount" has the meaning set forth in Article IX(B)(2).

"Specified Partnership Trigger Amount" has the meaning set forth in Article IX(B)(1).

"Specified Partnerships" has the meaning set forth in Article IX(B)(1).

"Subsequent Distributions" means the distribution from time to time by the Receiver following the Initial Distribution of Receivership Assets to the Investors as set forth in this Plan, and, with respect to each individual Investor, shall mean the payment to such Investor of its portion thereof.

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a document, instrument, agreement, contract, schedule, or exhibit shall mean that as it may thereafter be amended, modified, or supplemented in accordance with the Plan Order or Receivership Order, as applicable; (3) any reference to a person or entity as a Claimant includes that person's or entity's successors, assigns, transferees, subrogees, and/or heirs, as applicable; (4) all references herein to "Articles," "paragraphs," and "subparagraphs" are references to Articles, paragraphs and subparagraphs in this Plan; (5) the

12

words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (6) the words "include" and "including" and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (7) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (8) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Receivership Estate, unless otherwise stated; (9) any immaterial effectuating provisions may be interpreted by the Receiver in such a manner that is consistent with the overall purpose and intent of this Plan without further notice to or action, order, or approval of the Court or any other person or entity; (10) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (11) all references herein to the Receiver being authorized to take or refrain from taking some action shall be deemed to be followed by the words "but not directed".

## IV.    INITIAL DISTRIBUTION

The Initial Distribution shall be limited to those Partnerships, which, according to the Books and Records as they appear on the Record Date, have cash available for such purpose, and shall be made in accordance with each respective LPA. No Excluded Party will receive any distributions under this Plan unless and until it has been determined by a final, non-appealable order of the Court that such Excluded Party is entitled to such distributions.

### A.    *Quantum of Initial Distribution by Partnership*

The Initial Distribution to Investors shall be in the aggregate amount of no more than $400,000,000 and shall be distributed as follows:

- no more than $190,000,000 to APLP Investors,

13

- no more than $180,000,000 to Holdings II Investors, and

- no more than $30,000,000 to Cold Storage Investors.

With respect to each Partnership, Investors in such Partnership will be treated as a single class and shall receive *pro rata* treatment within each such class. For the purposes of calculating and making distributions under this Plan, Investors who made unfulfilled redemption requests at any time prior to or after the date of entry of the Receivership Order (i) shall not have Claims as a result of such redemption requests, (ii) shall not be treated as "Claimants" on account of such redemption requests, and (iii) shall not be entitled to be treated differently from Investors who did not make redemption requests on account of having made such redemption requests.

## B. *Notices of Determination*

To facilitate the Claims Resolution Procedures, and to ease the burden on individual Investors and the Receivership Estate, the Receiver will rely on the Books and Records to quantify a substantial portion of the approximate $1.5 billion of potential Investor Claims, prior to the completion of the Claims reconciliation process, and make the Initial Distribution. The determination of each Investor Claim by the Receiver based his analysis of the Books and Records will be set forth in the individual Notices of Determination that will be sent to each Investor (other than Investors in AIF). For Investors in APLP, Holdings II, and Cold Storage, their Notices of Determination will be accompanied by a check in the amount of their Initial Distribution. The Notice of Determination and its effect on the Claims Resolution Procedures are described further below.

## C. *Timing of the Initial Distribution*

The Initial Distribution will commence and be completed within fourteen (14) business days of the entry of the Plan Order, or as soon as practicable thereafter. All distributions will be made by the Claims Agent by check payable to the applicable Investor and mailed to the

14

Investor's address in the Books and Records for the applicable Partnership, unless such Investor, prior to the entry of the Plan Order, has verified in writing to the Claims Agent a different address where such distribution checks should be delivered. To the extent that the Receiver is not reasonably confident that an address is accurate as it appears in the Books and Records, the Receiver shall have the right to withhold a distribution to such Investor or any other creditor until the Receiver is reasonably confident that such address is accurate or that any replacement address that it has obtained is accurate.

### D.    Consequences of Cashing an Initial Distribution Check

Each Investor who receives and cashes their Initial Distribution check is irrevocably agreeing and representing that: (i) such Investor has not transferred or assigned all or any part of their investment in the Partnership indicated in Schedule A to their Notice of Determination, or any of their rights to receive any distributions or recoveries on or with respect to such investment, to any other person or entity for any reason; (ii) the amount of such Investor's Allowed Claim set forth in Schedule A to their Notice of Determination is correct; (iii) the amount of such Investor's Initial Distribution is in partial satisfaction of amounts owed to them by the Partnership indicated in Schedule A to their Notice of Determination, regardless of whether such Investor files or has filed a Proof of Claim Form asserting a Claim in an amount greater than that appearing in their Notice of Determination and/or such Investor seeks any relief from the Court concerning their Claim that is the subject of their Notice of Determination; and (iv) such Investor has not received any recovery, funds, compensation, payments or other property of any kind from any other source in connection with their investment in the Partnership indicated in Schedule A to their Notice of Determination. Furthermore, if an Investor cashes their Initial Distribution check, they are barred from filing a Proof of Claim Form and/or seeking or

continuing to seek any relief from the Court concerning their Claim that is the subject of their Notice of Determination.

Notwithstanding the foregoing, if an Investor cashes their Initial Distribution check, they are not waiving or limiting their entitlement to receive potential litigation related recoveries from the Receivership Estate in accordance with Article IX of this Plan.

## V.     TREATMENT OF CERTAIN CLAIMS

### A.     *AIF Investors; Excluded Parties*

All holders of interests in or Claims against AIF must timely submit a Proof of Claim and provide adequate information as to their identity and relationship to the Partnerships and/or the Excluded Parties, if any, in order to be considered for any distribution. Notwithstanding such requirements, the Receiver is authorized to send a Notice of Determination to any Investor in AIF in his sole discretion and to withhold distributions to any or all Investors in AIF.

The Receiver will pay down the outstanding amounts of the AIF Notes only to the extent (i) there are assets available in the relevant Partnerships for such purpose and (ii) the Receiver has reasonably determined that the Claims asserted in connection with the AIF Notes are Allowed Claims. No distributions will be made to the Excluded Parties, any person or entity related to or associated with the Excluded Parties, and/or to any Claimants as determined within the sole discretion of the Receiver.

The Receiver is authorized to demand additional information, including, without limitation, the identities of the direct or indirect shareholders of AIF and their relationship to the Partnerships and/or the Excluded Parties. The Receiver has the right to base determinations of distributions to holders of AIF Notes on his review and analysis of such information and withhold any distributions to any holder of AIF Notes that does not provide such information in form and substance satisfactory to the Receiver. Additionally, and pursuant to the Receivership

16

Order, the Receiver is authorized to issue subpoenas for documents and testimony seeking such information.

**B.**     *Priority Claimants*

The Receiver shall be authorized to pay Priority Claims in full in the ordinary course without further approval of the Court as amounts owed to such Priority Claimants become due and payable, and without the need for holders of Priority Claims to file Proofs of Claim; *provided, however*, that Retained Personnel and Ordinary Course Professionals (to the extent the applicable caps on Ordinary Course Professionals set forth in the Receivership Order have been exceeded) shall be required to submit fee applications and seek Court approval thereof in accordance with the Receivership Order prior to being paid by the Receiver. Priority Claims shall be senior to all Claims of Investors and General Unsecured Claims.

**C.**     *General Unsecured Creditors*

The Receiver is authorized to pay Allowed General Unsecured Claims in full, to the extent of available funds, in the ordinary course and without further approval of the Court. All holders of General Unsecured Claims must file Proofs of Claim in accordance with the provisions of this Plan. Allowed General Unsecured Claims shall be *pari passu* with Claims of Investors.

## VI.     <u>RESERVES</u>

Notwithstanding anything in this Plan to the contrary, the Receiver has the authority to withhold from amounts distributable under this Plan, and supplement from time to time, one or more Reserves in such amount or amounts and in whatever manner as the Receiver, in his sole discretion, determines is or may be reasonably necessary (a) to make future distributions; (b) to maintain the Receivership Assets and value thereof during the term of the Receivership Estate; (c) to administer the Receivership Estate and pay administrative expenses including, without

17

limitation, administrative fees and expenses, and indemnification and advancement costs; (d) to account for certain unresolved contingent liabilities arising from ongoing ancillary actions related to the Partnerships or otherwise; (e) to fund litigation; (f) to process disputed obligations and Claims; and (g) to pay fees and expenses in respect of the wind-down and termination of the Receivership Estate and Receivership Entities. In addition, the Receiver may withhold from amounts distributable to any Claimant any and all amounts, determined in the Receiver's sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement.

The Receiver shall determine, in his sole discretion, the timing, sequence, and magnitude of the Initial Distribution and Subsequent Distributions, and the amount of assets that should be held in reserve. The Receiver shall also determine, in his sole discretion, whether to reduce or eliminate fees charged to the Partnerships for management and related services and apply any amounts that otherwise would have been paid for such services to distributions and/or the Reserves. All distributions made under this Plan shall be subject to tax withholding in accordance with applicable law.

The Receiver (i) is not required to maintain the Reserves in segregated bank accounts or in escrow accounts, (ii) may pool any or all funds in the Reserves with each other and other funds of the Receivership Estate, and (iii) may invest funds in the Reserves in accordance with the provisions of the Receivership Order; *provided, however*, that the Receiver shall maintain records of the Reserves, and record and treat all such Reserves as if they were being held in segregated accounts, in the Receivership Estate's books and records.

### VII.    CLAIMS RESOLUTION PROCEDURES

The determination of amounts owed by the Receivership Entities to Claimants will be determined by the Receiver in his sole discretion based on his review of the Books and Records.

18

Pursuant to the Plan Order, the Receiver will administer Claims in accordance with the following Claims Resolution Procedures timeline.

| Date | Deadline |
|---|---|
| 5 business days after the entry of the Plan Order or as soon as practicable | First publication of Notice of Claims Bar Date and instructions to file Proof of Claim Form in national editions of the Wall Street Journal and/or USA Today |
| 5 business days after the entry of the Plan Order or as soon as practicable | Posting of Notice of Claims Bar Date, and the Proof of Claim Form, on the Claims Agent's website maintained for the Receivership Estate |
| 14 business days after the entry of the Plan Order or as soon as practicable | Deadline to send the Notice of the Claims Bar Date and other documentation to all Claimants |
| 14 business days after the entry of the Plan Order or as soon as practicable | Deadline to send Notices of Determination to all Investors (except for Investors to AIF; the Receiver reserves the right to provide Notices of Determination to some or all Investors in AIF) |
| 15 business days after first publication notice | Second publication of Notice of Claims Bar Date and instructions to file Proof of Claim Form in national editions of the Wall Street Journal and/or USA Today |
| 45 days after the entry of the Plan Order | Claims Bar Date |
| 100 calendar days after the Claims Bar Date | Deadline to resolve Claims of Investors (or for the Receiver to file objections to Claims of Investors) |
| 170 calendar days after the Claims Bar Date | Deadline for the Receiver to file objections to Claims (other than Investors' Claims) |

The Receiver has the right to extend any deadlines (including any deadlines that have previously been extended), without further approval of the Court (unless the Receiver, in his sole discretion, decides to seek a confirmatory order from the Court), by filing a notice of extension with the Court prior to the applicable deadline. The Receiver also has the right to seek relief from the Court, on an expedited basis, if necessary, to otherwise modify any deadlines. The Receiver shall provide and/or make available to the Claimants the documents and forms approved by the Court in the Plan Order in connection with the Claims Resolution Procedures.

