UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>DAVID GENTILE and<br>JEFFRY SCHNEIDER,<br><br>                             Defendants. | 21-CR-54 (RPK) (PK) |

**REPLY IN SUPPORT OF**
**DAVID GENTILE'S SENTENCING MEMORANDUM**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................. 1

    I.    IF THE COURT ACCEPTS THE PSR'S GUIDELINES CALCULATION, A DRAMATIC DOWNWARD VARIANCE IS WARRANTED AND NON-CUSTODIAL SENTENCE IS APPROPRIATE ............................................................................................... 2

        A.    The Nature and Circumstances of the Offense Favor Leniency ..................................... 2

        B.    David's History and Characteristics Favor Leniency ...................................................... 4

        C.    A Non-Custodial Sentence Provides Just Punishment, General and Specific Deterrence, and Avoids Unwarranted Sentencing Disparities ................................................................ 4

    II.    FORFEITURE AND RESTITUTION ............................................................................... 5

**CONCLUSION** ............................................................................................................................ 6

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*United States v. Carmona-Rodriguez*,
  2005 WL 840464 (S.D.N.Y. Apr. 11, 2005) ................................................................... 4

*United States v. Gupta*,
  904 F. Supp. 2d 349 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014) .............................. 1, 4

*United States v. Hutchings*,
  757 F.2d 11 (2d Cir. 1985) ............................................................................... 5

*United States v. Johnson*,
  2018 WL 1997975 (E.D.N.Y. Apr. 27, 2018) ................................................................ 1

*United States v. Molina*,
  2022 WL 3971588 (5th Cir. Aug. 31, 2022) ............................................................... 5

*United States v. Romano*,
  825 F.2d 725 (2d Cir. 1987) ............................................................................. 1

*United States v. Stewart*,
  590 F.3d 93 (2d Cir. 2009) .............................................................................. 4

*United States v. Williams*,
  662 F. App'x 366 (6th Cir. 2016) ........................................................................ 4

**Statutes**

18 U.S.C. § 3553(a) ................................................................................ *passim*

18 U.S.C. § 3664(d) ..................................................................................... 5

**Rules**

FED. R. CRIM. P. 32.2(B)(1) ............................................................................. 5

**Other Authorities**

Judgment, *United States v. Nordlicht*, No. 16-CR-640 (E.D.N.Y. July 16, 2024), Dkt. No. 1052 . 5

Judgment, *United States v. Tournant*, No. 22-CR-276 (S.D.N.Y. Dec. 12, 2024), Dkt. No. 172 ... 5

Order Regarding Loss Calculation, *United States v. Nordlicht*, No. 16-CR-640 (E.D.N.Y. July 18, 2023), Dkt. No. 1005 .......................................................................................... 5

Sentencing Memorandum by USA, *United States v. Nordlicht*, No. 16-CR-640 (E.D.N.Y. Mar. 19, 2024), Dkt. No. 1042 .................................................................................................. 5

Sentencing Submission by USA, *United States v. Tournant*, No. 22-CR-276 (S.D.N.Y. Nov. 15, 2024), Dkt. No. 163 ...................................................................................................... 5

Todd K. Lester, Jeffrey B. Jenson & Matthew P. Diehr, *Federal Sentencing For Economic Crimes — Are We There Yet?*, 1 INVESTIGATIONS Q. 11 ................................................ 5

## PRELIMINARY STATEMENT

"Imposing a sentence on a fellow human being is a formidable responsibility" that "requires a court to consider, with great care and sensitivity, a large complex of facts and factors" outlined in Section 3553(a). *U.S. v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014). The applicable Guidelines range is only one factor among many, and it "must take second place to section 3553(a), which requires a court to take account of a defendant's character in imposing a sentence." *Id.* at 354. Despite this clear directive, the Government ignores the overwhelming evidence and law detailed in David's sentencing memorandum, ECF 530, that supports a non-incarceratory sentence—most notably that:

- David's history demonstrates an extraordinary devotion not only to his community and large, extended family (including his elderly parents who depend on him for support), but individual human beings—often total strangers, in fact—in their time of need.

- Even respecting the jury's verdict for purposes of sentencing, David is less culpable because, contrary to the Government's improper distortion of the record, he did not prey on vulnerable, unsophisticated investors, never wanted anyone to lose money, and demonstrated his legitimate belief that GPB's strategy would ultimately benefit investors by, among other things, investing heavily in the GPB Funds alongside family and friends.