**A.** **_Procedure for Submitting a Proof of Claim_**

Each Claimant (excluding Exempt Claimants) must properly complete and sign a Proof of Claim Form, which, together with supporting documentation, must be timely submitted to the Claims Agent in accordance with the instructions included with the Proofs of Claim Form and available at the Claims Agent's website: https://dm.epiq11.com/GPBCapital.

Proofs of Claim should not be filed with the Court or sent to the Receiver, the Retained Personnel, the Ordinary Course Professionals, or otherwise delivered to any Receivership Entity. Any Proof of Claim filed or sent in a manner that is inconsistent with the Proof of Claim Form instructions will not be considered properly submitted and will be automatically disallowed without further order of the Court; _provided, however_, that the Receiver shall have the sole discretion to accept any Proof of Claim that is received in a manner that is inconsistent with the Proof of Claim Form instructions.

The following persons and entities need not file a Proof of Claim (collectively, the "Exempt Claimants"): (i) the Receiver, the Claims Agent, Retained Personnel and Ordinary Course Professionals, and Priority Claimants; and (ii) any Investor who both (a) does not dispute the amount or characterization of its Claim as set forth in its Notice of Determination and (b) agrees that the Claim is an obligation of the specific Partnership identified in such Notice of Determination.

Any Claimant who files a Proof of Claim (other than an Investor; see subparagraph B below) that differs from the basis or amount of such Claim as determined by the Receiver shall have the burden of proving, by a preponderance of the evidence, the validity, basis and amount of their Claim with sufficient documentary evidence to support such Claim. Nothing in this subparagraph A shall limit the requirements of any Claimant to provide supporting and/or

additional documentation in accordance with subparagraphs C and D below. Disputes concerning Proofs of Claim shall be resolved by the Receiver in accordance with subparagraph F below.

**B.** ***Investors and Notices of Determination***

The Receiver shall provide the Notice of Determination to all Investors in the Partnerships (excluding Investors in AIF who must file Proofs of Claim; *provided, however*, the Receiver is authorized to provide Notices of Determination to some or all Investors in AIF in his sole discretion), regardless of whether they are each entitled to receive an Initial Distribution, within fourteen (14) business days after the entry of the Plan Order.

An Investor who disagrees with the information or amounts in the Notice of Determination and wants to assert a Claim that is different must timely and properly submit a Proof of Claim Form, including all required supporting documents in accordance with this Plan and the Plan Order. Any Investor filing a Proof of Claim shall have the burden of proving, by a preponderance of the evidence, the validity and amount of their Claim with sufficient documentary evidence to support such Claim. Nothing in this subparagraph B shall limit the requirements of any Claimant under subparagraphs C and D below. The Receiver's determination as to the amount of an Investor's Claim arising from that Investor's investment in the Partnership shall be deemed final, unless the Investor demonstrates to the Receiver by a preponderance of the evidence and to the Receiver's satisfaction, either through the resolution process set forth in subparagraph F below or by filing a Proof of Claim, that the Receiver should not rely on the Books and Records or the Court otherwise orders the Receiver, pursuant to a final, non-appealable order, to adjust the amount of such Investor's Claim arising from that Investor's investment in the Partnership.

Investors are authorized to file Proofs of Claim for Claims other than Claims owed to them based on their investment as a limited partner of a Partnership.

21

Enclosed with each Notice of Determination for each Investor of APLP, Holdings II, and Cold Storage will be an Initial Distribution check for that Investor unless such Investor is not entitled to receive an Initial Distribution. The amount of such Initial Distribution check will be determined by the Receiver based on the Books and Records of the relevant Partnership. Each such check will be valid for the period set forth in Article XI of this Plan. Investors who are not entitled to receive an Initial Distribution will also be sent Notices of Determination contemporaneously with those being sent to Investors receiving an Initial Distribution, and such notices shall include a determination of such Investor's Claim by the Receiver based on the Books and Records and a brief explanation regarding why such Investor is not receiving an Initial Distribution.

If an Investor cashes its Initial Distribution check (regardless of when received), that Investor shall be deemed to have irrevocably agreed (i) to the amount of such Investor's Claim as set forth in the Notice of Determination, and (ii) that the amount paid to such Investor as the Initial Distribution is in partial satisfaction of amounts owed to it by the relevant Partnership, regardless of whether such Investor filed or files a Proof of Claim asserting a Claim in an amount greater than that appearing in its Notice of Determination, and/or seeks any relief from the Court concerning its Claim that is subject to its Notice of Determination. **If the Investor agrees with the amount set forth in the Notice of Determination, then the Investor need only cash the accompanying Distribution check and need not take any further action.**

C. *Required Supporting Documentation for the Proof of Claim*

Each Proof of Claim shall include copies of all documents and other information available to the Claimant that supports the Claim underlying such Proof of Claim, including, but not limited to: copies of personal checks, cashier's checks, wire transfer advances, and other documents evidencing the investment of funds; copies of each signed investment contract; copies

22

of all agreements, promissory notes, purchase orders, invoices, itemized statements of running accounts, receipts, contracts, court judgments, mortgages, security agreements, or evidence of perfection of lien; and other documents evidencing the amount and basis of the Claim.

If supporting documentation is not available, then the Proof of Claim must include an explanation as to why the documentation is unavailable. It is not acceptable for a Claimant to, in lieu of providing some or all supporting documentation, state in its Proof of Claim that the Receiver, the Receivership Estate, the Retained Personnel, and/or the Partnerships have or should have copies of supporting documentation, and any Proof of Claim that includes such a statement may, subject to subparagraph F below, be expunged or disallowed by the Receiver without seeking further order of the Court.

**D.** *Request for Additional Information*

If at any time after receiving a Proof of Claim, the Receiver determines that additional information is needed to assess and process a Claim, the Receiver is authorized to contact the Claimant (or counsel, if one is designated in the Proof of Claim) by telephone, mail, or email to request such additional information. Without limiting the Receiver's rights and authority under this Plan, upon request from the Receiver, all Claimants must provide adequate information as to their identity and relationship to the Partnerships and/or the Excluded Parties in order to be considered for any distribution. Additionally, and pursuant to the Receivership Order, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure without further leave of Court. The Receiver may base determinations of distributions to holders of Claims on his review and analysis of such information and withhold any distributions to any Claimant that does not provide such information in form and substance satisfactory to the Receiver. The Receiver may also expunge or disallow a Proof of Claim without seeking further order of the Court if that Proof of Claim is

23

not, in the sole discretion of the Receiver, thereafter adequately substantiated by the Claimant with accurate and complete documentation.

**E.      *Effect of Failure to Submit a Proof of Claim Before the Claims Bar Date***

Any Claimant who is required to submit a Proof of Claim but fails to do so in a timely manner or in the proper form (i) shall be forever barred, estopped, and enjoined to the fullest extent allowed by applicable law from asserting, in any manner, the Claim that was required to be included in such Proof of Claim against (a) any Receivership Entity or (b) the Receivership Estate or its assets and (ii) shall not receive any distribution under this Plan with respect to such Claim. Further, the Receiver shall have no further obligation to provide any notices to such Claimant on account of such Claim or otherwise in connection with the Receivership Estate, and the Receivership Estate shall be discharged from any and all indebtedness or liability with respect to such Claim.

**F.      *Resolution Process***

All Claimants who dispute the amount or status of their Claims as set forth in the Notices of Determination shall submit their dispute and the detailed records of their Claim and information supporting the nature and validity of their dispute as part of their Proof of Claim to the Receiver by the Claims Bar Date. The Receiver will then evaluate the Proof of Claim by comparing the Claimant's documentation against the Books and Records and taking into account available reserves, operational funding needs, and the effect such Claim has on other Claimants. Upon completing this process, the Receiver will then send a letter to the Claimant (to the email or physical address supplied in the Claimant's Proof of Claim) with his findings and decision. If the Claimant agrees with the Receiver's decision, no further action will be required by the Claimant. If the Claimant disagrees with the Receiver's decision, the Claimant will have ten (10) calendar days from the date it received the letter from the Receiver to mail a return letter to the

attention of the address referenced in the Receiver's letter further disputing the findings and requesting further adjudication. If, for whatever reason, the Claimant does not respond back within ten (10) calendar days of receiving the letter from the Receiver, they will be deemed to have irrevocably accepted the Receiver's findings and decision. Claimants are directed to cooperate with the Receiver to the maximum extent possible to achieve swift and cost-efficient resolution of disputes concerning Claims without the need for a determination by the Court. The Receiver and each Claimant shall negotiate and participate in this resolution process in good faith.

The Receiver is authorized to employ any additional methods that he deems reasonable and necessary to process and reconcile Proofs of Claim and to verify the Claims asserted in the Proofs of Claim. If the Receiver is unable to resolve any disputes about a Claim (and, in case of an Investor Claim, if the Investor has not cashed the check for the Initial Distribution) within the timeline prescribed herein, the Receiver is authorized to file a written objection to the Claim with the Court, with a copy served on the Claimant and/or the Claimant's counsel within the timeframe set forth in this Plan. The objection shall include a statement of the reasons for the Receiver's objection and may include copies of any document or other writing upon which the Receiver relies. The Claimant's response to the Receiver's objection shall be filed with the Court, with a copy served on the Receiver and his counsel by electronic mail to GPBCapInfo@epiqglobal.com, within thirty (30) calendar days of the date on which the Receiver filed his written objection to the Claim. The Receiver shall have thirty (30) calendar days to file and serve his reply.

No distribution shall be made with respect to any disputed Claim until such dispute has been resolved in accordance with this Plan and the Plan Order. Notwithstanding the foregoing,

25

nothing shall preclude the Receiver in his sole discretion from making distributions on account of the undisputed portions of disputed Claims.

The Receiver is further authorized to file one or more objections or omnibus objections, which objections may be based on one or more of the following, or any other basis:

      i.    the Proof of Claim was not timely filed;

      ii.    the Proof of Claim fails to specify the basis for the Claim or provide supporting documentation for such Claim to the satisfaction of the Receiver;

      iii.    the Proof of Claim is duplicative of another Proof of Claim;

      iv.    the Proof of Claim merely disputes the amount of the Investor Claim and does not assert any other basis for relief;

      v.    the Proof of Claim was filed against the wrong entity;

      vi.    the Investor agreed to the amount of the Investor Claim by cashing their Initial Distribution;

      vii.    the Claims are not valid, assert an incorrect amount, and/or are subject to equitable subordination, recharacterization, fraudulent conveyance, or offset; and/or

      viii.    the Claims have been otherwise satisfied or released.

The holder of a Claim is prohibited from commencing any discovery or motion practice against the Receivership Entities prior to the earlier of (x) the Receiver's filing of an objection to that Claim and (y) the expiry of the deadline for the Receiver to file objections to that Claim, *unless* it has previously obtained (a) the Receiver's consent in writing or (b) leave of the Court upon a showing of good cause and substantial need for such relief. This paragraph does not limit the Receiver's powers to conduct any discovery, engage in any motion practice, or commence

26

litigation in connection with, or in response to, any Proofs of Claim or as otherwise determined by the Receiver in his sole discretion, including, without limitation, litigation based on theories of equitable subordination, recharacterization and/or fraudulent conveyance, pursuant to the Receivership Order, this Plan, any other order of the Court, and/or applicable law.

### G. *Consent to Jurisdiction and Agreement to be Bound*

Cashing a distribution check, submission of a Proof of Claim, or filing anything with the Court in connection with this matter shall constitute consent to the jurisdiction of the Court for all purposes and shall constitute an irrevocable agreement to be bound by (i) the Court's decision, including, without limitation, a determination as to the extent, validity, and amount of any Claim asserted against the Receivership Estate, (ii) the Receiver's determination in accordance with the procedures described in this Plan, and (iii) all other decisions of the Court regarding this Plan.