- David has no documented criminal history and the conduct for which he was convicted—alleged inaccurate statements concerning investor distributions in a limited set of disclosures that did not cause any loss to investors—dramatically differs from other cases in which incarceration was ordered and is more appropriately addressed in the civil context.

Instead, the Government focuses on the loss calculation under § 2B1.1, likely because of its disproportionate impact on the Guidelines range. *See U.S. v. Johnson*, 2018 WL 1997975, at *3 (E.D.N.Y. Apr. 27, 2018). As detailed in the PSR Reply,[1] the Government has failed to establish that anyone suffered losses as a result of the Offense Conduct. Indeed, those who invested after the fraud commenced are expected to recoup 80–100% of their investment, and the Government concedes that any shortfall was impacted by legitimate external market forces. Unable to establish any cognizable losses caused by the Offense Conduct, the Government quotes extensively from letters submitted by sympathetic investors—who are suffering financially—and argues for unprecedented loss theories that are contrary to governing law and the facts. But David did not cause these losses, and his sentence should reflect only the consequences of his conduct.[2]

At bottom, the Government's recommendation of 15-years of incarceration is a draconian punishment typically reserved for defendants who are considered a serious threat to society either due to violence or because of significant financial harm (*e.g.*, Madoff). David fits neither scenario, and the trial record, the Section 3553(a) factors, and absence of loss demand (i) a non-incarceratory sentence within the Guidelines, or, should the Court accept the Government's analysis of loss, (ii) a variant, below-Guidelines sentence accounting for the many factors in this case that warrant leniency. In either case, the Court should impose a non-incarceratory sentence.[3]

---

[1] After receiving the Government's response to the PSR, ECF 533, and per the Court's February 20 order, we consulted with Probation and asked when he should file his reply (the "PSR Reply"). Probation confirmed that David could provide his PSR Reply, attached as Exhibit A and incorporated herein, to Probation by February 24, 2025.

[2] Given the page limitation and two business days to prepare this reply, it does not address every issue with Government's submission, ECF 539 ("Gov. Mem."). David expressly reserves the right to respond to any argument not specifically addressed herein at the sentencing hearing. *See, e.g.*, *U.S. v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987).

[3] David joins and incorporates by reference the arguments in Mr. Schneider's reply to the extent they apply to David.

1

## I. IF THE COURT ACCEPTS THE PSR'S GUIDELINES CALCULATION, A DRAMATIC DOWNWARD VARIANCE IS WARRANTED AND NON-CUSTODIAL SENTENCE IS APPROPRIATE

Neither the nature of the offense, nor David's history or character, warrants a prison sentence here. 18 U.S.C. § 3553(a)(1). Indeed, a non-custodial sentence provides just punishment and adequate specific and general deterrence and would avoid unwarranted sentencing disparities.

### A. The Nature and Circumstances of the Offense Favor Leniency

The Government asserts that David's submission "relitigates the same arguments rejected by the jury." Gov. Mem. at 16. David's submission does not seek to contest any actual jury finding.[4] Instead, it seeks to provide the Court with important context surrounding David's formation of and goals for GPB that are relevant to understanding the nature of the Offense Conduct and may not have been considered fully during trial. And to combat that context in its own submission, the Government repeatedly mischaracterizes the evidence presented at trial and the jury's actual findings in its effort to portray David as a "greed-driven" criminal mastermind. *Id*. For instance, while the Government asserts that the "defendant's lies were pervasive" and that the "Court's sentence should account for the scale" of the fraud, Gov. Mem. at 11, the reality is that we still have no clarity on what specific statement(s) the jury found to be false and were made with the intent to defraud investors. *See* PSR Reply at 2, n.5. The Government referenced dozens of alleged misstatements at trial—all of which David rebutted—and the jury was not required to identify for which, or how many, of those statements it believed the Government met its burden to show falsity and intent to defraud. *See id.* at 2. In considering a sentence that could deprive a man of his liberty for years, the Court should not assume more than was explicitly found by the jury.