### H. *Limits on Distributions; Reservation of Rights*

Notwithstanding anything to the contrary in this Plan, but subject to Article IX.B.2 of this Plan, no Claimant shall be entitled to receive in respect of its Claim any distribution or recovery from Receivership Assets that is in excess of the Allowed amount of such Claim, and any funds that would have been distributed to such Claimant but for this provision shall instead remain part of the Receivership Assets and shall be applied in accordance with other provisions of this Plan.

Any Investor who has transferred or assigned all or any part of their investment in a Partnership, or their right to receive any distributions or recoveries on or with respect to such investment, to any other person or entity for any reason, is required to advise the Receiver of this in writing, and to provide the Receiver with all relevant details and agreements entered into related thereto, within ten (10) business days of such Investor's receipt of a Notice of Determination.

For Investors who have not, or are not, receiving a Notice of Determination under this Plan, such Investors must provide such information to the Receiver within ten (10) business days of receipt of a written demand from the Receiver.

In addition, any Investor who has received any recovery, funds, compensation, payments or other property of any kind from any other source in connection with their investment in a Partnership is required to advise the Receiver of this in writing, and to provide the Receiver with all relevant details and agreements entered into related thereto, within ten (10) business days of such Investor's receipt of a Notice of Determination. For Investors who have not, or are not, receiving a Notice of Determination under this Plan, such Investors must provide such information to the Receiver within ten (10) business days of receipt of a written demand from the Receiver.

Any Investor who has entered into an agreement with a third party in any way concerning or relating to such Investor's investment or Claim is solely responsible for complying with the terms of such agreement, including, without limitation, any notice, turnover, subrogation, or third-party beneficiary provisions set forth therein, and for any breaches thereof. The Receiver shall have no obligations under this Plan or otherwise to any such third parties.

All distributions made under this Plan, including, but not limited to, any excess distributions or distributions that should have been directed to another person or entity, are without prejudice to the rights of the Receiver to seek the return of some or all of those same funds from an Investor in one or more separate Causes of Action, and all rights of the Receiver with respect thereto are reserved.

## VIII.   LPA WATERFALLS

The following is a high-level summary of the distribution waterfalls set forth in the LPAs:[5]

1. *Cold Storage Waterfall*

   i. *First*, the limited partners (i.e., Investors) would receive a payment equal to 100% of their investment (net of any sales charges, commissions and/or selling expenses).

   ii. *Second*, the limited partners would receive an additional payment consisting of (a) an amount equivalent to the sales charges paid by the limited partners in relation to their investment and (b) an annualized rate of return (of 8% of the average investment per annum (a "preferential return")) on the limited partners' investments (where such preferential return is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

   iii. *Third*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).[6]

---

[5] These descriptions are for convenience only. To the extent of any discrepancies between the descriptions set forth in this Article VIII and the LPAs, other than with respect to treatment of the Special Limited Partners, the LPAs shall govern and control.

[6] The payment made to the Special Limited Partner pursuant to this step (and the same for other Partnerships, including AIF) will be generally determined as a percentage of all distributions. In order for the Special Limited Partner to receive 20% of all distributions made to the limited partners and the Special Limited Partner, the Special Limited Partner would be entitled to receive the equivalent of 25% of all distributions made to the limited partners.

iv. *Fourth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

2. *APLP Waterfall*

i. *First*, the limited partners (i.e., Investors) would receive payment equal to 100% of their investment (net of any sales charges).

ii. *Second*, the limited partners would receive an additional payment in the amount equivalent to the sales charges paid by the limited partners in relation to their investment.

iii. *Third*, the limited partners would receive an additional payment (a "preferential return") equal to an annualized rate of return (of 8% of the average investment per annum) on the limited partners' investments (where such preferential return is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

iv. *Fourth*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

v.  *Fifth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties)

3.  *Holdings II Waterfall*

i.  *First*, the limited partners (i.e., Investors) would receive a payment equal to 100% of their investment (net of any sales charges).

ii.  *Second*, the limited partners would receive an additional payment in the amount equivalent to the sales charges paid by the limited partners in relation to their investment.

iii.  *Third*, the limited partners would receive an additional payment (a "preferential return") equal to an annualized rate of return (of 8% of the average investment per annum) on the limited partners' investments (where such preferential return is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

iv.  *Fourth*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

31

> v. *Fifth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

4. *Waste Management Waterfall*

> i. *First*, the limited partners (i.e., Investors) would receive payment equal to 100% of their investment (net of any sales charges).
>
> ii. *Second*, the limited partners would receive an additional payment in the amount equivalent to the sales charges paid by the limited partners in relation to their investment.
>
> iii. *Third*, the limited partners would receive an additional payment (a "preferential return") equal to an annualized rate of return (of 8% of the average investment per annum) on the limited partners' investments (where such preferential return is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).
>
> iv. *Fourth*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

32

v. *Fifth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

5. *NYCD Waterfall*

i. *First*, the limited partners (i.e., Investors) would receive a payment equal to 100% of their investment.

ii. *Second*, the general partner would receive any accrued but unpaid fees owed by the limited partners to the general partner for managing NYCD, which are accrued and paid by the limited partners in relation to their amount invested (where such fee is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

iii. *Third*, the limited partners would receive a preferential, cumulative non-compounded rate of return (of 10% of the average investment per annum) on the limited partners' investments (where such preferential return is calculated based on net capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

iv. *Fourth*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party

33

therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

    v.    *Fifth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

6.    *Holdings Waterfall*

    i.    *First*, the limited partners (i.e., Investors) would receive a payment equal to 100% of their investment (net of any sales charges).

    ii.    *Second*, the limited partners would receive an additional payment consisting of (a) an amount equivalent to the sales charges paid by the limited partners in relation to their investment and (b) an annualized rate of return (of 8% of the average investment per annum (a "preferential return")) on the limited partners' investments (where such preferential return is calculated based on gross capital investments pursuant to a specified formula that takes into account any previous withdrawals or distributions).

    iii.    *Third*, the Special Limited Partner would receive a payment equal to 20% of all cash distributions made to (a) the limited partners equal to the sales charge and the preferential return described above and (b) the Special Limited Partner (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

34

    iv.    *Fourth*, any remaining cash would be distributed 20% to the Special Limited Partner and the other 80% to the limited partners (the Special Limited Partner is an Excluded Party therefore such distributions are subject to the other provisions of this Order concerning distributions to Excluded Parties).

7.    *Holdings Qualified Waterfall*[7]

    i.    All distributions from Holdings Qualified are returned proportionately to the limited partners (i.e., Investors), pro rata based on their investments, and net of any sales charges.

## IX.    TREATMENT OF CAUSES OF ACTION BELONGING TO THE RECEIVERSHIP ESTATE

Pursuant to the Receivership Order and this Plan, the Receiver is authorized, empowered and directed to, in his own name or in the name of the Receivership Entities, investigate, prosecute, commence, maintain, defend, intervene in or otherwise participate in, compromise, settle, abandon, dismiss, and/or adjust claims and Causes of Action in any state, federal, or foreign court or proceeding of any kind as may, in the Receiver's sole discretion, be advisable or proper to recover and/or conserve Receivership Assets.

### A.    *Information Sharing*

In accordance with the Receiver's scope of authority, the Receiver shall be authorized to enter into agreements with plaintiffs' attorneys and Investors to establish information-sharing programs to help Investors pursue claims, if any, they might hold against Excluded Parties, as well as others as determined from time to time by the Receiver in his sole discretion.

---

[7] Holdings Qualified is a feeder fund which invests all invested capital into Holdings; therefore, this waterfall reflects a full repayment to the investors (less selling and other fees), as the Special Limited Partner payment is made at the Holdings level.

**B.** *Distribution of Litigation Proceeds*

1. *Proceeds of Causes of Action Belonging Generally to the Receivership Estate*.

The proceeds received from the prosecution or settlement by the Receiver of Causes of Action based on harm applicable to all Receivership Entities ("General Harm Litigation Proceeds") shall be held by the Receiver as they are received, with the net proceeds thereof to be distributed by the Receiver at the time the final distribution is to be made under this Plan, to Investors in the following Partnerships (i) Holdings, (ii) Holdings II, (iii) APLP, (iv) Waste, (v) Cold Storage, and (vi) NYCD (collectively, the "Specified Partnerships") *pro rata* as among such Specified Partnerships based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in a specific Specified Partnership, by (b) the aggregate amount of all gross capital contributions in all Specified Partnerships, until all Investors in a Specified Partnership have been paid an amount equal to 100% of their Net Capital Contribution in such Specified Partnership (the "Specified Partnership Trigger Amount") as a result of the application of General Harm Litigation Proceeds, other Receivership Assets, or funds from other sources. To the extent an Investor in a Specified Partnership has been paid an amount equal to 100% of their Net Capital Contribution prior to other Investors in the same Specified Partnership, General Harm Litigation Proceeds that would have been distributed to such Investor but for the such Investor having been paid an amount equal to 100% of their Net Capital Contribution, shall be allocated to other Investors in the same Specified Partnership until the Specified Partnership Trigger Amount has been reached with respect to such Specified Partnership.

To the extent that all Investors in a Specified Partnership have been paid the Specified Partnership Trigger Amount, the Receiver shall direct such proceeds *pro rata* to the other Specified Partnerships in which the Investors have not been paid the Specified Partnership Trigger Amount at the time of such distribution.

36

After all Investors in all Specified Partnerships have been paid an amount equal to their Specified Partnership Trigger Amount as a result of the application of General Harm Litigation Proceeds, other Receivership Assets or funds from other sources, the Receiver, solely to the extent of funds available for such purpose, shall pay each Investor in a Specified Partnership on a *pro rata* basis an amount equal to, but not in excess of, the aggregate commissions such Investor paid in making their gross capital contribution in such Specified Partnership.

Once each Investor has been paid their Specified Partnership Trigger Amount and recovered their aggregate commissions, all remaining General Harm Litigation Proceeds shall be paid *pro rata* to Investors in the Specified Partnerships based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in a specific Specified Partnership, by (b) the aggregate amount of all gross capital contributions in all Specified Partnerships.

2.      *Proceeds of Partnership-Specific Litigation*. The net proceeds received from the successful prosecution or settlement by the Receiver of Causes of Action based on harm applicable to a specific Partnership ("Specific Harm Litigation Proceeds") shall be distributed by the Receiver only to the Investors of such Partnership. Distributions of Specific Harm Litigation Proceeds shall be made to Investors in a specific Partnership *pro rata* based on the percentage achieved by dividing (a) the amount of each Investor's gross capital contribution in such Partnership, by (b) the aggregate amount of all gross capital contributions in such Partnership, until each Investor in such Partnership has been paid an amount equal to 100% of their Net Capital Contribution in such Partnership (the "Specific Harm Trigger Amount") as a result of the application of Specific Harm Litigation Proceeds, other Receivership Assets, or funds from other sources.

37

After each Investor in a Partnership has been paid an amount equal to its Specific Harm Trigger Amount (as a result of the application of Specific Harm Litigation Proceeds, other Receivership Assets or funds from other sources), the Receiver, solely to the extent of funds available for such purpose, shall pay each Investor in a Partnership on a *pro rata* basis an amount equal to the aggregate commissions such Investor paid in making their gross capital contribution in such Partnership until all such amounts have been paid in full. This allocation methodology shall apply even if distributions to an Investor in a Partnership exceed 100% of such Investor's gross capital contribution in such Partnership.