Similarly, the jury did not "find" that David fired "compliance personnel who stood in his way" of defrauding investors, Gov. Mem. at 17, nor did the trial record reflect that conclusion. To support that falsehood now, the Government mischaracterizes testimony from Messrs. Jacoby and Anscher and Ms. Kgil about "reduc[ing] the rate of monthly distributions in response to the funds' performance," suggesting this was clear evidence that David "rejected multiple warnings from his subordinates that his conduct was improper." *Id.* at 17. But, as set forth in David's submission, continuing to pay distributions during periods of alleged underperformance is neither improper, nor fraud. *See* ECF 530 at 21–22. It was a business decision that GPB was fully empowered to make. The fraud alleged by the Government concerned the *source* of distributions and there is no evidence in the trial record that GPB employees told David they thought paying distributions with investor capital was illegal. *See, e.g.*, Tr. 962:20–963:7 (Mr. Jacoby evidencing his inability to recall a single instance where he expressed concern to David that "we're violating the law."). Contrary to the Government's contention that the lawfulness of GPB's business model and power to return capital is "irrelevant" to "the nature of the offense," Gov. Mem. at 17, it is precisely the lens through which the Court should assess the scope and gravity of the alleged fraud. That the alleged fraud concerned an undefined number of inaccurate disclosures rather than the workings of a hypothetical criminal mastermind who was stealing from one investor to pay another (as suggested by the Government) is critical to the Court's consideration of the nature of the offense.

The Government further argues that David "has expressed no remorse and minimizes his

---

[4] David's objections to the jury's findings are in his pending post-trial motions and are not waived here.

2

own culpability." Gov. Mem. at 1.[5] Mr. Gentile's Rule 29 and Rule 33 Motions are still pending. The mere fact that we, as David's counsel, are pursuing appropriate post-trial motions and zealously pursuing his rights (which any competent defense counsel would do) in no way equates to a lack of remorse. David's persistence in countering the Government's factual inaccuracies should not be weaponized against him at sentencing. At the appropriate time, David is prepared to address the Court regarding his actions in this case.

The Court should also reject the Government's effort to portray David as someone who preyed on vulnerable, unsophisticated investors. *Id.* at 12. The Government repeatedly reiterates this point, including with 5 pages of excerpted victim impact statements, to argue that David deserves a 15-year sentence due to investors' ages and financial situations. *Id.* at 11–16. But the indisputable evidence at trial showed that GPB (and David) never marketed the Funds directly to investors—only to their sophisticated financial advisors. Contrary to the Government's insinuation that David specifically targeted financially vulnerable investors, GPB insisted that investors explicitly certify before investing that: "Subscriber (i) has adequate means of providing for the Subscriber's current needs, anticipated future needs and possible contingencies and emergencies, (ii) is able to bear the economic and other risks of investment in the Units for an indefinite period of time . . . and (iii) has no need for liquidity in the investment . . . and could afford the complete loss of the investment." DX-BBBBBJ-007. The Government's submission highlights precisely the types of investors GPB discouraged from investing in such a speculative product—a fact the Government fought to exclude from the trial record.[6]

The truth is, David never wanted *anyone* to lose money. He invested in the GPB Funds. His family invested. His friends invested. Investors' success was his success and, to that end, he consistently sought to maximize returns for all investors. And, rather than simply pocket investor's money for his own benefit as the Government claims, he actively pursued an IPO in the hope of maximizing investor returns. That David was personally compensated for his work as CEO of an entity managing hundreds of portfolio companies and over 1,000 employees does not invalidate his desire to have everyone share in the success of the Funds, which persists to this day.[7]

---

[5] The Government also asserts in bad faith that David's "sentencing submission does not grapple with the impact of his crime on the victims." Gov. Mem. at 16. The Government chose to withhold from David the approximately 1,000 loss affidavits and victim impact statements *until after his Sentencing Submission was filed*. That David did not directly respond to information he did not have (despite the vast majority of the affidavits being dated in October and November 2024, *i.e.*, months before his sentencing submission was due) and, in fact, expressly requested, is simply not relevant to David's genuine concern for anyone who has suffered financially from their investment in GPB.

[6] *See* Tr. 1465:20–1470:9 ("The government . . . want[s] to bring out the broker's clients are retirees and hide from the jury that it was that very broker that had the obligation under the law to determine whether the investment is suitable for that client and to do due diligence into the propriety of the investment. They cannot have it both ways.").