3.      *Other Investor Litigation Recoveries*. Any amount paid or to be paid to an Investor in connection with any litigation or other dispute resolution proceedings brought, whether on a class or individual basis, to recover losses from investments in one or more Partnerships, regardless of the parties to such litigation or other dispute resolution proceeding, shall be deducted from and reduce on a dollar-for-dollar basis any later distributions to be made to such Investor pursuant to this Plan. This paragraph is intended to prevent Investors from obtaining a "double recovery" from the Receivership Estate and shall be broadly construed to accomplish that purpose. Notwithstanding any other language or provisions in this Plan to the contrary, the Receiver shall have the discretion, subject to Court approval, to allocate other investor litigation recoveries that are funded from the Receivership Estate in a manner that the Receiver determines is fair and appropriate.

4.      *Costs of Investor Litigation and Dispute Resolution*. Investors who are plaintiffs or class members in any litigation or other dispute resolution proceedings shall bear sole responsibility for any costs and fees incurred as a result of such litigation and any other disputes arising in connection with amounts owed to plaintiffs' attorneys in connection with such litigation and otherwise. The Receivership Entities are not obligated to pay, and shall not pay,

38

any costs, fees, or expenses of any such plaintiffs' counsel. The Receiver shall not recognize any Claims or Proofs of Claim seeking payment on account of any such costs, fees, or expenses and shall instruct the Claims Agent to reject or expunge any such Proofs of Claim, or the applicable portions thereof, from the claims register maintained in the Receivership Estate, which shall be deemed to have occurred automatically upon the Receiver giving the Claims Agent such instruction.

### C. *Privilege*

Pursuant to the Receivership Order, any and all attorney-client privilege, work product protection, common interest or joint defense privilege, or other privilege or immunity (collectively, the "Privileges") of the Receivership Entities, the Monitor, the Monitorship, and/or attaching to or arising in or in connection with any of their documents, data or communications (whether written or oral), were transferred and belong exclusively to the Receiver for the benefit of the Receivership Estate. The Receiver therefore has sole authority, and is empowered, to enforce, waive, assign, or release any or all Privileges in the exercise of his duties as Receiver.

### X. SUBSEQUENT DISTRIBUTIONS

The Receiver shall make Subsequent Distributions from time to time under this Plan and without further order of the Court (unless the Receiver, in his sole discretion, determines to seek such an order), to the extent of and from available Receivership Assets (including, without limitation, cash on hand, proceeds from the sale of assets of the Receivership Entities, or materialization of Causes of Action in accordance with the Plan Order and the Receivership Order) when available Receivership Assets are deemed sufficient by the Receiver after taking necessary reserves into consideration.

The Receiver reserves the right to seek from the Court additional orders and authority in respect of Subsequent Distributions and/or to amend this Plan from time to time as appropriate or

necessary (including, without limitation, to submit additional distribution proposals for any assets that become available to any Receivership Entity, or in connection with any other matters concerning the Receivership Estate). The Receiver has sole discretion to determine the timing, sequence, and magnitude of the Initial Distribution and each Subsequent Distribution, subject to the Plan Order and any other orders entered by the Court affecting Claims and/or distributions, and the Court shall retain jurisdiction for this purpose and any other matters that may arise in relation to this Plan, the Plan Order and any further distribution plans.

The Excluded Parties will not receive any distributions unless and until it has been determined by a final, non-appealable order of the Court that such Excluded Parties are entitled to such distributions.

## XI.     UNDELIVERABLE AND UNCLAIMED DISTRIBUTIONS

In the event that any distribution to a Claimant is returned as undeliverable, the Claims Agent shall use commercially reasonable efforts to determine the current address of such Claimant, but no re-distribution to such Claimant shall be made unless and until the Claims Agent has determined the then current address of such Claimant. Any distribution check sent to a Claimant that has not been cashed within ninety (90) days after the date of such distribution shall be deemed unclaimed property and revested in the Receivership Estates and any entitlement of such Claimant to such distribution shall be extinguished and forever barred; *provided, however*, that the Receiver may, in his sole discretion, provide such Claimant with a replacement check in response to a written request therefor from such claimant that is received by the Receiver at least thirty (30) days prior to the date designated by the Receiver for making final distributions to Claimants. All funds or other property that revests in the Receivership Estate pursuant to this Article XI shall be distributed *pro rata* to other Claimants in the same fund as the Claimant whose distribution payment revested in the Receivership Estate. No such funds or other property

40

shall escheat to any federal, state, or local government or other entity for any reason, except as set forth in Article XII below.

## XII.     DE MINIMIS DISTRIBUTIONS; REMAINING FUNDS

No distribution of $5 or less shall be made by the Receiver. In addition, no distribution shall be made by the Receiver if the cost of making that distribution, as reasonably determined by the Receiver, exceeds the dollar amount of such distribution. On or about the time the final distribution of the remaining funds in the Receiver Estate is to be made under this Plan, if the Receiver reasonably determines that the cost of calculating and making such final distribution is excessive in relation to the benefits to the Claimants who would otherwise be entitled to such distributions, the Receiver shall transfer such remaining funds to the United States Treasury.

## XIII.     MISCELLANEOUS

The Receiver, in his sole discretion, is authorized to take any action and to enter into agreements as appropriate or necessary to administer and implement this Plan. The Receiver is entitled to rely on all standing rules of law and court orders in connection with executing this Plan and his duties as Receiver. As set forth in the Receivership Order and Plan Order, neither the Receiver, nor any Retained Personnel (including personnel of Highline Management Inc. or GPB Capital as of December 3, 2024, as reinstated and authorized by the Receiver) or Ordinary Course Professionals, nor their respective affiliates shall be liable (personally or otherwise) to any person (or any predecessor or successor thereto) for any reason whatsoever arising out of matters relating to the Receivership Estate, this Plan, the execution of or failure to execute the Receiver's duties or the performance or nonperformance of services for the Receivership Estate or the Receiver, except for any liability that is determined by a final order of the Court that is no longer subject to appeal to have arisen primarily from the gross negligence, willful misconduct,

41

fraud, or willful breach of fiduciary duty of such person, and, for the avoidance of doubt, in no event shall A&M be responsible or liable for the acts or omissions of the Receiver.

In connection with the distributions made in accordance with this Plan, the Receiver shall comply with all tax withholding and reporting requirements imposed by any governmental unit and all distributions shall be subject to such withholding and reporting requirements, if any. The Receiver shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

To the extent there are any inconsistencies between this Plan and the Plan Order, the Plan Order shall govern and control.

**[REMAINDER OF PAGE LEFT BLANK]**

The Receiver is vested with management authority for the Receivership Entities and the Receivership Assets and reserves the right to exercise powers provided under the Receivership Order, Plan Order and applicable law to wind down the business operations of the Receivership Entities and the Receivership Estate, including the right to commence bankruptcy cases, or otherwise.

Dated: January 17, 2025
      Washington, D.C.

Respectfully submitted,

**Joseph T. Gardemal III, Receiver**

By: _____

# EXHIBIT A

# FORM OF NOTICE OF CLAIMS BAR DATE AND
# PROCEDURES FOR SUBMITTING A PROOF OF CLAIM

## (Attached)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH, <br><br> Defendants. | 21-cv-00583-MKB-VMS |

## NOTICE OF CLAIMS BAR DATE AND
## PROCEDURES FOR SUBMITTING A PROOF OF CLAIM[1]

You are receiving this notice (this "Notice of Claims Bar Date") because you are a potential Claimant (as defined below) of one or more of the Receivership Entities (as defined below).[2] This Notice of Claims Bar Date is for informational purposes only. You should refer to the Plan, the Plan Order, and/or the Receivership Order (as such terms are defined below), which govern and control your rights and obligations.

The United States District Court for the Eastern District of New York (the "Court") entered the *Order Appointing Receiver and Imposing Litigation Injunction* (the "Receivership Order") [Dkt. No. 187],[2] appointing Joseph T. Gardemal III as receiver (the "Receiver") of the Receivership Entities and the Receivership Assets.[3]

Pursuant to the Receivership Order, the Receiver's powers and duties include, among other things, the power to implement a plan to distribute available assets to Claimants holding a valid Claim against the Receivership Entities.

A plan of distribution [Dkt. No. [__]] (as amended, supplemented, or otherwise modified, the "Plan") was approved by the Court on _____, 2025 [Dkt. No. [__]] (the "Plan Order").[4]

**THE PLAN ORDER ESTABLISHED _____, 2025, AT 11:59 P.M. (PREVAILING EASTERN TIME) (THE "CLAIMS BAR DATE") AS THE DEADLINE FOR CLAIMANTS TO**

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan (defined herein).

[2] A list of the Receivership Entities is set forth on **Schedule 1**.

[3] Mr. Gardemal was previously appointed by the Court in February 2021 as the independent monitor over GPB Capital and its Partnerships in the Case.

[4] Copies of the Plan, the Plan Order, the Receivership Order, and all other publicly filed documents in this case are available free of charge at the Claims Agent's website at: https://dm.epiq11.com/GPBCapital.

**SUBMIT A PROOF OF CLAIM FORM (THE "<u>PROOF OF CLAIM FORM</u>") TO ASSERT A CLAIM AGAINST THE RECEIVERSHIP ENTITIES.**  A Proof of Claim Form is enclosed as Exhibit A to this Notice of Claims Bar Date.

The fact that you have received this notice does not necessarily mean that you are a Claimant, that you have a valid Claim, or that the Court or the Receiver believes you have a Claim against a Receivership Entity or the Receivership Estate.

## 1.     WHAT IS THE CLAIMS BAR DATE?

The Claims Bar Date is the date by which the individuals and entities described below must submit a Proof of Claim Form, properly completed and signed under penalty of perjury, with the Claims Agent in the manner indicated below.  **AGAIN, THE DEADLINE FOR CLAIMANTS TO SUBMIT A PROOF OF CLAIM FORM TO ASSERT A CLAIM AGAINST THE RECEIVERSHIP ENTITIES IS _____, 2025, AT 11:59 P.M. (PREVAILING EASTERN TIME).**

Any Proof of Claim that is not submitted by the Claims Bar Date or in the proper form will be subject to disallowance, which means, if you are required to submit a Proof of Claim and have failed to do so timely and properly, you will NOT be eligible to receive any distribution on your Claim under the Plan.

## 2.     WHO NEEDS TO SUBMIT A PROOF OF CLAIM?

Except as expressly set forth below, all individuals and entities (including, without limitation, partnerships, corporations, joint ventures, estates, trusts, and governmental units or authorities) (each, a "<u>Claimant</u>") who believe they possess a Claim[5] because they (a) are an Investor or (b) hold (i) a General Unsecured Claim, (ii) a potential or claimed right to payment, or (iii) a potential claim of any nature against any of the Receivership Entities and believe that they are owed money by, or are entitled to a distribution from, the Receivership Estate, must submit a Proof of Claim.  If you are uncertain whether you possess a Claim or should file a Proof of Claim, you should consult your legal and tax advisors.

### (a)     GENERAL UNSECURED CREDITORS <u>MUST</u> FILE A PROOF OF CLAIM.

General Unsecured Creditors <u>MUST</u> file a Proof of Claim in order to be considered for a distribution under the Plan.  A General Unsecured Creditor is a holder of a General Unsecured Claim.  A General Unsecured Claim means any Claim that is not secured by any collateral and which does not have any priority over any other Claims, including, without limitation, trade claims accrued on or before the Record Date (i.e., January 17, 2025), other than (a) a Priority Claim, (b) a Claim arising as a result of an Investor's acquisition, ownership or interest of, in or to an equity interest in a Partnership (including all claims arising under or in connection with class action lawsuits and/or other litigation against or involving a Receivership Entity), or (c) a Claim of a Receivership Entity against another Receivership Entity.