[7] David's opposition to the conversion of the court-appointed monitor to a receivership over GPB and proposed distribution plan is not "purely self-interested and further evidence of his greed" as the Government contends, Gov. Mem. at 18, nor is it inconsistent with his support for distributions, which he repeatedly advocated should occur. *See, e.g.*, *S.E.C. Case*, ECF 102 at 3–4 (explaining that David's goal is "to allow investors to recoup the maximum possible returns" and for the monitor to issue "reasonable and proper distributions to investors"). Rather than opposing distributions, David opposed the fire-sale of GPB's assets taken by monitor in 2021–2022, which, in David's view, shortchanged investors by foregoing the long-term shareholder value contemplated by GPB's original investment theses. *S.E.C. Case*, ECF 80 at 10–13. Despite his differences with how the monitor approached the disposition of GPB's assets, none of David's actions seeking to amend the scope of the monitor's authority did or were intended to impede the monitor's ability to implement a distribution plan. As the Government acknowledges, "it is of course [David's] right to litigate and defend himself," Gov. Mem. at 18, and he should not be penalized for doing so, including protecting his constitutional and contractual rights to advancement and indemnification.

### B. David's History and Characteristics Favor Leniency

The various reasons offered by the Government to impugn David's character do not alter a single fundamental truth: David is a good man who never sought to hurt investors. The Government's argument that David used "his training as an accountant[] to execute the fraud," Gov. Mem. at 18, ignores that his accounting background had nothing to do with the "simple" disclosure violations that the Government charged; indeed, the Government had every opportunity to charge this case as an accounting fraud but chose not to. Nor could they. Even the court-appointed Receiver over GPB expressly found that the company maintained "materially accurate" books and records, "respected[ed] the corporate form of each" GPB Fund, and did not comingle or otherwise improperly share assets between the funds. *See* ECF 524-3 at 13–16.

Next, in an effort to minimize the *seventy-five* letters of support written by family, friends, colleagues, and GPB investors, the Government claims that "[m]any white-collar defendants like [David] are outwardly successful and generous to their families and communities." Gov. Mem. at 19. Where, as here, however, "the letters are well documented and, indeed, undisputed by the Government," the Court should decline the Government's suggestion that "the large volume of poignant letters submitted on [David's] behalf are simply the strategem of a rich, well-connected defendant endeavoring to derail the Court from focusing on his crimes." *Gupta*, 904 F. Supp. 2d 349, 353–54. David has shown "an extraordinary devotion, not only to humanity writ large, but also to individual human beings in their times of need," and the Guidelines, which "virtually ignore this measure of the man[,] . . . must take second place to section 3553(a), which requires a court to take account of a defendant's character in imposing sentence." *Id.* at 354.

The Government also bizarrely claims that the immense cost David has suffered in his personal life is somehow an "appeal for a two-tiered system of justice." Gov. Mem. at 19. It is anything but the sort. David has lost friends; lost his business; has been maligned in the media and is a pariah in the community; and, after spending the last seven years defending his name and liberty, he is now a convicted felon, unable to work in private equity or accounting again and still faces an enforcement action from the SEC as well as nearly twenty civil litigations—each carrying the risk of significant monetary and other penalties. These are real, tangible punishments to David that this Court can and should consider, *U.S. v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009), and not the tale of 'have and have nots' that the Government so claims.[8]

### C. A Non-Custodial Sentence Provides Just Punishment, General and Specific Deterrence, and Avoids Unwarranted Sentencing Disparities

The Government argues that a draconian 15-year sentence is necessary to deter David personally because he has not "accepted responsibility for his conduct and expressed remorse" and because of a likelihood of recidivism. Gov. Mem. at 21. The Government's reasoning is as callous as it is misplaced. As stated above, David cannot address the Offense Conduct until his post-trial motions are resolved, and it is not appropriate for this Court to hold that against him. What the Court can consider, however, is that, at 58 years old David is unlikely to be a recidivist, *see U.S. v. Carmona-Rodriguez*, 2005 WL 840464, at *4 (S.D.N.Y. Apr. 11, 2005) (defendants "over the age of forty . . . exhibit markedly lower rates of recidivism"), and, under the Government's

---

[8] The Government also argues without citation to any authority or study that "[a]ccountants and other professionals who are convicted and sentenced for white-collar crimes are almost always first-time offenders" and, accordingly, the "Court should put little weight on th[is] fact." Gov. Mem. at 19. This conclusory statement does not, however, alter the uncontested fact that David has never before been convicted of a crime, which the Court may properly consider in fashioning a sentence. *See, e.g.*, *U.S. v. Williams*, 662 F. App'x 366, 377 (6th Cir. 2016).