---

[5] Pursuant to the Plan, a "Claim" means "any (a) potential or claimed right to payment, whether or not such right is based in equity or by statute, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (b) potential or claimed right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; *provided, however*, that an unfulfilled redemption request that was made by an Investor at any time prior to or after the date of entry of the Receivership Order is not, and shall not be treated or recognized as a "Claim" under this Plan with respect to such redemption request, and such Investor shall have no priority over any other Claimants as a result of having made such unfulfilled redemption request."

**(b)** **EXEMPT CLAIMANTS ARE <u>NOT</u> REQUIRED TO FILE A PROOF OF CLAIM.**

Exempt Claimants are <u>NOT</u> required to file a Proof of Claim. An Exempt Claimant is one of the following: (i) the Receiver, the Claims Agent, Retained Personnel and Ordinary Course Professionals, and Priority Claimants; and (ii) any Investor who both (a) does not dispute the amount or characterization of its Claim as set forth in its Notice of Determination and (b) agrees that the Claim is an obligation of the specific Partnership identified in such Notice of Determination.

**(c)** **INVESTORS <u>*MAY*</u> NEED OR WANT TO FILE A PROOF OF CLAIM.**

See Sections 3 and 4 below for more detail.

**(d)** **EXCLUDED PARTIES <u>MUST</u> FILE A PROOF OF CLAIM.**

All Excluded Parties[6] must file a Proof of Claim in order to be considered for distribution. No Excluded Party will receive a distribution under the Plan unless and until it has been determined by a final, non-appealable order of the Court that such Excluded Party is legally and equitably entitled to receive a distribution.

**3.** **WHICH INVESTORS[7] ARE ENTITLED TO RECEIVE A NOTICE OF DETERMINATION?**

The Notice of Determination is a separate notice with instructions and attachments sent to Investors, whom the Receiver has determined, in his sole discretion based on his review of the Books and Records of the Receivership Entities, are entitled to an Allowed Claim. Attached to each Notice of Determination is a schedule which contains information and amounts that together constitute the Receiver's determination of the total amount of cash that will be distributed to that Investor and the amount of cash that will be distributed to such Investor in the initial distribution ("<u>Initial Distribution</u>") approved by the Plan. If you are an Investor in (i) GPB Automotive Portfolio, LP ("<u>APLP</u>"), (ii) GPB Holdings II, LP ("<u>Holdings II</u>"), or (iii) GPB Cold Storage, LP ("<u>Cold Storage</u>"), an Initial Distribution check will be included with your Notice of Determination (unless you are not entitled under the Plan to receive an Initial Distribution). Investors in the other Partnerships are not receiving an Initial Distribution (but may be entitled to receive Subsequent Distributions under the Plan).

**IF YOU ARE AN INVESTOR (OTHER THAN AN INVESTOR IN AIF), A NOTICE OF DETERMINATION IS ENCLOSED WITH THIS NOTICE OF THE CLAIMS BAR DATE. CAREFULLY REVIEW THE NOTICE OF DETERMINATION AND <u>SCHEDULE A</u> ATTACHED THERETO. IF YOU BELIEVE YOU ARE ENTITLED TO A NOTICE OF DETERMINATION BUT HAVE NOT RECEIVED ONE, CONTACT THE CLAIMS AGENT BY PHONE AT (855) 635-**

---

[6] Pursuant to the Plan, the "Excluded Parties" are "(i) David Gentile, (ii) all others who are accused, suspected, or adjudicated of improper conduct with regard to the Partnerships, including, without limitation, (a) Jeffry Schneider, (b) Jeffrey Lash, (c) Michael Cohn, (d) AAS, (e) Ascendant Capital, (f) Axiom Capital Management, Inc., (g) DJ Partners, LLC, (h) GPB SLP, LLC, (i) GPB Auto SLP, LLC, (j) GPB H2 SLP, LLC, (k) GP H3 SLP, LLC, (l) GPB NYCD SLP, LLC, and (m) GPB WM SLP, LLC, and (iii) all other persons and entities determined by the Receiver from time to time."

[7] Pursuant to the Plan, an "Investor" means any "Claimant with a Claim arising, in whole or in part, as a result of such Claimant's acquisition, ownership or interest of, in or to an equity interest in a Partnership (including all claims arising under or in connection with class action lawsuits and/or other litigation against or involving a Receivership Entity), other than any Investor who has previously redeemed its investment."

**3027 (TOLL FREE IN THE U.S.) OR (503) 782-5917 (INTERNATIONAL CALLERS) OR BY E-MAIL AT GPBCapInfo@epiqglobal.com.**

As noted, Investors in APLP, Holdings II, and Cold Storage will receive an Initial Distribution check enclosed with their Notice of Determination (unless they are not entitled under the Plan to receive an Initial Distribution). If you are an Investor in APLP, Holdings II, or Cold Storage and receive a Notice of Determination but a check is not enclosed, and you believe you are entitled to a distribution, consult the Plan and contact the Claims Agent using the phone number or e-mail address referenced in this Section 3.

**4.     DO INVESTORS NEED TO SUBMIT PROOFS OF CLAIM?**

If an Investor received a Notice of Determination and ***AGREES*** with the information and amounts in Schedule A to the Notice of Determination, that Investor does NOT need to submit a Proof of Claim. If an Investor cashes its Initial Distribution check (regardless of when received), that Investor shall be deemed to have irrevocably agreed (i) to the amount of such Investor's Claim as set forth in the Notice of Determination, and (ii) that the amount paid to such Investor as the Initial Distribution is in partial satisfaction of amounts owed to it by the relevant Partnership, regardless of whether such Investor filed or files a Proof of Claim asserting a Claim in an amount greater than that appearing in its Notice of Determination, and/or seeks any relief from the Court concerning its Claim that is subject to its Notice of Determination. If the Investor agrees with the amount set forth in the Notice of Determination, then the Investor need only cash the accompanying Distribution check and need not take any further action.

If an Investor received a Notice of Determination and ***DISAGREES*** with the information or amounts in Schedule A to the Notice of Determination and wants to assert a Claim that is different, that Investor MUST properly complete and timely submit a Proof of Claim, including with all supporting documentation as set forth in this Notice of Claims Bar Date. Investors that fail to submit Proofs of Claim by the Claims Bar Date deadline will be barred from later contesting their Allowed Claim amount.

If you are an Investor in AIF or hold any interests in or Claims against AIF, you MUST timely submit a Proof of Claim and provide adequate information as to your identity and relationship to the Partnerships and/or the Excluded Parties in order to be considered for any distribution under the Plan.

**5.     WHAT ARE THE CONSEQUENCES OF NOT TIMELY AND PROPERLY SUBMITTING A PROOF OF CLAIM?**

**ANY CLAIMANT WHO IS REQUIRED TO SUBMIT A PROOF OF CLAIM BUT FAILS TO DO SO IN A TIMELY MANNER OR IN THE PROPER FORM (I) SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW FROM ASSERTING, IN ANY MANNER, THE CLAIM THAT WAS REQUIRED TO BE INCLUDED IN SUCH PROOF OF CLAIM AGAINST (A) ANY RECEIVERSHIP ENTITY OR (B) THE RECEIVERSHIP ESTATE OR ITS ASSETS AND (II) SHALL NOT RECEIVE ANY DISTRIBUTION UNDER THE PLAN WITH RESPECT TO SUCH CLAIM. FURTHER, THE RECEIVER SHALL HAVE NO FURTHER OBLIGATION TO PROVIDE ANY NOTICES TO SUCH CLAIMANT ON ACCOUNT OF SUCH CLAIM OR OTHERWISE IN CONNECTION WITH THE RECEIVERSHIP ESTATE, AND THE RECEIVERSHIP ESTATE SHALL BE DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM.**

**6.      WHERE CAN I GET AN ADDITIONAL COPY OF THE PROOF OF CLAIM FORM?**

A Proof of Claim Form is enclosed.  Copies of this Notice of Claims Bar Date and the Proof of Claim Form can also be obtained from the Claims Agent's website (https://dm.epiq11.com/GPBCapital). A Proof of Claim Form is also available upon request by contacting the Claims Agent by phone at (855) 635-3027 (toll free in the U.S.) or (503) 782-5917 (for international callers) or by e-mail at GPBCapInfo@epiqglobal.com.

**7.      HOW DO I SUBMIT MY PROOF OF CLAIM?**

A properly completed and signed Proof of Claim, together with supporting documentation, must be timely submitted to the Receiver's Claims Agent by:

Mail:      GPB Capital Receivership Claims Processing Center
             c/o Epiq Corporate Restructuring, LLC
             P.O. Box 4419
             Beaverton, OR 97076-4419

Courier:   GPB Capital Receivership Claims Processing Center
             c/o Epiq Corporate Restructuring, LLC
             10300 SW Allen Blvd.
             Beaverton, OR 97005

                    - or -

Internet:   Claims Agent's website at https://dm.epiq11.com/GPBCapital.

**PROOFS OF CLAIM WILL BE DEEMED FILED ONLY WHEN <u>ACTUALLY RECEIVED</u> AT THE ADDRESSES LISTED ABOVE OR VIA THE ELECTRONIC FILING SYSTEM <u>ON OR BEFORE THE CLAIMS BAR DATE</u>.  PROOFS OF CLAIM MAY NOT BE DELIVERED BY FACSIMILE, TELECOPY, OR E-MAIL.**

If you choose to submit via regular mail, it is recommended that you submit the Proof of Claim by certified or registered mail and retain evidence that the Proof of Claim was postmarked no later than the Claims Bar Date.  If you choose to submit via courier service, you should retain evidence that the Proof of Claim was delivered to the Claims Agent no later than the Claims Bar Date.

Proofs of Claim should not be filed with the Court or sent to the Receiver, his legal counsel or retained professionals, or otherwise delivered to a Receivership Entity.  Any Proof of Claim so delivered will <u>not</u> be considered properly submitted and will be discarded without further notice.

If you reasonably believe you have Claims against multiple Receivership Entities, you should submit a separate Proof of Claim for each of your Claims, and you must identify the individual entity against which each Proof of Claim is asserted.  Failure to identify the correct Receivership Entity on a Proof of Claim may be grounds for objection to, and disallowance of, such Claim.

**8.      WHAT SUPPORTING DOCUMENTATION WOULD I NEED TO SUBMIT WITH MY PROOF OF CLAIM?**

You should read the instructions attached to the Proof of Claim Form carefully.  The instructions include a detailed explanation of which types of documents should or should not be submitted along with

the Proof of Claim. **DO <u>NOT</u> SEND ORIGINAL DOCUMENTS AS THEY WILL NOT BE RETURNED.**

Each Proof of Claim must include copies of all documents and other information available to the Claimant that supports the Claim underlying such Proof of Claim, including, but not limited to: copies of personal checks, cashier's checks, wire transfer advances, and other documents evidencing the investment of funds; copies of each signed investment contract; copies of all agreements, promissory notes, purchase orders, invoices, itemized statements of running accounts, receipts, contracts, court judgments, mortgages, security agreements, or evidence of perfection of lien; and other documents evidencing the amount and basis of the Claim.

If such supporting documentation is not available, the Proof of Claim must include an explanation why the documentation is unavailable. It is not acceptable for a Claimant to, in lieu of providing some or all supporting documentation, state in its Proof of Claim that the Receiver, the Receivership Estate, the Retained Professionals, and/or the Partnerships have or should have copies of supporting documentation, and any Proof of Claim that includes such a statement may be expunged or disallowed by the Receiver without seeking further order of the Court.

## 9. WHAT SHOULD I DO IF MY ADDRESS/CONTACT INFORMATION CHANGES?

It is the responsibility of Claimants and other interested parties to keep the Receiver apprised with a current e-mail and mailing address in order to receive notices or other communication from the Receiver or the Receivership Estate. Each Claimant shall promptly inform the Claims Agent in writing of any change in the Claimant's current name, e-mail, or mailing address by submitting the changed information to the Claims Agent's e-mail address (GPBCapInfo@epiqglobal.com).