4

recommended sentence, he would leave prison an elderly man well into his 70s.[9]

The Government further points to an average of 197 months' and a median of 180 months' imprisonment in cases such as this one to claim that its recommended sentence would not result in an unwanted disparity, Gov. Mem. at 22, but this assumes that an offense level of 43 is appropriate which, for the reasons stated above and in his submission, PSR Letter Objections and Reply, it is not. The Government next argues that the cases cited in David's submission, *see* ECF 530 at 29–30, are inapplicable because the "offense levels [were] significantly lower than the level here," Gov. Mem. at 23. But in every one of those cases, the Government had recommended offense level calculations similar to what it argues for here and defendants received sentences dramatically lower than what the Government had sought.[10] Indeed, it is telling that the Government does not point to a single case with allegations and a sentence similar to what it recommends here—a sentence that is far greater than necessary to comply with the purposes in Section 3553(a).

*Finally*, imposition of a 15-year sentence in this case would constitute an improper trial penalty and violate David's constitutional rights under the Fifth and Sixth Amendments. *See, e.g.*, *U.S. v. Molina*, 2022 WL 3971588, at *4 (5th Cir. Aug. 31, 2022) ("To punish a defendant for exercising [their] trial rights would be a constitutional violation."). In the middle of trial, the Government offered to allow David to plead guilty to a crime with a 5-year statutory maximum sentence subject to a joint plea with Mr. Schneider and to approval from the U.S. Attorney.[11] And now, after exercising his constitutional right to hold the Government to its burden (as guaranteed by the Sixth Amendment), the Government thinks no less than 3 times that sentence is "not greater than necessary." Gov. Mem. at 11, 25. Indeed, the Government's substantial shift in what it believes is "necessary" here, without any reasonable explanation for the disparity, would amount to a trial penalty on David and should not be permitted by the Court. *See, e.g.*, *U.S. v. Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985) ("The augmentation of sentence based on a defendant's decision to stand on his right to put the Government to its proof rather than plead guilty is clearly improper.").[12]

## II.     FORFEITURE AND RESTITUTION

The Government summarily seeks a $15,287,639 forfeiture money judgment and a $56 million restitution order. David disputes the Government's unsupported forfeiture and restitution amounts. David requests an evidentiary hearing to hold the Government to its burden for forfeiture under Fed. R. Crim. P. 32.2(b)(1) and will respond to the Government's restitution claim once it provides an accounting of losses to each victim pursuant to 18 U.S.C. § 3664(d)(5).

---

[9] The Government argues that "general deterrence is particularly important in a [white-collar] case like this one, involving an experienced professional in whose trust thousands of individuals placed their money" and that a lenient sentence "would provide a would-be fraudster every incentive to perpetuate a fraud scheme." Gov. Mem. at 21. This sweeping argument ignores the atypical nature of the charged conduct—allegedly inaccurate disclosure to investors concerning the return of *their own* capital (if investor capital was returned at all)—such copycats are highly unlikely.
[10] For example, the Government in *Nordlicht* proposed an offense level of 37, ECF 1042 at 9, but Judge Cogan rejected the Government's arguments with respect to loss (finding there was none attributable to defendants' conduct) and ordered a non-custodial sentence, *see* ECF 1005, 1052. Similarly, in *U.S. v. Tournant*, the Government proposed an offense level of 41, ECF 163 at 11, but the defendant received a sentence of house arrest, *see* ECF 172.
[11] Counsel will provide declarations concerning these plea discussions should the Court require additional information.
[12] Historically, there has been a disparate imposition of trial penalties on defendants in economic crimes, where, as here, loss calculations can result in wildly disproportionate sentences. *See, e.g.*, Todd K. Lester, Jeffrey B. Jenson & Matthew P. Diehr, *Federal Sentencing For Economic Crimes — Are We There Yet?*, 1 INVESTIGATIONS Q. 11 (2014) ("[W]hite collar criminal defendants are particularly incented to enter plea agreements because of the draconian penalties resulting from the overemphasis on loss as a component in sentencing").

## CONCLUSION

For the foregoing reasons, David respectfully requests that the Court consider alternatives to incarceration and impose a non-incarceratory sentence.

Dated: February 25, 2025
      New York, New York

Respectfully submitted,

*/s/ Matthew I. Menchel*
Matthew I. Menchel
Adriana Riviere-Badell *(admitted pro hac vice)*
**KOBRE & KIM LLP**
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 967-6100
Matthew.Menchel@kobrekim.com
Adriana.Riviere-Badell@kobrekim.com

Sean S. Buckley
Jonathan D. Cogan
A. Zoe Bunnell
Benjamin F. Cooper
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1200
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Zoe.Bunnell@kobrekim.com
Benjamin.Cooper@kobrekim.com

*Attorneys for Defendant David Gentile*