## 10. CONSENT TO JURISDICTION AND AGREEMENT TO BE BOUND

Cashing a distribution check and/or submission of a Proof of Claim shall constitute consent to the jurisdiction of the Court for all purposes and shall constitute an irrevocable agreement to be bound by (i) the Court's decision, including, without limitation, a determination as to the extent, validity, and amount of any Claim asserted against the Receivership Estate, (ii) the Receiver's determination in accordance with the procedures described in the Plan, and (iii) all other decisions of the Court regarding the Plan.

## 11. RESERVATION OF RIGHTS

The Receiver reserves the right to dispute or assert offsets or defenses (as to the extent, validity, priority, or otherwise) against any amounts asserted in any Proof of Claim or against the initial Allowed Claim of any recipient of a Notice of Determination, including, but not limited to, the manner in which accounts will be aggregated and treated under the Plan. The determination of amounts owed by the Receivership Entities to Claimants will be determined by the Receiver, in his sole discretion, according to the Books and Records and the Claim Resolution Procedures. Nothing set forth in this Notice of Claims Bar Date, the Proof of Claim Form, or the Notice of Determination shall preclude the Receiver from objecting to any Claim on any grounds or limit the Receiver's powers and duties under the Receivership Order, the Plan, the Plan Order, or applicable law.

6

**Schedule 1 – "Receivership Entities"**

| |
|---|
| Armada Waste Management GP, LLC (fka GPB Waste Management GP, LLC) |
| Armada Waste Management, LP (fka GPB Waste Management, LP) |
| Armada WM SLP, LLC (fka GPB WM SLP, LLC) |
| GPB Auto SLP, LLC |
| GPB Automotive Income Fund, Ltd. |
| GPB AUTOMOTIVE INCOME SUB-FUND, LTD. |
| GPB Automotive Portfolio, LP |
| GPB Capital Holdings, LLC |
| GPB Cold Storage, LP |
| GPB H2 SLP, LLC |
| GPB H3 SLP, LLC |
| GPB Holdings II, LP |
| GPB Holdings III GP, LLC |
| GPB Holdings III, LP |
| GPB Holdings Qualified, LP |
| GPB Holdings, LP |
| GPB NYC Development, LP |
| GPB NYCD SLP LLC |
| GPB SLP, LLC |
| Highline Management Inc. |

**EXHIBIT A**

**PROOF OF CLAIM FORM**

**(Attached)**

## PROOF OF CLAIM FORM
### (Instructions Attached)

| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**NO. 1:21-cv-00583-MKB-VMS**<br><br>SECURITIES AND EXCHANGE COMMISSION<br><br>- vs. -<br><br>GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH | THIS SPACE RESERVED FOR CLAIMS AGENT'S USE ONLY |

**1.** **Fill in this information to identify the Receivership Entity you are filing a Claim against. Select only one entity per Proof of Claim Form.**

| | |
|---|---|
| ☐ Armada Waste Management GP, LLC (fka GPB Waste Management GP, LLC) | ☐ GPB H3 SLP, LLC |
| ☐ Armada Waste Management, LP (fka GPB Waste Management, LP) | ☐ GPB Holdings II, LP |
| ☐ Armada WM SLP, LLC (fka GPB WM SLP, LLC) | ☐ GPB Holdings III GP, LLC |
| ☐ GPB Auto SLP, LLC | ☐ GPB Holdings III, LP |
| ☐ GPB Automotive Income Fund, Ltd. | ☐ GPB Holdings Qualified, LP |
| ☐ GPB Automotive Income Sub-Fund, Ltd. | ☐ GPB Holdings, LP |
| ☐ GPB Automotive Portfolio, LP | ☐ GPB NYC Development, LP |
| ☐ GPB Capital Holdings, LLC | ☐ GPB NYCD SLP LLC |
| ☐ GPB Cold Storage, LP | ☐ GPB SLP, LLC |
| ☐ GPB H2 SLP, LLC | ☐ Highline Management Inc. |

**2.** **NAME AND ADDRESS OF CLAIMANT (all information is required):**

Name: _____

_____
Street Address / City / State / Zip Code / Country

**Name and title of contact person of Claimant** (if Claimant is an entity)**:** _____

**Telephone number:** _____ **E-mail address:** _____

**Last four digits of Tax I.D. No. or SSN:** _____ **Account or Reference No.** (if known): _____

**3.** **CLAIM**

**3a.** **Basis of Claim (Mark one box per claim.)**:

☐ Investor in a Partnership and/or own, partner with, are a member of, or hold equity or any other investment interest. If yes, include the NOD ID # below if you received a Notice of Determination of your Claim:

_____

☐ Goods sold, services performed, or any contract, lease, or other agreement entered into prior to January 17, 2025 (the "Record Date"), for which payment has or will become due on or prior to the Record Date.

☐ Party to litigation against any Receivership Entity. If yes, then you **MUST** fill in 3e below.

☐ Legal fees, indemnification or setoff. (Attach a detailed explanation.)

☐ Other. (Attach a detailed explanation.)

**3b.** ☐ Mark this box if you assert that your Claim is secured. Attach copies of all security agreements and other documents that evidence the secured status of the Claim, a description of the collateral, and its value as of January 17, 2025 (i.e., the Record Date).

**3c.** ☐ Mark this box if the Claim includes interest or other charges, such as attorneys' fees, lost profits, or late fees *in addition to the principal amount of the Claim*. Attach an itemized statement of all such amounts.

**3d. Claim Amount**: $_____
Contingent ☐
Unliquidated ☐
Claim Amount Unknown ☐
If your Claim is contingent or unliquidated and/or you do not know the Claim Amount as of January 17, 2025 (i.e., the Record Date), mark the relevant box(es) above and attach a detailed explanation including an estimated Claim amount.

**3e.** If you are a party to litigation against any Receivership Entity, identify the Receivership Entity, case name, case number, date of commencement, and court:

_____

_____

If there is a judgment in your favor, include the amount and the date the judgment was obtained: _____

Identify the nature and amount of all monies recovered from other parties (*e.g.*, through a FINRA proceeding, settlement, arbitration, etc.) on or related to your Claim, if any:

_____

**3f.** Identify any party (other than a Receivership Entity listed in Section 1) who may be liable for payment of any part of your Claim:

_____

Identify any transferees or assignees of all or part of your Claim or of rights to receive all or part of payments on your Claim:

_____

**Attach additional sheets if needed**

**4. Supporting Documents**: Review the instructions contained herein and the Notice of Claims Bar Date for instructions of supporting documents to attach to your Proof of Claim (*e.g.*, documents evidencing the amount and basis of your Claim). **Investors in GPB Automotive Income Fund, Ltd. <u>must</u> provide information as to their identity and relationship to the Partnerships and/or the Excluded Parties. DO <u>NOT</u> SEND ORIGINAL DOCUMENTS AS THEY WILL NOT BE RETURNED.**

**5. Signature**: Sign and print the name and title, if any, of the individual or person authorized to submit this claim. (Attach a copy of any power of attorney, death certificate or other authorizing documents, if applicable.)

*Mark the appropriate box*:

☐ I am the Claimant.

☐ I am the Claimant's attorney or authorized agent.

**By signing your name below, you are certifying that the information contained in this Proof of Claim Form and any attached documentation is true and correct under penalty of perjury under the laws of the United States of America.**

Executed on: _____     Signature: _____
            (MM/DD/YYYY)

Name: _____
       First Name          Middle Initial/Name          Last Name

Title: _____

Company: _____
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: _____
         Street

_____
City                      State                      Zip Code

Telephone: _____     E-mail: _____

**6. THIS PROOF OF CLAIM FORM MUST BE TIMELY AND PROPERLY COMPLETED AND SUBMITTED TO THE CLAIMS AGENT SO AS TO BE RECEIVED BY THE CLAIMS AGENT NOT LATER THAN _____, __ 2025, AT 11:59 P.M. (PREVAILING EASTERN TIME):**

Via mail:     **GPB Capital Receivership Claims Processing Center**
              **c/o Epiq Corporate Restructuring, LLC**
              **P.O. Box 4419**
              **Beaverton, OR 97076-4419**

Via courier:  **GPB Capital Receivership Claims Processing Center**
              **c/o Epiq Corporate Restructuring, LLC**
              **10300 SW Allen Blvd., Beaverton, OR 97005**

Via internet: **Claims Agent's website at https://dm.epiq11.com/GPBCapital**

## INFORMATION ON COMPLETING THE PROOF OF CLAIM FORM

*Refer to the Notice of Claims Bar Date and/or Distribution Plan (the "Plan") for definitions of capitalized terms that are not defined herein and for further information concerning completing and submitting a Proof Claim and the Claim process, available at the Claims Agent's website at: https://dm.epiq11.com/GPBCapital. If you have further queries, please contact the Claims Agent by phone at (855) 635-3027 (Toll Free in the U.S.) or (503) 782-5917 (International Callers) or by email at GPBCapInfo@epiqglobal.com.*

1. **Receivership Entity.** Check the box next to the name of the Receivership Entity you are filing your Proof of Claim against. If you believe you have different Claims against different Receivership Entities, you MUST submit a separate Proof of Claim for each of your Claims.

   If you are filing this Proof of Claim Form because you disagree with the information and/or amounts listed in Schedule A to the Notice of Determination that was sent to you, check the box next to the name of the Partnership in which you invested. If you are an Investor and believe you have another Claim owed by a different Partnership and (a) do not receive a separate Notice of Determination for that Claim or (b) receive a separate Notice of Determination for that Claim but disagree with the information and/or amounts in that Notice of Determination, you MUST submit a separate Proof of Claim for each of your Claims, and you must identify the individual Partnership against which each Proof of Claim is asserted. In addition, Investors may file a Proof of Claim Form for Claims other than Claims owed to them based on their investment as a limited partner of a Partnership.

2. **Information About Claimant.** Complete this section giving the name, address, telephone number and e-mail address of the individual or entity who is asserting a Claim against a Partnership and the Receivership Estate, and any account or reference number associated with such debt or obligation. If the Claimant is an entity, provide contact information and the title of the authorized representative. If a valid e-mail address is included on this form, or if you submit a self-addressed, stamped envelope with your Proof of Claim Form, the Claims Agent will notify you that it has received your Proof of Claim Form. If you file your Proof of Claim Form electronically, you will receive a receipt from the Claims Agent upon successful submission.

3. **Claim Information.**

   3a.   Indicate the basis of your Claim in this section. The "Record Date" is defined to mean January 17, 2025. If you believe you have one claim, you only need to submit one Proof of Claim. If you are an Investor and received a Notice of Determination, provide the NOD ID #. The individualized NOD ID # is set forth in Schedule A to the Notice of Determination. If you believe you have multiple Claims, you MUST file a separate Proof of Claim Form for each such Claim. Check only one box per Claim. Attach additional explanations, as necessary. **Holders of Priority Claims and Exempt Claimants (as each such term is defined below) are NOT required to file a Proof of Claim.**

   3b.   **Security Interest.** Mark the applicable box if you assert your Claim is subject to a security interest and attach copies of all security agreements and other documents that evidence the secured status of the claim, including a description of the collateral and its value as of January 17, 2025 (*i.e.*, the Record Date).

   3c.   **Claim Above Principal Amount.** Mark the applicable box if your Claim amount includes interest or other charges, such as attorneys' fees, lost profits, or late fees, in addition to the principal amount of your Claim. You must attach an itemized statement of all such additional charges.

   3d.   **Claim Amount**. State the amount of your Claim as of January 17, 2025 (*i.e.*, the Record Date). If your Claim is contingent or unliquidated and/or you do not know the Claim Amount as of January 17, 2025 (i.e., the Record Date), you must mark the applicable box and attach a detailed explanation of the basis for your Claim and the estimated amount of your Claim.

   3e.   **Pending Legal Action**. If you have commenced legal action against any Receivership Entity, provide the details of that legal action here, including the case name, the case number, the date on which the action was initially filed, and the court presiding over the action. Attach supporting documentation. Also, provide any information regarding court judgments and money recovered.

   3f.   **Other Liable Parties; Recoveries; Transfers.** Identify all parties, other than a Receivership Entity, you believe may be liable to you on your Claim. Provide information regarding money recovered from any other parties in connection with your Claim. Provide information regarding any transferees or assignees of all or part of your Claim or of rights to receive all or part of any payments you may receive on your Claim.

4. **Supporting Documentation.** Each Proof of Claim shall include copies of all documents and other information available to the Claimant that supports the Claim underlying such Proof of Claim, including, but not limited to: copies of personal checks, cashier's checks, wire transfer advances, and other documents evidencing the investment of funds; copies of each signed investment contract; copies of all agreements, promissory notes, purchase orders, invoices, itemized statements of running accounts, receipts, contracts, court judgments, mortgages, security agreements, or evidence of perfection of lien, and other documents evidencing the amount and basis of the Claim. If supporting documentation is not available, the Proof of Claim must include an explanation why the documentation is unavailable. It is not acceptable for a Claimant to, in lieu of providing some or all supporting documentation, state in its Proof of Claim Form that the Receiver, the Receivership Estate, the Retained Professionals, and/or the Partnerships have or should have copies of supporting documentation, and any Proof of Claim Form that includes such a statement may be expunged or disallowed by the Receiver without seeking further order of the Court. **Investors in GPB Automotive Income Fund, Ltd. must provide information as to their identity and relationship to the Partnerships and/or the Excluded Parties.**

5. **Person Signing the Claim.** Sign the Proof of Claim Form and indicate your name and title, as applicable. You must date and sign the Proof of Claim Form for your Claim to be valid**.**

6. **Submit Claim Form.** Submit a completed Proof of Claim Form, along with all supporting documentation, as specified in the Proof of Claim Form. **PROOFS OF CLAIM WILL BE DEEMED FILED ONLY WHEN ACTUALLY RECEIVED AT THE ADDRESSES LISTED ABOVE OR VIA THE ELECTRONIC FILING SYSTEM ON OR BEFORE THE CLAIMS BAR DATE. PROOFS OF CLAIM MAY NOT BE DELIVERED BY FACSIMILE, TELECOPY, OR ELECTRONIC MAIL TRANSMISSION. IF YOU CHOOSE TO SUBMIT VIA REGULAR MAIL, IT IS RECOMMENDED THAT YOU SUBMIT YOUR PROOF OF CLAIM BY CERTIFIED OR REGISTERED MAIL AND RETAIN EVIDENCE THAT THE PROOF OF CLAIM WAS POSTMARKED NO LATER THAN THE CLAIMS BAR DATE. IF YOU CHOOSE TO SUBMIT VIA COURIER SERVICE, YOU SHOULD RETAIN EVIDENCE THAT THE PROOF OF CLAIM WAS DELIVERED TO THE CLAIMS AGENT NO LATER THAN THE CLAIMS BAR DATE.**

   **ANY CLAIMANT WHO IS REQUIRED TO SUBMIT A PROOF OF CLAIM BUT FAILS TO DO SO IN A TIMELY MANNER OR IN THE PROPER FORM (I) SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW FROM ASSERTING, IN ANY MANNER, THE CLAIM THAT WAS REQUIRED TO BE INCLUDED IN SUCH PROOF OF CLAIM AGAINST (A) ANY RECEIVERSHIP ENTITY OR (B) THE RECEIVERSHIP ESTATE OR ITS ASSETS, AND (II) SHALL NOT RECEIVE ANY DISTRIBUTION UNDER THIS PLAN WITH RESPECT TO SUCH CLAIM.**

Select defined terms from the Plan:

"Priority Claims" means: "(a) tax claims, (b) professional, administrative, and operational expenses (including, without limitation, fees and expenses of Retained Personnel and Ordinary Course Professionals), (c) costs and expenses related to the provision of goods and services for the benefit of the Receivership Estate or at the request of the Receiver incurred after the Record Date, (d) wind-down costs, (e) all other actual and necessary costs and expenses of preserving the Receivership Estate and operating and administering the Receivership Entities incurred on or after the entry of the Receivership Order, and (f) all other fees, costs and expenses authorized to be paid under the Receivership Order and/or pursuant to any other order of the Court, including all unpaid fees, costs and expenses of Joseph T. Gardemal III in his prior role as Monitor and the professionals retained by the Monitor in the Monitorship. Priority Claims shall be senior to all Investor Claims and Allowed General Unsecured Claims."

"Exempt Claimants" means: "(i) the Receiver, the Claims Agent, Retained Personnel and Ordinary Course Professionals, and Priority Claimants; and (ii) any Investor who both (a) does not dispute the amount or characterization of its Claim as set forth in its Notice of Determination and (b) agrees that the Claim is an obligation of the specific Partnership identified in such Notice of Determination."

**EXHIBIT B**
**FORM OF NOTICE OF DETERMINATION**

**(Attached)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

        v.

GPB CAPITAL HOLDINGS, LLC;
ASCENDANT CAPITAL, LLC;
ASCENDANT ALTERNATIVE
STRATEGIES, LLC;
DAVID GENTILE;
JEFFRY SCHNEIDER; and
JEFFREY LASH,

               Defendants.

21-cv-00583-MKB-VMS

---

## NOTICE OF DETERMINATION
## OF YOUR CLAIM

---

**PLEASE READ THIS NOTICE CAREFULLY**

You are receiving this notice (this "Notice of Determination") because you are an Investor in one or more partnerships or funds (collectively, the "Partnerships") managed by GPB Capital Holdings, LLC ("GPB Capital").[1]

The United States District Court for the Eastern District of New York (the "Court") entered an order appointing Joseph T. Gardemal III as receiver (the "Receiver") over GPB Capital and its Partnerships in the above-referenced case (this "Case") [Dkt. No. 187] (the "Receivership Order").[2]

As set forth in the Receivership Order, the Receiver is required to, among other things, propose and implement a plan to distribute available assets to Investors and creditors of the Receivership Entities.[3] In that regard, a plan of distribution proposed by the Receiver (as amended,

---

[1] Unless otherwise indicated, capitalized terms not defined in this notice have meanings given to such terms in the Plan (as defined herein).

[2] Mr. Gardemal was previously appointed by the Court in February 2021 as the independent monitor over GPB Capital and its Partnerships in the Case.

[3] This Notice of Determination is only being sent to Investors and does not relate to general creditors of the Receivership Entities.

supplemented, or otherwise modified, the "Plan") was approved by the Court pursuant to an order entered on _____, 2025 [Dkt. No. [__]] (the "Plan Order").[4]

PURSUANT TO THE PLAN, THE RECEIVER HAS MADE A DETERMINATION BASED ON THE BOOKS AND RECORDS REGARDING AMOUNTS OWED TO YOU (THE "ALLOWED CLAIM"), WHICH IS SET FORTH IN SCHEDULE A ATTACHED TO THIS NOTICE.

Schedule A contains information and amounts as of January 17, 2025 (which is referred to in the Plan as the "Record Date"). Your Allowed Claim was determined by the Receiver in his discretion based on the Books and Records of each Partnership, which were carefully reviewed and analyzed by the Receiver and his professional advisors. Distributions under the Plan are being done on a Partnership-by-Partnership basis pursuant to the existing and agreed payment "waterfalls" set forth in the relevant limited partnership agreements for each respective Partnership, with the *pro rata* amounts of distribution payments to be calculated based on the Books and Records of each such Partnership. **This determination is final unless you timely and properly submit a Proof of Claim Form in accordance with the Plan by the Claims Bar Date (as defined herein).**

**Investors who want to file a Proof of Claim Form must follow the instructions and include supporting documentation as required in the Notice of Claims Bar Date, which is enclosed with this Notice of Determination. Copies of the Proof of Claim Form and the Notice of Claims Bar Date can also be obtained from the Claims Agent's website at: https://dm.epiq11.com/GPBCapital. Review the Plan and consult with your legal and tax advisors regarding whether you are required and/or should elect to file a Proof of Claim.**

With regard to the Partnerships that have cash available now to distribute as part of the Receiver's first distribution to certain Investors (the "Initial Distribution"), the Receiver has determined the amount of cash that is being distributed to you today as part of the Initial Distribution (the "Initial Distribution Amount"). The Initial Distribution Amount is also provided in **Schedule A** and reflects the dollar amount of the check (if any) that is also enclosed with this Notice of Determination.

**IF YOU HAVE NOT RECEIVED A CHECK WITH THIS NOTICE OF DETERMINATION, THE RECEIVER HAS DETERMINED EITHER THAT (I) YOU HAVE INVESTED IN A PARTNERSHIP THAT DOES NOT HAVE CASH AVAILABLE NOW TO DISTRIBUTE TO ITS INVESTORS AND/OR (II) YOU ARE AN EXCLUDED PARTY AND ARE NOT ENTITLED TO A DISTRIBUTION UNTIL YOU HAVE SATISFIED CERTAIN CONDITIONS SPECIFIED IN THE PLAN.**

As noted above, Investors in Partnerships that have cash available now to distribute, and who the Receiver has determined are entitled to receive an Initial Distribution under the Plan and Plan Order, are receiving a check payable to the relevant Investor along with this Notice of Determination. If you have received a check, you must cash your check on or prior to _____,

---

[4] Copies of the Plan, the Plan Order, the Receivership Order, and any other publicly filed documents in this Case are available free of charge at the Claims Agent's website at: https://dm.epiq11.com/GPBCapital.

2025, or your check will be void and your portion of the Initial Distribution equal to your Initial Distribution Amount will revest in the Receivership Estate and your right to such distribution shall be extinguished and forever barred; *provided, however*, that the Receiver may, in his sole discretion, provide you with a replacement check in response to a written request therefor from you that is received by the Receiver at least thirty (30) days prior to the date designated by the Receiver for making final distributions to Claimants.

**Please understand that if you have received and decided to cash your Initial Distribution check, you are irrevocably agreeing and representing, by cashing your Initial Distribution check, that: (i) you have not transferred or assigned all or any part of your investment in the Partnership indicated in <u>Schedule A</u>, or your right to receive any distributions or recoveries on or with respect to such investment, to any other person or entity for any reason;[5] (ii) the amount of your Allowed Claim set forth in <u>Schedule A</u> is correct; (iii) the amount being paid to you as the Initial Distribution is in partial satisfaction of amounts owed to you by the Partnership indicated in <u>Schedule A</u>, regardless of whether you file or filed a Proof of Claim Form asserting a Claim in an amount greater than that appearing in this Notice of Determination and/or you seek any relief from the Court concerning your Claim that is subject to this Notice of Determination; and (iv) you have not received any recovery, funds, compensation, payments or other property of any kind from any other source in connection with your investment in the Partnership indicated in <u>Schedule A</u>.[6] If you do not agree with the foregoing, or cannot make the foregoing representations, you should not cash your Initial Distribution check. By cashing your Initial Distribution check, you are barred from filing a Proof of Claim Form and/or seeking or continuing to seek any relief from the Court concerning your Claim that is the subject of this Notice of Determination.**

**Notwithstanding the foregoing, by cashing your Initial Distribution check, if any, you are not waiving or limiting your entitlement to receive potential litigation related recoveries from the Receivership Estate in accordance with the provisions of the Plan or from third parties, if any. Please consult the Plan for details concerning the application of litigation related recoveries, if any, to Investors.**

If you *AGREE* with the information and amounts contained in **<u>Schedule A</u>**, you do **NOT** need to submit a Proof of Claim Form or take any other action at this time. You should simply cash your Initial Distribution check.

---

[5] **If you have transferred or assigned all or any part of your investment in the Partnership indicated in <u>Schedule A</u>, or your right to receive any distributions or recoveries on or with respect to such investment, to any other person or entity for any reason, you are required under the Plan to advise the Receiver of this in writing (and to provide the Receiver with all relevant details and agreements) within ten (10) business days of your receipt of this Notice of Determination.**

[6] **If you have received any recovery, funds, compensation, payments or other property of any kind from any other source in connection with your investment in the Partnership indicated in <u>Schedule A,</u> you are required under the Plan to advise the Receiver of this in writing (and to provide the Receiver with all relevant details and agreements) within ten (10) business days of your receipt of this Notice of Determination.**

3

If you ***DISAGREE*** with the information and/or amounts in **Schedule A** and want to assert a Claim that is different, (i) you ***MUST*** timely submit a completed and signed Proof of Claim Form prior to _____, 2025 (the "Claims Bar Date") and, (ii) if you received a check, you should ***NOT*** cash your Initial Distribution Check. **As noted herein, if you cash your Initial Distribution check or, if you want to submit a Proof of Claim Form but then fail to do so by the Claims Bar Date, you will be forever barred from later contesting your Allowed Claim amount.Error! Hyperlink reference not valid.**

Investors with investments in more than one Partnership will be sent a separate Notice of Determination for each Partnership investment. If you believe you have another Claim[7] owed by a different Partnership and (a) did not receive a separate Notice of Determination for that Allowed Claim, (b) receive a separate Notice of Determination for that Allowed Claim but disagree with the information and/or amounts in that Notice of Determination, or (c) have any other Claim you want to assert, you ***MUST*** properly complete and timely submit a Proof of Claim Form relating to such other Partnership or Claim, as applicable, by the Claims Bar Date. Again, Investors who want to file a Proof of Claim Form must follow the instructions and include supporting documentation as required in the Notice of Claims Bar Date.

If you have any questions relating to this Notice of Determination, contact the Claim's Agent by phone at (855) 635-3027 (toll free in the U.S.) or (503) 782-5917 (for international callers) or by email at GPBCapInfo@epiqglobal.com.

The Receiver reserves all rights, remedies, claims, counterclaims, and defenses arising under the Receivership Order, the Plan, the Plan Order and/or applicable law. Without limiting the foregoing, the Receiver reserves the right to dispute or assert offsets or defenses (as to the extent, validity, priority, or otherwise) against any amounts asserted in any Proof of Claim or against the Allowed Claim of any recipient of a Notice of Determination, including, but not limited to, the manner in which accounts will be aggregated and treated under the Plan. Nothing set forth in this Notice of Determination, Notice of Claims Bar Date, the Proof of Claim Form, or otherwise, shall preclude the Receiver from objecting to any Claim on any grounds.

*[DRAFT]*_____

Joseph T. Gardemal III,
Receiver

---

[7] "Claim" is defined in the Plan to mean: "any (a) potential or claimed right to payment, whether or not such right is based in equity or by statute, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (b) potential or claimed right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; *provided, however*, that an unfulfilled redemption request that was made by an Investor at any time prior to or after the date of entry of the Receivership Order is not, and shall not be treated or recognized as a "Claim" under this Plan with respect to such redemption request, and such Investor shall have no priority over any other Claimants as a result of having made such unfulfilled redemption request."

Case 1:21-cv-00580-KBM-BK Document 234-3 Filed 01/13/25 Page 114 of 118 PageID Page #D4:7920388

## Schedule A

## <u>Amount of Allowed Claim and Initial Distribution Amount</u>[8]

Name of Investor: _____

Notice of Determination ID: _____

Partnership Invested In: _____

<u>Capital Account History:</u>
(a) Capital Contributions:[9]      $ _____
(b) Net Capital Contributions - Net of Fees:[10]      $ _____
(c) Historical Limited Partner Distribution:[11]      $ _____
Allowed Claim ((b) – (c) above):[12]      $ _____

Initial Distribution Amount:      $ _____

**If your Initial Distribution Amount is $0.00, you will not be receiving a check with this Notice of Determination. This is because the Receiver has determined either that (i) you have invested in a Partnership that does not have cash available now to distribute to its Investors and/or (ii) you are an Excluded Party and are not entitled to a distribution until you have satisfied certain conditions specified in the Plan. If you have invested in a Partnership that does not have cash available now to distribute to its Investors as part of the Initial Distribution, you may still receive a Subsequent Distribution under the Plan if funds become available for such purpose. Please consult the Plan for further information.**

---

[8] The information and amounts set forth in this <u>Schedule A</u> are based on the Books and Records of the Partnership referenced in this **<u>Schedule A</u>** as of the Record Date (i.e., January 17, 2025). Your Initial Distribution Amount may be $0.00.

[9] "<u>Capital Contributions</u>" means the total amount of your original and subsequent investments, if any, into the Partnership referenced in this **<u>Schedule A</u>**. This gross figure does not include a deduction for Commissions, Selling Fees, Placement and Marketing Support Fees, Servicing Fees and Wholesaling Fees (as such terms are defined in the limited partnership agreement applicable to the Partnership referenced in this **<u>Schedule A</u>**).

[10] "<u>Net Capital Contributions - Net of Fees</u>" means the total amount of your original and subsequent investments, if any, into the Partnership referenced in this **<u>Schedule A</u>**. This net figure includes a deduction for Commissions, Selling Fees, Placement and Marketing Support Fees, Servicing Fees and Wholesaling Fees (as such terms are defined in the limited partnership agreement applicable to the Partnership referenced in this **<u>Schedule A</u>**.)

[11] "<u>Historical Limited Partner Distribution</u>" means the limited partner distributions from inception through today that have been paid out of limited partner working capital and available assets, including, but not limited to, limited partner capital contributions.

[12] The Allowed Claim amount is calculated based on the Books and Records of the Partnership referenced in this <u>Schedule A</u> as of the Record Date (i.e., January 17, 2025) and is the sum of the amounts set forth in lines (b) and (c) under "Capital Account History" above. The Allowed Claim Amount is subject to upward adjustment based on the Books of Records as they may appear subsequent to the Record Date. The Allowed Claim amount does not include any litigation related recoveries you may be entitled to receive from the Receivership Estate in accordance with the provisions of the Plan or from third parties, if any. Please consult the Plan for details concerning the application of potential litigation related recoveries, if any, to Investors. By cashing your Initial Distribution check you are not waiving or limiting your entitlement to such recoveries, if any. Consult with your legal and tax advisors regarding whether you are required to file a Proof of Claim and should elect to file a Proof of Claim.

**EXHIBIT B**

**Receivership Entities**

| Name | Entity |
|------|--------|
| Armada Waste Management GP, LLC (fka GPB Waste Management GP, LLC) | General Partner |
| Armada Waste Management, LP (fka GPB Waste Management, LP) | LP (GPB Fund) |
| Armada WM SLP, LLC (fka GPB WM SLP, LLC) | SLP |
| GPB Auto SLP, LLC | SLP |
| GPB Automotive Income Fund, Ltd. | LP (GPB Fund) (Cayman) |
| GPB AUTOMOTIVE INCOME SUB-FUND, LTD. | LP (GPB Fund) (Cayman) |
| GPB Automotive Portfolio, LP | LP (GPB Fund) |
| GPB Capital Holdings, LLC | General Partner |
| GPB Cold Storage, LP | LP (GPB Fund) |
| GPB H2 SLP, LLC | SLP |
| GPB H3 SLP, LLC | SLP |
| GPB Holdings II, LP | LP (GPB Fund) |
| GPB Holdings III GP, LLC | General Partner |
| GPB Holdings III, LP | LP (GPB Fund) |
| GPB Holdings Qualified, LP | LP (GPB Fund) |
| GPB Holdings, LP | LP (GPB Fund) |
| GPB NYC Development, LP | LP (GPB Fund) |
| GPB NYCD SLP LLC | SLP |
| GPB SLP, LLC | SLP |
| Highline Management Inc. | Service Provider (to GP) |

**EXHIBIT C**

**Proposed Order**

**(Attached)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | 21-cv-00583-MKB-VMS |
| GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH, | |
| Defendants. | |

**[PROPOSED] ORDER APPROVING RECEIVER'S MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE DISTRIBUTION PLAN, (II) INITIAL AND SUBSEQUENT DISTRIBUTIONS, (III) THE FORM AND MANNER OF THE CLAIMS DETERMINATION AND SOLICITATION PROCESS, (IV) THE PROOF OF CLAIM FORM, (V) THE CLAIMS PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

Upon the *Receiver's Motion for Entry of an Order Approving (I) the Distribution Plan, (II) Initial and Subsequent Distributions, (III) the Form and Manner of the Claims Determination and Solicitation Process, (IV) the  Proof of Claim Form, (V) the Claims Procedures, and (VI) Granting Related Relief* (the "Motion") [Dkt. No. [X]];[1] and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion; and upon the record of the hearing to consider approval of the Motion (the "Plan Hearing"), the Gardemal Declaration in support of the Motion and Plan [Dkt. No. __ ], and these proceedings; and after due deliberation thereon, and good cause appearing therefor;

---

[1] Capitalized terms that are defined in this Order have the meanings given to such terms in the Motion.

2

**IT IS HEREBY FOUND AND ORDERED AS FOLLOWS**:

1.      All objections and/or reservations of rights to the Motion or any of the relief requested therein that were not otherwise resolved or withdrawn at or prior to the Plan Hearing are OVERRULED.

2.      As evidenced by the certifications of service previously filed with this Court, and based on the representations of counsel at the Plan Hearing, proper, timely, adequate and sufficient notice of the Motion, the Plan, the Plan Hearing, and this Plan Order, has been provided. Such notice was good and sufficient and appropriate under the particular circumstances and all Investors, Creditors and other parties in interest in the case were offered a reasonable opportunity to object and be heard. No other or further notice of the Motion, the Plan, the Plan Hearing, and/or this Plan Order was or is necessary or shall be required.

1.      The Motion is hereby granted in its entirety.

3.      The Plan attached hereto as **Exhibit A** is in the best interests of all Investors, creditors and other stakeholders of the Receivership Entities and is hereby approved.

4.      The Receiver is hereby authorized and approved to implement the Plan, including, without limitation, to make the Initial Distribution and establish, fund and maintain the Reserves.

5.      The amount of the Initial Distribution to be made to Investors in APLP, Holdings II, and Cold Storage, as determined by the Receiver, is reasonable and appropriate under the circumstances.

6.      The Court hereby sets the Claims Bar Date as _____, 2025.

3

7.      The Notice of Claims Bar Date, the Notice of Determination and the Proof of Claim Form, each in substantially in the form attached to the Plan, and all procedures and processes related thereto in the Plan, are hereby approved.

8.      This Order is binding on each Claimant and their respective successors, heirs, legal representatives, and assigns whether or not such Claimant has filed a Proof of Claim, objected to the Plan, or otherwise appeared in the case.

9.      This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Plan Order and the Plan, (b) resolve any disputes concerning this Plan Order and/or the Plan, or (c) decide the rights, duties and/or obligations of the Receiver and/or Claimants under this Plan Order and/or the Plan.


SO ORDERED:


_____
MARGO K. BRODIE
United States District Judge